# EXHIBIT G

From:

Yelisey Bohuslavskiy

7000 JFK Blvd E,

Gutenberg, New Jersey, 07093

(202) 751-99-57

To:

David Montanaro

CEO

Red Sense, LLC

109 E. 17th St., Suite #5968

Cheyenne, WY 82001

April 14, 2025

Dear David,

This letter serves as a formal demand for the restoration of my access to all Red Sense LLC systems and operational environments, along with full satisfaction of outstanding financial and governance obligations owed to me as a standing member of the company.

This letter also serves to formally document all concerns and demands I raise in my capacity as a standing member of Red Sense LLC. The only exception involves matters related to immigration-based harassment, which fall under federal jurisdiction and are governed by the Equal Employment Opportunity Commission (EEOC) and the Immigrant and Employee Rights Section (IER). Those matters lie outside the scope of internal company governance and the Wyoming Limited Liability Company Act (W.S. § 17-29-101 et seq.) (the "Act").

I have limited this letter exclusively to issues clearly grounded in Red Sense's governing legal framework and applicable written and signed contractual agreements to limit no space for ambiguity or unevidenced claims. As such, this letter represents a good faith and final effort to resolve the company's internal disputes through dialogue and reconciliation with you and Mr. Stear before seeking resolution on these issues through the Wyoming District Court or any other competent legal forum. I am not an attorney, and these observations were prepared without formal legal training.

I am copying Mr. Bryan VanSickle on this correspondence as I am convinced that your actions before, during, and after February 25, 2025, place Red Sense in a legally precarious position. As a 25% equity stakeholder (per the 2024 draft Schedule K-1), Mr. VanSickle has a right to be informed of these serious concerns.

**Legal Preamble: Clarification of Continued Member Status**

You have no right to terminate the business activities of a Red Sense member unilaterally, and any infringement on these rights likely constitutes a clear case of oppressive conduct. Under the Wyoming Limited Liability Company Act, members share equal rights in a member-managed LLC under 17-29-407(b)(ii). Moreover, W.S. 17-29-407(b)(iii)–(iv) clearly states that any extraordinary decision, particularly one made during an internal dispute, must be undertaken only with the consent of all members. Not only did you fail to secure such consent while terminating my team and my access to the company's environment, but to my knowledge, there was no attempt even to initiate a proper process of all-member meetings or voting.

Furthermore, this oppressive conduct has been falsely justified by an incorrect legal claim: *"Your written expression or resignation constitutes your dissociation from Red Sense under the Wyoming LLC Act WS 17-29-101, et seq."* sent in your email on February 25, 2025, which is entirely false.

Under W.S. 17-29-602(a)(i), a person is dissociated from an LLC only upon express will to withdraw as a member. I have never expressed such intent. On the contrary, my resignation letter explicitly states, *"Naturally, I will continue to perform my role as a partner and strive to resolve the ongoing misalignments within the partnership and shareholder domains."* The word "partner" here obviously refers to the provisions of the Red Sense January 25, 2023, Partnership Agreement, which refers to the word "partner" with the meaning of "owner" and "member." As such, that sentence alone dispels any ambiguity about my alleged intentions to dissociate.

The Chief Research Officer role — like your CEO title or CTO title at Red Sense — was never formalized by any work agreement, W-2, 1099, or written contract. It likewise did not carry a salary or contracted compensation. All my compensation from Red Sense LLC has been issued via K-1 distributions, consistent with member status. During our meeting on February 11, 2025, John Bacon confirmed the same classification. As showcased by the cases of Mr. VanSickle and Mr. Tarik Rahmanovic, there is no connection between a formal role in Red Sense LLC and a membership status.

Finally, as clearly explained in my email of February 24, 2025, resigning from this informal, symbolic officer title was, in part, an attempt to establish a suitable, structured contract. By seeking proper formalization, I was fulfilling the fiduciary duties defined by W.S. 17-29-409(c), which obliges a member to ensure a sound business framework in company activities. Setting a proper structure, which I requested on February 24, 2025, was exactly ensuring such a framework and fully aligned with my duties as a member.

I emphasize that your February 25, 2025, interpretations, which were further conveyed to Crowell & Moring LLP and stated on March 17, 2025, are unacceptable and contrary to the factual record. Since the clarification has been provided in this letter, unless this explanation is proven to be factually or legally incorrect, any continued attempt to recast that resignation as member dissociation will be treated as a deliberate and malicious misrepresentation and may give rise to liability under applicable law.

**1. Management Rights Under W.S. 17-29-407(b)(ii)**

The Act clearly states that each member in a member-managed LLC has equal rights in the management and conduct of the company's business. The removal of my access to the company's core operational platforms directly obstructs this right. No unanimous member vote or written agreement exists authorizing such a restriction, and as such, the action stands in direct violation of the statutory governance framework.

**2. Fiduciary Duties and Statutory Obligations Under W.S. 17-29-409(c)**

Under W.S. 17-29-409(c), each member is obligated to act with the care that a reasonably prudent business person would exercise under similar circumstances. In a company where a core product I and the engineers design and continue to support plays a central operational role, the removal of them and my access — a decision made with no apparent business justification — disrupts both oversight and continuity. The disregard for business prudence is even more serious considering the company's precarious financial situation in February 2025, of which you were well informed.

**3. Right to Access Information Under W.S. 17-29-410(a)(i)-(ii)**

Access to company systems is a statutory right, not a courtesy. These platforms contain material information relating to company governance, finances, and activities. Denying access obstructs my right to be informed. The accesses that need to be return include, but are not limited to, the following:

- Company email account
- Slack, Signal, and all similar communication platforms
- Zoom and other video conferencing tools
- Company calendars and scheduling systems
- Internal file storage and document-sharing systems
- Client communication channels
- Any infrastructure or data systems related to intelligence product, including the server formerly associated with IP address 45.79.15.15

Accordingly, based on the W.S. 17-29-410(a)(i)-(ii), I also demand access to the following:

- All financial records, including bank statements, balance sheets, income statements, and cash flow reports
- All signed client contracts and agreements since January 25, 2023
- All internal communications and meeting notes relating to my resignation, access removal, and membership status
- All meeting minutes or resolutions affecting my rights or role

Since the legal framework governing my right to access information has been clearly established in this letter, any continued refusal to provide such access or orders to employees or third parties to withhold this access from me will not be regarded as a misunderstanding or administrative oversight but as a knowing and deliberate violation of the provisions of the Wyoming Limited Liability Company Act.

**4. Request for Retention Documentation Regarding Crowell & Moring LLP**

As a standing member of Red Sense LLC, I formally demand that you provide the retainer agreement and engagement terms with Crowell & Moring LLP. As stated earlier, under W.S. 17-29-410(a)(i), members have the right to inspect any record regarding the company's activities and affairs. Given that Crowell & Moring is actively engaging in Red Sense's internal affairs, it is material to my rights and duties as a member to understand under what authority, scope, and retainer terms this law firm has been engaged.

**5. Demand for Payment of Engineering Services Rendered (Jan 16 – Feb 16, 2025)**

I further demand payment of $15,370.00 USD for the services rendered by the three engineers between January 16 and February 16, 2025. These services were performed under a clearly defined and agreed-upon scope and rate and were officially invoiced on February 13, 2025. You personally confirmed that this payment would be processed within 3–5 business days from February 24, 2025. This commitment was made in writing and is consistent with the engineering agreement approved unanimously by all partners in February 2023.

Under W.S. § 17-29-409(b), each member is obligated to discharge duties and exercise rights in accordance with the obligation of good faith and fair dealing. That standard necessarily includes honoring one's own written commitments, promises, and payment obligations made in a company capacity. You have no authority — under law, contract, or company precedent — to unilaterally revoke or delay this payment unless such action is authorized by unanimous member consent. The continued withholding of these funds is a clear violation of both the statute and the company's own governance history.

**6. Demand for Immediate Reinstatement of Engineering Team and Their Access**

The engineers under my direction, whose work directly supported Red Sense's intelligence infrastructure as well as our customers, were retained through a consensus decision of all members in 2023. Their unilateral termination and their loss of system access constitute a material and extraordinary company action, subject to the requirements of W.S. 17-29-407(b)(iii)–(iv), which clearly mandate unanimous member consent for such matters. To date, no vote or consensus has occurred to authorize this decision. As such, the dismissal and deactivation of their access is unauthorized and must be immediately reversed. You are hereby instructed to restore all accesses and reengage the engineers as required under the governance framework of a member-managed LLC.

**7. Revoke Improper Termination Procedures**

The manner in which you terminated these engineers — without a stated reason, prior communication, final payment, or basic procedural safeguards — reflects a significant lapse in governance and exposes Red Sense to avoidable security risks. W.S. § 17-29-409(c) imposes a clear obligation on every member to act with reasonable care and in the best interests of the company. That duty of care includes anticipating and mitigating foreseeable operational and reputational risks. In standard corporate practice — particularly in industries handling sensitive data — the offboarding of employees is handled with structured care. In this case, the engineers who were terminated reside in a foreign jurisdiction, retain detailed knowledge of Red Sense's internal systems, and operate within a global digital environment where anonymous and unregulated forums are known to exist. While I make no allegation of intent or misconduct on their part, it is well-documented within the cybersecurity industry that poorly managed terminations can lead to reputational, legal, and technical vulnerabilities — including the "leak" publication of company data on platforms such as XSS or BreachForums by disgruntled personnel claimed under a "company breached" banner. This is not a suggestion that any individual involved would act improperly, but an industry-known risk that must be treated with diligence.

As the CEO of a cybersecurity firm, you are expected to understand the heightened risks associated with offboarding international contractors, particularly in environments where there is little to no legal deterrence in the event of their retaliation. Such scenarios demand deliberate, informed handling and adherence to standard risk management practices. The failure to apply even fundamental diligence in this instance — including basic HR and security protocols, as well as a clearly hostile act of withholding their promised final payment — represents, in my view, a breach of the duty of care required under W.S. § 17-29-409(c). This point is raised not to assign intent but to underscore the severity of the governance lapse and the potential downstream exposure now facing the company and its members.

**8. Demand for Outstanding Bonuses per Section 4.3 of the Partnership Agreement**

Finally, I demand the payment of bonuses owed to me pursuant to Section 4.3 of the Red Sense Partnership Agreement, which provides:

*"Before any profits are distributed to the Owners, 10% of all Sales Revenues generated by Red Sense, LLC will be distributed to the Individual or individual(s) responsible for bringing such leads or opportunities to Red Sense, LLC, which convert to a sale and company revenue. Payment of this distribution will be made upon receipt of revenue by Red Sense, LL,C and the specific split of the 10% will be managed by the Red Sense Chief Revenue Officer (Head of Sales)."*

**Remediation Requirements**

In accordance with the above, and under my full rights as a standing member of Red Sense LLC, I formally demand the following actions be taken without delay:

- Cease and desist from making any false statements regarding my alleged dissociation from Red Sense membership in the LLC, either in internal communications or communications with customers, partners, and prospective customers/partners or on any other form of communication.
- Remove and revoke all previously made false statements related to this matter.
- Immediate reinstatement of all company accesses that were previously granted to me, including but not limited to email, internal communications, project management, and product infrastructure.
- Written confirmation that my membership status remains active and unchanged.
- Full access to all company records, financial statements, client agreements, internal correspondence, and meeting notes withheld from me since February 25, 2025, as required under W.S. § 17-29-410.
- A copy of the engagement agreement or retainer with Crowell & Moring LLP, and all internal records documenting approval of their retention to act as legal counsel on behalf of Red Sense LLC.
- Payment for engineering services performed by me between January 16, 2025, and February 16, 2025, which were acknowledged and promised in writing for processing by February 29, 2025.
- Immediate restoration of access and engagement of the engineering team that was wrongfully terminated without required unanimous member consent, in violation of W.S. § 17-29-407(b)(iii)–(iv).
- Payment of all outstanding bonuses due under Section 4.3 of the Partnership Agreement.

Each of these items is grounded in statutory member rights, fiduciary obligations, and express contractual provisions. These are not requests for accommodation but requirements needed for the company to return to lawful operation.

The cease and desist should come into effect immediately.

For the Crowell & Moring LLP retention letter and access restoration, you have one business day to comply with the demands set forth with this letter. The compilation is required by the end of the day on Tuesday, April 15, 2025.

For the company records, payments to the engineers, and their restoration, you have four (4) business days to comply with the demands set forth in this letter. The compilation is required by the morning of Monday, April 21, 2025.

While I wish to resolve this matter amicably, as a member of Red Sense, I expressly reserve all rights and remedies (equitable or otherwise), including seeking enforcement under W.S. 17-29-901(a) and all other applicable statutory or equitable remedies.

Sincerely,

Yelisey Bohuslavskiy

Partner & Co-Founder at RedSense
yeliseybohuslavskiy@gmail.com
+1 (202) 751-99-57