
Preetha Chakrabarti
Rachel Elaine Hsu (*pro hac vice* forthcoming)
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 223-4000
Facsimile: (212) 223-4134
pchakrabarti@crowell.com
rhsu@crowell.com

Anna Z. Saber (*pro hac vice* forthcoming)
CROWELL & MORING LLP
3 Embarcadero, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827
asaber@crowell.com

*Attorneys for Plaintiff Red Sense LLC*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| Red Sense LLC<br><br>   Plaintiff,<br><br> v.<br><br>Yelisey Bohuslavskiy,<br>a.k.a. Elisei Boguslavskii<br><br>   Defendant. | Civil Action No. 2:25-cv-12281<br><br>**DECLARATION OF DAMIAN MILLER IN SUPPORT OF RED SENSE LLC'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**REDACTED PURSUANT TO L. CIV. R. 5.3** |

I, Damian Miller, declare as follows:

1. I am the interim Chief Operating Officer of Red Sense, LLC ("RedSense"). I make this declaration in support of RedSense's Motion for Preliminary Injunction. This declaration is based upon my personal knowledge and experience at RedSense, as well as my review of the records that RedSense maintains. If called upon to do so, I could and would testify competently as to the facts stated herein.

2. I have 30 years of experience in the cybersecurity and threat intelligence industry. I have served in a leadership capacity in both early-stage ventures as well as publicly traded Cybersecurity companies. I have held C-level positions, board positions, and advisory positions. I have also co-founded two ventures of my own, leading them to successful exits, and I have been responsible for leading and managing every business function within an Enterprise during my various tenures. One of my responsibilities as COO of RedSense has been to prepare the company for becoming compliant with SOC 2 in an effort to meet obligations contained within RedSense customer service agreements and to further bolster the company reputation in the cyber security industry. By way of that endeavor, I discovered several areas of concern regarding the conduct of Defendant Yelisey Bohuslavskiy ("Bohuslavskiy") and his team and was tasked to perform an internal audit of Bohuslavskiy's business unit and to provide an overall assessment of the

impact of his misconduct on RedSense business operations. I led a full accounting of the work product that RedSense paid Bohuslavskiy and his team for to assess whether Bohuslavskiy and his team ever delivered the work product. I have also been involved in communications with RedSense customers to remediate their concerns regarding the communications they have received from Bohuslavskiy promoting himself and advertising his cybersecurity services.

3. As part of the accounting, I discovered that RedSense had paid Bohuslavskiy and his team to deliver the AI-Driven Intel Search ("AIDIS") Solution, an automation tool that Bohuslavskiy and his team were responsible for developing under the code name Project Pylon. Although RedSense had paid for this work product, Bohuslavskiy never provided it. I was involved in multiple requests to Bohuslavskiy asking him turn over the source code for the tool or provide information as to where within the RedSense environment did the code exist. In each instance, Bohuslavskiy refused to provide RedSense with the code that it contracted and paid for.

4. This discovery was particularly troubling because I am aware of meetings that RedSense had with its customers where Bohuslavskiy previewed and promised the AIDIS capabilities. Based on the feedback from customers in these meetings, I understand that the AIDIS tool was something the customers viewed as a significant value-add and a feature that made RedSense stand out amongst other

potential service providers the customers could contract with for threat intelligence and cybersecurity services.

5. Following Bohuslavskiy's resignation he has engaged in a smear campaign, whereby he contacts RedSense customers, peddles his own services as unique and superior, casts aspersions on RedSense's trustworthiness, denigrates the services RedSense provide, alludes to "ethical" issues at RedSense, and encourages the customer to contact *him* directly instead of RedSense.

6. Subsequently, I have been involved in conversations with customers including but not limited to: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, all of whom have reached out with concern and confusion regarding Bohuslavskiy's communications.

7. Because Bohuslavskiy sent these communications via a personal Gmail email address and included a statement that he resigned from RedSense, customers have asked whether the email is legitimate. Customers likely expect that official communications from RedSense regarding the services they contract for would come via a RedSense email address rather than a personal email address. Receiving these from non-official channels creates confusion and concern. Additionally, because

Bohuslavskiy stated in his emails that he had resigned from RedSense, that creates further confusion. Customers may not be familiar with the corporate structure of RedSense and therefore do not know if Bohuslavskiy is speaking on behalf of RedSense and whether he is authorized to do so. I believe that any confusion is further compounded by Bohuslavskiy offering to provide continued threat intelligence through Affix (Bohuslavskiy's LLC), which would be an unknown and unfamiliar entity to RedSense's customers.

8. Customers have also asked whether the Bohuslavskiy communications are part of a scam, whether the email is a phishing lure, or whether the email is actually coming from Bohuslavskiy or if someone is impersonating Bohuslavskiy. Based on my experience in this industry, a common phishing tactic is for the bad actor to impersonate an individual who would be known to the target. This is because while the recipient of an email may ignore an email from an unknown or unfamiliar sender, they are more likely open an email when the sender purports to be someone they know. Bohuslavskiy's role at RedSense meant that he was routinely involved in customer meetings, so his name would be familiar. The emails from Bohuslavskiy also included attachments and links, which based on my experience would further raise flags for the recipient. In connection with phishing and cybercrime, an attachment may have embedded ransomware in the file, while a link may redirect the recipient to a fake login page that collects credentials.

Accordingly, customers receiving Bohuslavskiy's communications had serious questions about whether these emails were legitimate, if Bohuslavskiy's email had been compromised, if the RedSense's systems have been compromised, or if these emails should be treated as attempted cyberattacks directed to the customer.

9. Beyond customer confusion, customers have also expressed concerns regarding the value add that RedSense can bring, whether RedSense can adequately service the customers needs, and whether the customer is better off obtaining the services from Bohuslavskiy based on the unique and innovative solutions he has been advertising.

10. I have been involved in communications with RedSense customers both prior to Bohuslavskiy's departure and after. These customers have had to spend considerable time and resources dealing with Bohuslavskiy's emails because they have had to spend time to determine if Bohuslavskiy's emails are a scam, if RedSense can service the relationship, and whether the customer would be better served by Bohuslavskiy's team.

11. Customers such as ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████, who have otherwise been happy with the services that

RedSense has provided, have informed RedSense this ongoing issue with Bohuslavskiy has caused a dark stain on RedSense's reputation and has undermined the otherwise high quality of services customers have received from RedSense. This has included receiving communications from the Chief Information Security Officer ("CISO") of RedSense customers expressing concern or otherwise uneasiness. Based on my industry experience, a CISO is an executive who controls the purse strings with respect to that company's cybersecurity expenditures and has final say as to which service providers the customer will rely on for its cybersecurity needs. Receiving communications from a customer's CISO is of particular concern to RedSense because from perspective that indicates that the situation is severe enough to merit escalating the situation to the top decision-maker with respect to continued relations with RedSense has become involved.

12. ▮▮▮▮ is a key customer of RedSense. Retaining this customer is strategically important for RedSense, as this customer operates within RedSense's largest vertical — customers within the healthcare industry represent RedSense's largest market and largest potential customer base. By virtue of his involvement with RedSense, Bohuslavskiy knew of the strategic importance of the relationship with ▮▮▮▮ Following Bohuslavskiy's contacting of key stakeholders at ▮▮▮▮ and disparaging RedSense, I have been on meetings and electronic communications with leadership such as the Director of Cyber Intelligence and

Threat Engineering at ▇▇▇ who has informed me that RedSense needs to "work it out with Bohuslavskiy." This is a highly unusual request for a customer to make, and I can only conclude that the reason for the directive is because ▇▇▇ believes that, absent resolution, the services it receives will be undermined. Indeed, on Monday, June 30, I was copied on an email from ▇▇▇ where the point of contact complained that since February (*i.e.*, since Bohuslavskiy's resignation) ▇▇▇ has not received reports related to regions of interest and has experienced an overall decline in reporting. Additionally, ▇▇▇ informed me and other RedSense leadership that ▇▇▇ was getting more valuable threat intelligence and stolen credentials data from other vendors. The timing of this email is suspicious because RedSense filed its Complaint against Bohuslavskiy on Friday, June 27, 2025 and I am aware that RedSense's counsel informed Bohuslavskiy that RedSense would be proceeding with litigation against Bohuslavskiy. Given the timing of RedSense's complaint and the email from ▇▇▇ I have reason to suspect that this recent communication from ▇▇▇ is a result of Bohuslavskiy retaliating in response to the Complaint.

13. Prior to his resignation, ▇▇▇ received a preview of AIDIS. Bohuslavskiy was involved in this pitch and knew that ▇▇▇ wanted this tool. Subsequently, ▇▇▇ has requested RedSense provide this tool immediately. I believe that the demand to "work it out" is likely a result of ▇▇▇ wanting access

to AIDIS and the strain that Bohuslavskiy has placed on the RedSense-███ relationship. Because Bohuslavskiy is aware of the strategic importance of the ███ customer relationship—this was information he would have access to while at RedSense—Bohuslavskiy has incentive to market the AIDIS capabilities as a selling point as to why customers should use his services over those of RedSense.

14.  I am also aware of Bohuslavskiy's conduct impact RedSense's prospective customers. RedSense and prospective customer ███ have been engaged in serious discussions regarding ███ reattaining the services of RedSense. I have been personally involved in these discussions. These discussions with ███ have since come to a halt. A ███ executive revealed that there was too much of a cloud over RedSense as a result of Bohuslavskiy's smear campaign, his public aspersions against RedSense, and the rumors about Bohuslavskiy and RedSense that have been circulating in the threat intelligence industry. The same executive informed me that unless RedSense is able to resolve this issue, ███ would not feel comfortable retaining RedSense's services.

15.  For example, Bohuslavskiy's public LinkedIn post[1] alluded to vague "ethical concerns" involving RedSense. Based on experience in his industry, a mere insinuation that there are "ethical concerns" surrounding RedSense would be enough to permanently damage RedSense's reputation within this market. Because of these

---

[1] *See* Declaration of David Montanaro ¶ 25, concurrently filed herewith.

increased sensitivities when dealing with cybersecurity protection, regardless of what the "ethical concern" is or whether there is any merit to it (there is not), such insinuations may lead a customer to believe that it can no longer entrust RedSense to service the relationship without compromise. My discussions with ███ and others have confirmed that decision-makers at potential RedSense customers have seen these public allegations, are concerned about Bohuslavskiy's claims, and that has prevented customer relationships and financial opportunities from materializing.

I declare under penalty of perjury under the laws of the United State that the foregoing is true and correct to the best of my knowledge.

Executed this 1st day of July, 2025 in Scottsdale, Arizona.

_____
Damian Miller
Interim Chief Operating Officer
Red Sense LLC