## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RED SENSE LLC, a Wyoming limited
liability company,

                    Plaintiff,

         v.

YELISEY BOHUSLAVSKIY, a.k.a.
ELISEI BOGUSLAVSKII,

                  Defendant.

Case No.: **2:25-cv-12281-EP-AME**

<u>CIVIL ACTION</u>

[Motion Date: August 18, 2025]

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

On the brief: Joshua S. Lim, Esq.
              Nicholas J. DuBois, Esq.

          Kim, Lim & Partners
          460 Bergen Blvd., Suite 305
          Palisades Park, New Jersey 07650
          (t): 201.585.7400, (f): 201.585.7422
          joshualim@klplawyers.com
          nickdubois@klplawyers.com
          *Attorneys for Defendant*

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT.....................................................................1

II.   RELEVANT FACTUAL BACKGROUND.......................................................4

III.  LEGAL ARGUMENT ................................................................................5

   a.  Plaintiff Fails to Surmount the High Burden for a Grant of Preliminary Injunction. ....................................................................................................5

   b.  Plaintiff's Delay in Bringing Suit Belies any Urgency Requiring Injunctive Relief. ..........................................................................................................9

   c.  A Preliminary Injunction Would Disrupt the *Status Quo*..............................11

   d.  Plaintiff Cannot Establish a Reasonable Probability of Success on the Merits. .......................................................................................................13

      i.   There was no commercial speech for Lanham Act purposes.....................13

   e.  Plaintiff points to no false "advertising". .....................................................16

      i.   Bohuslavskiy made no false or misleading statements as to any products. 16

      ii.  Plaintiff has shown no deception or tendency to deceive a substantial portion of an intended audience.....................................................................17

      iii. No deception material enough to influence a purchasing decision. .......20

      iv.  There were no 'advertised goods' to travel in interstate commerce.......23

      v.   No Showing Defendant Made any Literally Unambiguous False Ad ....24

      vi.  Defendant Did Not Denigrate Red Sense's Ethics or Products..............25

      vii. Bohuslavskiy Did Not Interfere with Any Current or Prospective Contracts with Red Sense. ................................................................................26

   f.  Plaintiff Fails to Show Irreparable Harm from Bohuslavskiy's Activities....31

   g.  The Balance of Equities (or 'Injuries') Heavily Favors Defendant...........34

   h.  Public Interest Weighs Heavily Against a Preliminary Injunction. ..........36

   i.  Requirement to Post Bond for a Preliminary Injunction..............................38

V.    CONCLUSION.......................................................................................39

# TABLE OF AUTHORITIES

## Cases

*Acierno v. New Castle Cnty.*, 40 F.3d 645 (3d Cir. 1994) ........................................11

*American Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568 (S.D.N.Y. 1987) ...................................................................................................................37

*American Tel. & Tel. Co. v. Winback & Conserve Pgm., Inc.*, 42 F.3d 1421 (3d Cir. 1994), cert. denied, 514 U.S. 1103 (1995)............................................................5

*Barmasters Bartending Sch. v. Authentic Bartending Sch.*, 931 F. Supp. 377 (E.D. Pa. 1996) ...............................................................................................................36

*Bextel v. Fork Rd. Ltd. Liab. Co.*, 474 P.3d 625 (Wyo. 2020) ................................27

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983)......................................14

*Calabotta v. Phibro Animal Health Corp.*, 460 N.J. Super. 38 (App. Div. 2019) ...26

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557 (1980) ...................................................................................................................14

*Citizens Coach Co. v. Camden Horse R.R. Co.,* 29 N.J. Eq. 299 (E. & A. 1878) ...32

*Cloud Peak Law Group, P.C. v. Firstbase*, 2022 WYCH 4, 2022 Wyo. Trial Order LEXIS 3 (Wyo. Ch. Ct. 2022).................................................................................31

*Crowe v. De Gioia*, 90 N.J. 126 (1982)....................................................................31

*Delaware State Sportsmen's Ass'n v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024)................................................................................6, 7

*Duraco Prods., Inc. v. Joy Plastic Enter., Ltd.*, 40 F.3d 1431 (3d Cir. 1994).........37

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205 (3d Cir. 2014)5, 6, 11, 34

*Fremont Homes, Inc. v. Elmer*, 974 P.2d 952 (Wyo. 1999) .....................................27

*Gerardi v. Pelullo,* 16 F.3d 1363 (3d Cir. 1994) ........................................................6

*Gore v. Sherard*, 50 P.3d 705 (Wyo. 2002) .............................................................27

*Hit Doctor Tri State Arsenal LLC v. Barth*, no. 19-cv-14579-RBK-KMW, 2020 U.S. Dist. LEXIS 24867 (D.N.J. Feb. 11, 2020)............................................................5

*Incarcerated Entm't, LLC v. CNBC LLC*, 331 F. Supp. 3d 352 (D. Del. 2018).......13

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir. 1989)........31

*Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm.,
Inc.*, 19 F.3d 125 (3d Cir. 1994) .......................................................................22

*KetoNatural Pet Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 756 F. Supp. 3d 1128 (D.
Kan. 2024)............................................................................................................17

*Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) ..............................35

Lanin v. Borough of Tenafly, 515 F. App'x 114 (3d Cir. 2013)................................10

*Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202 (3d Cir. 2013) .................26

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. (2010)..........................................5

*New Jersey Staffing Alliance v. Fais*, 751 F. Supp. 3d 419 (D.N.J. 2024), *aff'd*, 110
F.4th 201......................................................................................................5, 10, 11

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Cons. Pharms. Co.*,
290 F.3d 578 (3d Cir. 2002) ..............................................................5, 24, 35, 37

*Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151 (3d Cir. 1999) .............................6

*Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187 (3d Cir. 1990)
................................................................................................................................6, 32

*P.C. Yorkers, Inc. v. Celebrations the Party and Seasonal Superstore. LLC*, 428 F.3d
504 (3d Cir. 2005) ..................................................................................................6

*P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132 (2008)............................................26

*Pappan Enters. v. Hardee's Food Sys.*, 143 F.3d 800 (3d Cir. 1998) ......................35

*Parker v. Learn the Skills Corp.*, 530 F. Supp. 2d 661 (D. Del. 2008) ...................21

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241 (3d Cir. 2011)16, 24

Pharmacia Corp. v. Alcon Labs, Inc., 201 F. Supp. 2d 335 (D.N.J. 2002)..............10

*Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp. 2d
594 (D.N.J. 2003)..................................................................................................36

*Polo Ranch Co. v. Cheyenne*, 61 P.3d 1255 (Wyo. 2003).......................................31

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222 (3d Cir. 1990) .......35

*Steeplechase Arts & Prods., L.L.C. v. Wisdom Paths, Inc.*, 652 F. Supp. 3d 481 (D.N.J.
2023) .....................................................................................................................16

*United States Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914 (3d Cir.),
*cert. denied*, 498 U.S. 816 (1990).......................................................... 13, 14, 22

*Winback & Conserve Program, Inc. v. U.S. Postal Serv.*, 42 F.3d 1421 (3d Cir. 1994) ...................................................................................................7, 37

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)...............................5, 6

**Statutes**

15 U.S.C. § 1125(a)(1)(B).................................................................................23

Wyo. Stat. § 17-29-407(b)(iv) (2024) .......................................................9

Wyo. Stat. § 17-29-407(c)(vi)..................................................... 19, 21

**Other Authorities**

*Restatement (Second) of Conflicts of Laws* § 146 (1971).......................................26

**Rules**

Fed. R. Civ. P. 65(c) ....................................................................38

*Frank's GMC Truck Ctr., Inc. v. General Motors Corp.*, 847 F.2d 100 (3d Cir. 1988) ................................................................................. 38, 39

*See* Fed. R. Evid. 201(b)(2) ...................................................................8

*System Ops. Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131 (3d Cir. 1977) ....38

**Treatises**

O. Fiss and D. Rendleman, *Injunctions* 383 (1984) ................................................39

Defendant Yelisey Bohuslavskiy, a.k.a. Elisei Boguslavskii ("Defendant" or "Bohuslavskiy"), submits this memorandum of law in opposition to plaintiff Red Sense LLC's ("Plaintiff" or "Red Sense") motion for preliminary injunction, filed July 1, 2025. By the docket text entered on July 21, 2025, Defendant's opposition to the instant motion was made due August 4, 2025, and Plaintiff's reply on August 11, 2025. DE #20.

## I.    PRELIMINARY STATEMENT

This action, brought by Red Sense – a Wyoming limited liability company – targets Bohuslavskiy, a member and its former Chief Research Officer. It is the latest maneuver in a calculated corporate freeze-out. Having failed to intimidate Bohuslavskiy by threatening his immigration status, Red Sense now turns to the courts, seeking to bludgeon him into silence and submission. The lawsuit functions as a judicial anvil, where Red Sense hopes to crush dissent and chill constitutionally protected speech. Troublingly, it remains unclear whether this action was ever properly authorized under Wyoming law or if it is merely the unilateral act of a CEO who has abandoned corporate governance in favor of personal vendetta.

This motion advances the CEO's personal agenda while conspicuously failing to explain why Bohuslavskiy would sabotage an LLC in which he remains both a member and a financial stakeholder. Instead, Plaintiff offers a patchwork of distortions: falsehoods, hearsay, innuendo, conjecture, and self-serving speculation

1

– punctuated by deliberate omissions of facts and hollow disclaimers like "Red Sense presently [sic] has no reason to believe...". What emerges is not a coherent rationale, but a narrative built on sand. It collapses under its own weight.

As a telling example, Plaintiff fixates on Bohuslavskiy's LinkedIn post announcing his resignation, portraying it as evidence of disloyalty. But what the CEO conveniently omits is the very context that undermines that narrative. Bohuslavskiy's post expressly acknowledges the personal, contractual, and ethical reasons behind his decision – while simultaneously reaffirming his dedication to the company. He wrote:

> It has been my privilege to contribute to ransomware threat prevention and work alongside my stellar team of researchers and engineers. I am also grateful for all the support and care received this week! **On the business side, I will remain a co-founder, co-owner, and partner of Red Sense and will continue to fulfill our company obligations to Red Sense clients.**
> (emphasis added)

Plaintiff's selective quotation is not just misleading – it is emblematic of a broader strategy of distortion, designed to recast principled conduct as betrayal.

This is hardly the stuff of "smear campaign" much less an existential threat, which the Complaint mischaracterizes as "explicitly complain[ing] of his ethical

concerns about Red Sense."[1] Neither is the following from Bohuslavskiy's post-resignation e-mail to a Red Sense client:

> *Despite resigning as head of the Red Sense intel team, . . .*
> **I continue to honor my obligations to you as a Red Sense customer, ensuring seamless intel provision.**
> **I also encourage you to contact Red Sense directly for any additional insights regarding the adversarial threat I am alerting you about.[2]**
> (emphasis added)

Red Sense fails to explain (other than information and belief) how encouraging a customer to contact Red Sense *directly* about a newly-discovered risk diverts clients from Red Sense to Bohuslavskiy. These examples are by way of illustration, not limitation. Preliminary injunctions are not favored on thin records of contested fact or where Plaintiff seeks to alter the *status quo*.

No matter how artfully framed by Red Sense, this case is little more than a partnership dispute between members. Most material facts are in dispute, militating against the preliminary injunction sought. Plaintiff's months-long delay in bringing the action belies any urgency in a rapid-fire industry, further undermining the

---

[1]   Compl. ¶ 52.

[2]   Montanaro Decl. Ex. "C", elec. mail from Bohuslavskiy to [redacted] dated Mar. 6, 2022 (emphasis in original) (explaining personal e-mail source due to resignation as CRO, advising detection previous day of "a major initiative launched by top Russian-speaking ransomware APTs" [advanced persistent threats]).

asserted need for such relief and, still further, seeks to alter the *status quo*, raising Plaintiff's high bar still higher.

In sum, Plaintiff is unlikely to prevail on either Count the Motion asserts. Nor can it show irreparable harm apart, perhaps, to itself from its CEO's attempted palace coup and unsatisfactory product quality resulting from freezing out Bohuslavskiy and others with the requisite ransomware-countering skillset. Failing to surmount either 'gateway' hurdle, the Court need not address the balance of equities nor public interest, although both tip heavily in Bohuslavskiy's favor.

Indeed, the public interest factor tilts overwhelmingly *against* Plaintiff. This case involves crippling or potentially fatal threats to a wide swath of industries, *not* standard commercial services or software products whose vendors may reasonably be interchanged or substituted. Red Sense's ability to address cyberthreats was already impaired before Bohuslavsiy's resignation due to its preexisting precarious financial status. Should the Court grant Plaintiff's requested relief, it would deny healthcare institutions and other vital organizations rapid alerts concerning botnet attacks and ransomware intelligence which Plaintiff may no longer address effectively.

## II.    RELEVANT FACTUAL BACKGROUND

For the sake of brevity, the factual allegations are incorporated by reference to the declarations annexed hereto.

## III.    LEGAL ARGUMENT

### a.  Plaintiff Fails to Surmount the High Burden for a Grant of Preliminary Injunction.

"Federal Rule of Civil Procedure 65 empowers courts to grant temporary and preliminary injunctive relief when warranted." *New Jersey Staffing Alliance v. Fais*, 751 F. Supp. 3d 419, 423 (D.N.J. 2024), *aff'd*, 110 F.4th 201. However, the bar for a preliminary injunction is high as it "is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010); *see American Tel. & Tel. Co. v. Winback & Conserve Pgm., Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994), cert. denied, 514 U.S. 1103 (1995); *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) ("Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'") (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Cons. Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (internal quotation marks omitted)). "A Court does not issue preliminary injunctive relief simply to prevent the possibility of some remote future injury as that is inconsistent with the Supreme Court's characterization of such relief as an extraordinary remedy awarded only upon a clear showing that plaintiff is entitled to it." *Hit Doctor Tri State Arsenal LLC v. Barth*, no. 19-cv-14579-RBK-KMW, 2020 U.S. Dist. LEXIS 24867, at *14 (D.N.J. Feb. 11, 2020) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008)). "Equity is contextual. It turns on the facts,

and it supplements remedies at law only when needed." *Delaware State Sportsmen's Ass'n v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 203-04 (3d Cir. 2024) (noting "the heavy presumption against prior restraints on speech") (quotation omitted).

To demonstrate this extraordinary relief is warranted, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Ferring Pharms.*, 765 F.3d at 210 (citing *Winter*, 555 U.S. at 20 (internal citations omitted); *see Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994); *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 191-92 (3d Cir. 1990).

Importantly, the Court may order this "extraordinary remedy" only if the moving party establishes *all* four factors in its favor. *P.C. Yorkers, Inc. v. Celebrations the Party and Seasonal Superstore. LLC*, 428 F.3d 504, 508 (3d Cir. 2005). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999). The burden lies with Plaintiff, and the burden is heavy. *See ibid.*

Here, Plaintiff has not met – and cannot meet – **even one** of the prerequisites for a preliminary injunction. This case is not only procedurally questionable in its authorization, but it also lacks evidentiary and legal foundation on all four required elements: no likelihood of success on the merits, no irreparable harm, no favorable balance of equities, and no support in the public interest**.**

To begin, the evidentiary record is thin, speculative, and in large part inadmissible. Plaintiff relies heavily on hearsay, conjecture, and inference – none of which satisfies the evidentiary burden at this stage. Additionally, as reflected in the parties' competing certifications, the material facts are sharply contested between the parties, which inevitably warrants discovery. As the Third Circuit has cautioned, courts should be particularly reluctant to grant injunctive relief when the record is undeveloped and discovery is incomplete. *Winback & Conserve Program, Inc. v. U.S. Postal Serv.*, 42 F.3d 1421, 1427 (3d Cir. 1994) (emphasis in original). More recently it elaborated on thin or disputed evidence:

> Preliminary injunctions raise further problems. For one, many preliminary injunctions are granted hurriedly and on the basis of very limited evidence. Time pressures limit adversarial testing. Affidavits drafted by lawyers are poor substitutes for discovery, live testimony, and cross-examination.

*Delaware State Sportsmen's*, 108 F.4th at 200 (alterations and quotations omitted). (observing that "this hasty process makes the district court jump to conclusions").

Red Sense has not carried that burden. It identifies no client that ceased doing business due to anything Defendant said or did. The only referenced internal meeting addressing financial instability occurred **before** Defendant's resignation. *See* Bohuslavskiy Decl. ¶ 66 & Ex. 4. And while Plaintiff speculates about customer impact, it offers no proof. The clients involved – redacted or otherwise – are known to be large, sophisticated entities. *See* Fed. R. Evid. 201(b)(2). They do not make cybersecurity decisions based on LinkedIn posts or rumors; they rely on evidence, performance, and due diligence. Plaintiff's assertions that AIDIS and Pylon are the same, or that source code was destroyed, are false. AIDIS had no source code, and Pylon's code was unrelated to Red Sense. Any data loss was not the engineers' doing and may reflect Red Sense's own technical mishandling. *See* Bohuslavskiy Decl. ¶¶ 48-52.

Finally, the public interest weighs heavily against injunctive relief. Red Sense operates in a rapidly evolving cybersecurity landscape, serving critical sectors like healthcare and infrastructure. Its services are not easily replaced or replicated. Preventing a key contributor from continuing his work amid these stakes would not serve the public – it would endanger it.

For all these reasons, the motion must be denied. Plaintiff has failed to justify this extraordinary remedy.

8

**b. Plaintiff's Delay in Bringing Suit Belies any Urgency Requiring Injunctive Relief.**

At the threshold, this action appears procedurally defective under controlling Wyoming law. Under Wyo. Stat. § 17-29-407(b)(iv) (2024)*,* "[a]n act outside the ordinary course of the activities of the company may be undertaken only with the consent of all members."

Yet here, Plaintiff initiated this litigation without obtaining unanimous member consent – most notably, without the consent of Defendant Bohuslavskiy, who retains a 25% ownership interest (according to the latest draft 2024 K-1) and remains an equity partner of record. *See* Bohuslavskiy Decl. ¶ 24 & Ex. 1. The legitimacy of this lawsuit is therefore, at best, deeply uncertain**,** raising threshold standing concerns that further weaken Plaintiff's position. Even if one were to overlook that structural deficiency, Plaintiff's own conduct forecloses the urgent, extraordinary relief it now demands. The motion comes several ***months*** after Bohuslavskiy's resignation as Chief Research Officer – submitted on February 24, 2025 – with no concurrent objection by Plaintiff. *See* Bohuslavskiy Decl. ¶¶ 71-75. In that resignation, Bohuslavskiy made clear that he was stepping away from his operational title but explicitly reaffirmed his role and responsibilities as a Red Sense partner**,** including delivering real-time threat intelligence to Red Sense clients. Plaintiff tolerated this status for four months, during which Bohuslavskiy continued fulfilling his contractual obligations. *Ibid*.

Such a delay is fatal to Plaintiff's argument for irreparable harm. As the court said in *Fais.*, 751 F. Supp. 2d at 424, held, "[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights," and delay "tends to indicate at least a reduced need for such drastic, speedy action." *See also Lanin v. Borough of Tenafly*, 515 F. App'x 114, 117–18 (3d Cir. 2013). Where a party waits months to act, courts routinely deny injunctive relief. As one court aptly observed, such delay **"**knocks the bottom out of any claim of immediate and irreparable harm.**"** *Pharmacia Corp. v. Alcon Labs, Inc.*, 201 F. Supp. 2d 335, 383–84 (D.N.J. 2002) (collecting cases where 2- to 10-month delays defeated injunctions).

This is especially true in the context of Cyber Threat Intelligence (CTI)**,** where timeliness is everything. *See* Bohuslavskiy Decl. ¶¶ 6, 8-9. In this field, a delay of days is consequential; a delay of months is inexcusable**.** *Ibid.* As Forbes reported, "[m]alicious online adversaries are faster, more efficient, and more business-like than ever before... Security teams are now in a race to out-innovate attackers who are thinking and operating like enterprises themselves." *Tony Bradley, "Cyber Threats Are Evolving Faster Than Defenses," Forbes* (Mar. 6, 2025)*).* In other words, cyberthreats have little shelf life – and Red Sense knows it. If Defendant had truly endangered customer trust or compromised proprietary assets in real time, Plaintiff would have moved immediately. It did not.

Accordingly, this Court should deny Plaintiff's motion.

10

### c.  A Preliminary Injunction Would Disrupt the *Status Quo*.

Preliminary injunctions that disrupt, rather than preserve the *status quo* are disfavored. Plaintiff is attempting to alter the *status quo* that has been in place since early in the year in favor of a new one enjoining Bohuslavskiy from carrying out his duties as Red Sense partner and silencing him from most of his communications as a commentator and expert.

"[D]isruption of the status quo is of utmost concern to the Court." *Fais*, 751 F. Supp. 3d at 425 (citing *Ferring Pharm.*, 765 F.3d at 219 n. 13. "A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) (internal citation omitted). Here, Plaintiff seeks to do exactly what the law warns against: to upend a *status quo* that has been in place since at least February 2025, when Defendant resigned as CRO but expressly reaffirmed his ongoing role as a partner at Red Sense and continued delivering customer-facing cybersecurity intelligence. *See* Bohuslavskiy Decl. ¶¶ 71-75. Red Sense tolerated – and indeed benefited from – this arrangement for months, even while Defendant continued to fulfill the very obligations that Plaintiff now seeks to enjoin. The alleged urgency is not only contrived, but also retroactive.

Plaintiff now asks the Court to silence Bohuslavskiy – not just in his role as a contributing partner, but in his public identity as a globally recognized expert in

ransomware prevention, with his work being covered by the Associated Press, Wall Street Journal, Forbes, the Hill, and Bloomberg. *See* id. ¶ 11. The relief sought would prevent him from communicating with the very public-sector and critical-infrastructure clients he has long served – including hospitals, churches, and schools – under the pretext of protecting Red Sense's proprietary interests. *See* id. ¶¶ 5-7. But this is not a zero-sum game: Defendant has made clear, on the record, that he communicates strictly in his capacity as a Red Sense partner and cybersecurity expert working with law enforcement, not as part of any competing venture. *See* id. ¶¶ 71-75. His reports routinely invite clients to follow up directly with Red Sense, underscoring his efforts to protect – not undermine – the company's standing. *See* id. ¶¶ 76-77. Moreover, vital sectors such as healthcare, education, and emergency services depend on timely, accurate cyber threat intelligence. *See* id. ¶¶ 5-9. Defendant's contributions to this work are not generic or replaceable. As a specialist fluent in the Russian and Ukrainian languages and deeply embedded in the ransomware ecosystem, his work cannot be easily replicated by Red Sense's current leadership, whose own technical failures led to client losses, false alerts, and the collapse of NetFlow efficacy. *See* id. ¶¶ 10, 41-43, 46.

Public interest therefore weighs decisively against injunctive relief. To silence Defendant now would not preserve stability – it would destabilize systems designed to protect the most vulnerable, merely to advance an internal power play. The *status*

*quo* is functioning. Red Sense's leadership may be unhappy with the internal dynamics, but dissatisfaction does not constitute a basis for judicial disruption of a functioning business relationship – particularly in an emergent field like cyber threat intelligence where public and private interests converge.

### d. Plaintiff Cannot Establish a Reasonable Probability of Success on the Merits.

### i.    There was no commercial speech for Lanham Act purposes.

As an initial matter, False Advertising under the Lanham Act requires *commercial* speech, which Plaintiff fails to establish. Bohuslavskiy's alleged communications with technicians or during a presentation were not the kind of statements contemplated by the Lanham Act. His other communications, e-mails and the like, comprise expressions of fact or opinion and thus outside the scope of Lanham.

Summarizing the Third Circuit's "substantial guidance on the parameters of commercial speech", following Supreme Court authority, the District of Delaware explains the test for "[c]ommercial speech is 'broadly defined expression related to the economic interests of the speaker and its audience, *generally in the form of a commercial advertisement for the sale of goods and services*'" *Incarcerated Entm't, LLC v. CNBC LLC*, 331 F. Supp. 3d 352, 359 (D. Del. 2018) (emphasis added) (quoting *United States Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir.), *cert. denied*, 498 U.S. 816 (1990) (citing *Bolger v. Youngs Drug Prods.*

*Corp.*, 463 U.S. 60, 66-67 (1983); *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 561 (1980)). The three-part *Bolger* test asks:

> (1) is the speech an *advertisement*;
>
> (2) does the *speech refer to a specific product or service*; and
>
> (3) does the speaker have an economic motivation for the speech[?]

*Ibid.* (emphasis added) (reformatted as a list) (citing *Bolger*, 463 U.S. at 67) (other citation omitted) There is strong support for concluding the speech is commercial for Lanham Act purposes *only if* all three elements are satisfied. *See ibid. Conversely,* if the three characteristics are not satisfied, such support" is lacking.

Here, Plaintiff has not identified a single communication by Bohuslavskiy that qualifies as advertising – let alone a misleading one. Bohuslavskiy is a recognized cybersecurity expert whose communications are made in the context of public service, threat prevention, and intelligence-sharing. *See* Bohuslavskiy Decl. ¶¶ 3, 5-11, 18. For example, Plaintiff references a presentation at the nonprofit Health-Information Sharing & Analysis Center (Health-ISAC) conference, where Bohuslavskiy reportedly addressed imminent ransomware threats affecting healthcare providers. *See* Pla Br. at 19. That type of speech – aimed at warning participants in a public-interest setting about cyber risks – is noncommercial expression. It is not promotional. It is not transactional. And it certainly is not advertising. *Cf. U.S. Healthcare*, *Inc*., 898 F.2d at 933 ("[T]he Lanham Act only applies to misrepresentations made in 'commercial advertising or promotion.'").

Even if Defendant had an economic interest in continuing to build his reputation as an expert, Plaintiff cannot point to any specific product or service that was promoted, nor any audience that was targeted in a commercial sense. There is no advertisement for a rival business, platform, or subscription-based product. Nor is there evidence of solicitation for contracts, conversion of Red Sense clients, or appropriation of proprietary branding. At best, Plaintiff speculates that Bohuslavskiy's speech might eventually have some reputational effect. But even economic motive, standing alone, is insufficient. *All three elements* of the *Bolger* test must be satisfied to classify speech as "commercial," and Plaintiff cannot even establish the first.

Indeed, Plaintiff's own theory is so vague that it cannot articulate what exactly Bohuslavskiy allegedly poached or "peddled," or to whom. It cannot point to a product name, a company name, a service offering, or a call to action. This absence of specificity is fatal. The Lanham Act does not operate in the realm of innuendo; it demands concrete allegations of commercial misrepresentation tied to specific goods or services. Here, there is no such anchor.

In short, even if some of Bohuslavskiy's communications occurred in professional contexts or touched on economic topics, they were neither advertisements, linked to any commercial offering, nor delivered with the intent to promote sales. The most to which Plaintiff might point is a few e-mail responses to *unsolicited* inquiries by two clients already known to Bohulavskiy, raising their own concerns about Red Sense's capacity to address recent threats.

15

By responding affirmatively, he kept them in the Red Sense/Bohulavskiy fold rather than go elsewhere, and potentially saving Bohulavskiy's bonus from Red Sense should they remain Accordingly, the foregoing falls entirely outside the scope of "advertising" and, thus, Lanham Act false advertising liability.

### e. Plaintiff points to no false "advertising".

Even were the Court to deem Bohuslavskiy's speech to be commercial, then to prevail on its claim for false advertising under the Lanham Act, it is Plaintiff's further burden to show:

> 1) that the defendant has made false or misleading statements as to his own product [or another's];
>
> 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;
>
> 3) that the deception is material in that it is likely to influence purchasing decisions;
>
> 4) that the advertised goods traveled in interstate commerce; and
>
> 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Steeplechase Arts & Prods., L.L.C. v. Wisdom Paths, Inc.*, 652 F. Supp. 3d 481, 490 (D.N.J. 2023) (alteration in original) (reformatted for readability) (quoting *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (internal citation omitted). The elements are expressed in the conjunctive; *i.e.*, Plaintiff must show all five. It shows none.

### i.    Bohuslavskiy made no false or misleading statements as to any products.

16

Plaintiff repeatedly incants the phrase "smear campaign" with regard to Bohuslavskiy's post-resignation statements. *See* Pla. Br. at 4, 10, 17, 23, 25-26, 33, 37; Miller Certif. ¶¶ 5, 14; Montanaro Certif. at 14, & ¶¶ 16, 19, 34. But as President Franklin D. Roosevelt's oft-quoted wisdom reminds us, "repetition does not transform a lie into a truth."

What specifically is the "smear" is unclear. Apparently, the word "ethical" in a generally complementary LinkedIn resignation announcement in conjunction with subsequent use of Bohuslavskiy's *personal* e-mail address (necessitated by being blocked from his official member's Red Sense e-mail) somehow comprises a smear campaign because some clients theorized using personal e-mail might be a "scam"?

Whatever Plaintiff's convoluted rationale, as another district court recently phrased it, "[e]ven statements that might be part of a '*smear campaign' targeted at plaintiff's products are not commercial speech* if such a purpose is incidental to the primary purpose behind the statement. *KetoNatural Pet Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 756 F. Supp. 3d 1128, 1148 (D. Kan. 2024) (emphasis added) (citation omitted). All Plaintiff *may* have shown – again, to any extent its submission may be evidential–is personal or professional expression protected under the First Amendment, conveyed for the purpose of educating and forewarning of cyber- and ransomware threats.

ii.    **Plaintiff has shown no deception or tendency to deceive a substantial portion of an intended audience.**

17

The core theory behind Plaintiff's motion is that Bohuslavskiy somehow engaged in deceptive self-promotion or false affiliation with Red Sense. Yet Plaintiff fails to articulate any specific product, service, or misrepresentation forming the basis of a viable Lanham Act claim. At most, Plaintiff offers vague accusations that Bohuslavskiy was "peddling his own wares" – without ever identifying what those wares were, to whom they were marketed, or how any such conduct actually misled consumers. *See* e.g., Montanaro Decl ¶¶ 23, 27-32.

Even assuming, *arguendo*, that Plaintiff could overcome the hearsay problems embedded in its Declarations – and it cannot – there is no material misstatement by Bohuslavskiy regarding Red Sense, their relationship, or its products. The suggestion that a co-owner of Red Sense would impersonate a corporate representative merely to discredit his own company is not just unsupported; it is inherently implausible. Bohuslavskiy holds a 20% equity stake in Red Sense. *See* Bohuslavskiy Decl. ¶ 24 & Ex. 1. He has every incentive to preserve its credibility and value – not undermine it through public deception. Indeed, Plaintiff concedes that Bohuslavskiy resigned only from his operational title as Chief Research Officer – not as a member or co-owner. *See* Pla. Br. at 2 ("When Yelisey Bohuslavskiy…announced his resignation as Chief Research Officer of Red Sense LLC…"), 11 ("Bohuslavskiy submitted his resignation as Chief Research Officer of RedSense"). Under Wyoming law, the distinction is critical:

"If a person that is both a manager and a member ceases to be a manager, that cessation does not by itself dissociate the person as a member." Wyo. Stat. § 17-29-407(c)(vi). This means Bohuslavskiy remained a member and equity partner at all relevant times. Plaintiff's simultaneous effort to invoke causes of action attempting to invalidate his membership (*see* Eighth through Tenth Causes of Action) only underscores that reality. If Bohuslavskiy were no longer a member, there would be no need to litigate his removal.

Moreover, there is no evidence – let alone admissible evidence – that Bohuslavskiy ever misrepresented his status. Plaintiff focuses on an agenda listing for the Health-ISAC conference, where Bohuslavskiy allegedly appeared as a "representative of Red Sense." But this reference comes from the conference's organizers. *See* Montanaro Decl. ¶ 39 (". . . based on the *event agenda* [he] was speaking as a 'representative of Red Sense.'") (emphasis added). That type of third-party description – already layered with hearsay – is not a "false advertisement" by Defendant. Nor does it even rise to the level of a statement made in commercial speech, much less a material misrepresentation under the Lanham Act. If anything, Bohuslavskiy's recognition likely enhanced, not detracted, from Red Sense's standing with this group.

The remainder of Plaintiff's argument rests on speculation: a string of inferences about how clients "must have" interpreted Bohuslavskiy's presence or title. But courts routinely reject such speculation, especially in cases involving sophisticated commercial parties, such as cybersecurity professionals attending a

19

technical briefing. Plaintiff offers no evidence – direct or indirect – that any customer was actually misled, let alone that any such misunderstanding was material to a purchasing decision.

Finally, Red Sense itself appears to operate without a formal operating agreement, *see* Bohuslavskiy Decl. ¶ 33, and Plaintiff cites no Wyoming authority barring an equity member from referring to themselves as a "representative" of the LLC. Indeed, in the absence of an agreement to the contrary, it is entirely consistent with Wyoming law for a member of an LLC to speak on behalf of the entity in contexts relating to business or mission continuity.

To the extent that discovery is required to sort out what representations were made, by whom, and under what authority, that only underscores the impropriety of any preliminary injunction on this issue. At bottom, there is no evidence of false commercial speech by Bohuslavskiy, and certainly none rising to the level of a Lanham Act violation.

### iii.    No deception material enough to influence a purchasing decision.

At its core, Plaintiff's argument is that Red Sense's alleged reputational harm stems from three innocuous events:

1.    A LinkedIn resignation post by Bohuslavskiy referencing "ethical" reasons for stepping down as Chief Research Officer;

2.    A Health-ISAC conference agenda ostensibly listing him as a "representative" of Red Sense; and

3.    The continued use of his personal e-mail address after resigning his operational title.

None of these constitute a falsehood. None involves a product or service offering. And none are plausibly capable of materially influencing the purchasing decisions of sophisticated cybersecurity clients. That is the standard Plaintiff must meet – and it fails categorically.

First, Bohuslavskiy's use of the word "ethical" in his resignation post is a subjective and protected statement of opinion, not an actionable commercial claim. Courts consistently recognize that terms like "ethical," "principled," or "responsible" are non-actionable puffery – too vague and indeterminate to be considered false or misleading. "Only statements of fact capable of being proven false are actionable under the Lanham Act because, when personal opinions on nonverifiable matters are given, the recipient is likely to assume only that the communicator believes the statement, not that the statement is true." *Parker v. Learn the Skills Corp.*, 530 F. Supp. 2d 661, 679 (D. Del. 2008) (citations omitted).

Second, the Health-ISAC agenda reference to Bohuslavskiy as a "representative" is, as Plaintiff concedes, not even attributable to him. See Montanaro Decl. ¶ 39. That designation came from the conference organizers which constitutes hearsay, not Defendant – and even if it had not, it would still be consistent with his status as a current member and equity partner in Red Sense under Wyoming law. See Wyo. Stat. § 17-29-407(c)(vi). Plaintiff offers no evidence that this incidental

title caused confusion – let alone material confusion – among a clientele of technologically advanced, commercially sophisticated cybersecurity buyers.

Third, the fact that Bohuslavskiy used his own e-mail account in fulfilling his post-resignation obligations is both unremarkable and consistent with his rights and duties as a continuing partner. Red Sense knew of and accepted this arrangement for months – until the CEO's litigation strategy dictated otherwise. No case holds that merely using a personal e-mail address amounts to a deceptive business practice. And even if some ambiguity were assumed, Plaintiff offers no evidence that a single customer relied on this as a basis for terminating or suspending their relationship.

To suggest that enterprise-level purchasing agents at global insurers, healthcare systems, or federal integrators made mission-critical CTI decisions based on a LinkedIn post or an agenda listing is not just unsupported – it is absurd. The Lanham Act requires a material misrepresentation – one likely to influence a purchasing decision. Mere offense, ambiguity, or internal speculation does not suffice. *See Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994) (Lanham Act false advertising requires a statement that is "material in that it is likely to influence purchasing decisions") (quoting *U.S. Healthcare*, 898 F.2d at 922) (internal quotation omitted). Put bluntly: Plaintiff has conjured a narrative out of vapor, but that does not transform lawful conduct and subjective expression into material deception. Even if all of Plaintiff's assertions are assumed true – and even if their legal theories were otherwise viable

22

– Plaintiff still fails to show that these trivialities had any plausible impact on customer behavior. Therefore, this element of Plaintiff's claim fails as a matter of law.

Ironically, what may prove most detrimental to any purchasing decision by Red Sense clientele is the initiation of this lawsuit by Red Sense. This action has already been reported in media reviewed by relevant purchasing managers, and it is obvious to those principals to whom Red Sense is referring, notwithstanding any redactions. This action, phrased by Red Sense as more than the partnership dispute it really is, is a deterrent to major organizations seeking stability as well as expertise, and more reason for these clients to look elsewhere than anything Bohuslavskiy might have said about resigning as CRO. It is axiomatic that 'nobody wants to buy a lawsuit,' or in this case, get dragged into one. Again, it is Plaintiff's actions, not Defendant's, that put a cloud over purchasing decisions.

### iv.    There were no 'advertised goods' to travel in interstate commerce.

Plaintiff's claim also fails because it cannot satisfy the Lanham Act's interstate commerce requirement, which mandates that the alleged false advertising involve the promotion of tangible goods or services that travel in or affect interstate commerce. *See* 15 U.S.C. § 1125(a)(1)(B).

Here, Defendant reiterates that he did not advertise or offer any goods – let alone goods traveling in interstate commerce. Plaintiff fails to identify any product or service that Defendant allegedly promoted. Instead, it relies exclusively on

23

snippets of professional correspondence and technical presentations, none of which qualify as commercial advertisements. Hence, this element also fails.

### v.    No Showing Defendant Made any Literally Unambiguous False Ad

"As to the second element, actual deception or a tendency to deceive is presumed if a plaintiff proves that an advertisement is unambiguous and literally false." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). "If the message conveyed by an advertisement is literally true or ambiguous, however, the plaintiff must prove actual deception or a tendency to deceive, and it may do so with a properly conducted consumer survey." *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (citations omitted).

Plaintiff cannot make the required showing under either theory. There is no "advertisement," let alone one that is literally false and unambiguous. Plaintiff relies on (1) a presentation at a nonprofit industry conference where Defendant was listed by a third-party as a "representative" of Red Sense, and (2) a handful of internal or external emails that Plaintiff speculates must convey some improper implication. That is the extent of their claim.

But none of this demonstrates that Bohuslavskiy made a factual assertion that was both explicit and objectively false – the standard for literal falsity. Nor has Plaintiff submitted any consumer survey or admissible evidence to show that the challenged communications actually deceived or had a tendency to deceive

24

recipients. The law is clear: absent a literally false and unambiguous statement, Plaintiff must meet this higher evidentiary burden. It has not even tried. At most, Plaintiff invites the Court to infer bad motives from ambiguous speech and speculative interpretation. But that is precisely what the Lanham Act prohibits. This element, like all others, remains unsatisfied.

### vi.    Defendant Did Not Denigrate Red Sense's Ethics or Products.

Plaintiff fails to identify a single instance in which Bohuslavskiy denigrated Red Sense, its leadership, or its products. Instead, Plaintiff stakes its entire theory on one LinkedIn post in which Bohuslavskiy announced his resignation for "contractual and ethical reasons" – without naming individuals, assigning blame, or even articulating the underlying issue. The post was otherwise professional, tempered, and complimentary, explicitly thanking colleagues and affirming continued commitment to Red Sense clients.

Again assuming, *arguendo* and without admission, that this brief statement could be construed as critical or unfavorable, it remains one isolated remark – not repeated, not elaborated, not weaponized. There is no social media campaign, no media interview, no messaging strategy. Plaintiff offers no evidence that this post was seen, shared, or acted upon by any client, nor does it identify a single lost account attributable to the statement.

Put differently, Plaintiff's claim asks the Court to infer a reputational collapse from a lone, qualified remark – made by a still-serving partner – with no proof of material effect.  But the Lanham Act requires more than discomfort or

25

speculation; it requires actual harm tied to specific, false, and material statements. Here, there is no showing that the post was false, nor that it had any meaningful effect on consumer behavior.

In short, the assertion that this post caused measurable commercial harm is not just unsupported – it is untenable. The law demands more than inference and insinuation. On this record, Plaintiff's theory is speculative at best and borders on the fanciful.

### vii.    Bohuslavskiy Did Not Interfere with Any Current or Prospective Contracts with Red Sense.

As an initial matter, it appears Plaintiff automatically applies New Jersey law to its allegations of tortious interference with prospective economic advantage. *See generally* Pla. Br. But it appears that Wyoming may have the "most significant relationship" upon a claim of an existential threat to one of its limited liability companies. *See Restatement (Second) of Conflicts of Laws* § 146 (1971) (followed in New Jersey claims of tortious conduct were conflict exists); *Calabotta v. Phibro Animal Health Corp.*, 460 N.J. Super. 38, 54-55 (App. Div. 2019); *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 136 (2008).

However, while "[a] federal court sitting in diversity applies the choice-of-law rules of the forum state – here, New Jersey – to determine the controlling law[,]" *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013) (citations omitted), the instant action is *not* a diversity case, Rather, Plaintiff brought this action

26

under 28 U.S.C. § 1331, asserting that federal jurisdiction is founded upon its Lanham and Defend Trade Secret Act claims. *See* Compl. ¶ 9, and Civil Cover Sheet § II ("Federal Question" basis of jurisdiction). This Court exercises supplemental, not diversity jurisdiction over Plaintiff's nonfederal claims pursuant to 28 U.S.C. § 1367(a). *See* Compl. ¶ 9.

The parties' Onboarding Agreement specifies that it "shall be *governed by and construed in all respects* in accordance with the law of the state of Wyoming." *Id.* Ex. "A" § 7 (emphasis added). Therefore, Defendant will address the aspect of Plaintiff's Motion directed to tortious interference with prospective economic advantage under the law of that State.

"The elements for tortious interference with a contract or prospective economic advantage are well established in Wyoming." *Bextel v. Fork Rd. Ltd. Liab. Co.*, 474 P.3d 625, 631 n. 4 (Wyo. 2020) (citing *Gore v. Sherard*, 50 P.3d 705, 710 (Wyo. 2002))

> The plaintiff must demonstrate "(1) **The existence of a valid** contractual relationship or **business expectancy**; (2) **knowledge of the** relationship or **expectancy** on the part of the interferer; (3) **intentional and improper interference inducing or causing a breach or termination of the** relationship or **expectancy**; and (4) **resultant damage** to the party whose relationship or expectancy has been disrupted."

*Ibid.* (emphasis added) (quoting *Gore*, 50 P.3d at 710) (internal quotation to *Fremont Homes, Inc. v. Elmer*, 974 P.2d 952, 955 n.1 (Wyo. 1999)). These elements are not met in this case.

27

### 1. Plaintiff fails to establish a *valid* business expectancy.

Plaintiff's submission repeatedly invokes a parade of anticipated harms, forecasting reputational collapse and loss of business if Bohuslavskiy's alleged "smear campaign" is not enjoined. But rhetoric is not evidence. Plaintiff has not identified – even once – a single prospective client, contract, or commercial opportunity that was actually lost because of anything Bohuslavskiy said or did.

Despite its sweeping claims of impending commercial fallout, Plaintiff fails to cite any concrete example of a terminated negotiation, rescinded proposal, or withdrawn commitment attributable to Defendant. There is no affidavit from a customer, no e-mail cancelling a deal, no internal note linking any lost business to Bohuslavskiy's actions. In short, Plaintiff's assertions are entirely conclusory, unsupported by admissible evidence, and insufficient to sustain a claim for tortious interference or injunctive relief.

### 2. Plaintiff fails to plead Bohuslavskiy's knowledge of a valid expectancy.

Plaintiff argues that Bohuslavskiy was exposed to its client roster solely by virtue of his role as Chief Research Officer, implying that any ongoing communication with those clients constitutes a misuse of confidential information. But this assertion ignores the factual record. Many of the clients at issue were already known to Bohuslavskiy – some because he personally brought them to Red Sense upon his onboarding, and others through his longstanding

presence in the cybersecurity industry. *See* Bohuslavskiy Decl. ¶"21 and Zeiger Decl. ¶ 28.

Bohuslavskiy was a co-founder of AdvIntel, a company with over forty clients and $7 million in annual recurring revenue by 2022 – prior to Red Sense's formation. *See* Bohuslavskiy Decl. ¶ 12. After AdvIntel's closure, a significant number of its clients followed Bohuslavskiy to Red Sense, precisely because of his expertise, reputation, and trustworthiness. *See* id. ¶ 21. Others were already familiar with him through industry events and technical collaboration forums, including public-sector briefings and professional gatherings like the Health-ISAC conference. *See* id. ¶ 11.

Plaintiff's suggestion that Bohuslavskiy only came to know these clients through his brief CRO title is not just inaccurate. It disregards the mutual, pre-existing relationships and continuity of service that were foundational to Red Sense's growth. Bohuslavskiy's continued communication with these – done transparently, and in his capacity as a Red Sense partner – cannot be reframed as misconduct simply because internal disputes later arose.

### 3. Plaintiff fails to show Bohuslavskiy acted improperly inducing or causing a termination of said expectancy.

Plaintiff fails to cite a single instance where Bohuslavskiy induced any client to sever ties with Red Sense, transfer business elsewhere, or take any adverse action. To the contrary, the record shows that Bohuslavskiy consistently encouraged clients to contact Red Sense directly for follow-up and support. *See* Bohuslavskiy Decl. ¶

77. At no point did he solicit business away from Red Sense or suggest that he was acting in any independent or competitive capacity.

What Bohuslavskiy did do – appropriately and within the scope of his expertise – was to offer limited, good-faith guidance to certain clients or contacts, particularly where cyber threats of Russian or Ukrainian origin were suspected. *See* Pla. Ex. B. Given his unique linguistic and regional knowledge, and longstanding cooperation with law enforcement agencies in this field, such outreach was both expected and aligned with Red Sense's mission, not contrary to it, as well as consistent with the public's interest. *See* Bohuslavskiy Decl. ¶¶ 5-8, 10.

### 4. Plaintiff has pleaded no damages from a relationship Bohuslavskiy purportedly disrupted.

Once again, Plaintiff's submission is devoid of any concrete example in which Bohuslavskiy disrupted a customer relationship or induced a client to take adverse action. The closest Plaintiff comes is a vague reference – suspiciously dated the very day the Motion was filed – to an unnamed client expressing dissatisfaction with Red Sense's performance following Bohuslavskiy's resignation as CRO. See Miller Decl. ¶ 34. According to Plaintiff, the client is allegedly withholding payment until certain service issues are resolved. *See* ibid.

This is, at most, a routine payment dispute, not a cognizable injury flowing from any intentional act by Defendant. There is no allegation that Bohuslavskiy contacted this client, misrepresented Red Sense, or played any role whatsoever in the dissatisfaction. The client's concerns appear to relate entirely to performance

issues under Plaintiff's current management – a far cry from the kind of targeted, intentional, and improper interference required to sustain a tortious interference claim under Wyoming law. *See* Bohuslavskiy Decl. ¶¶ 40-43.

Even if one strained to characterize this situation as "damages," there is still no evidence of causation. The law requires more than post hoc attribution; it requires a direct link between Defendant's conduct and the alleged harm. That is simply not present here.

### f.  Plaintiff Fails to Show Irreparable Harm from Bohuslavskiy's Activities.

To begin, the Third Circuit follows the established majority (and New Jersey's) rule that "[e]conomic loss does not constitute irreparable harm[.]" *Acierno*, 40 F.3d at 653. "In general, to show irreparable harm a plaintiff must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" *Ibid.* (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)); *see also Cloud Peak Law Group, P.C. v. Firstbase*, 2022 WYCH 4, p. 5, 2022 Wyo. Trial Order LEXIS 3 (Wyo. Ch. Ct. 2022) ("Harm is irreparable when the injury 'is of a peculiar nature, so that compensation in money cannot atone for it.'") (quoting *Polo Ranch Co. v. Cheyenne*, 61 P.3d 1255, 1264 (Wyo. 2003) (reformatting in original)); *see also Crowe v. De Gioia*, 90 N.J. 126, 132-33 (1982) ("Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages.") (further noting "that *a preliminary injunction should not issue where all material facts are controverted*." (emphasis added) (citing

*Citizens Coach Co. v. Camden Horse R.R. Co.,* 29 N.J. Eq. 299, 305-07 (E. & A. 1878)).

Defendant generally agrees with Plaintiff's argument that "[p]otential damage to reputation constitutes irreparable injury for the purpose of granting a preliminary injunction is [sic] *a trademark case*." Pla. Br. at 33 (emphasis added) (quoting *Opticians Ass'n*, 920 F.2d at 196) (citations omitted). However, this is *not* a "trademark" case. "Red Sense" is not found as a registered trademark in the U.S. Patent and Trademark Office database, neither does it appear as "Red Sense®" nor "Red Sense™" in any of Plaintiff's filed papers.

So, this is not a case where Defendant is accused of an inferior knock-off that tarnishes the mark-holder's reputation or creates confusion as to source. Here, Plaintiff must connect the dots between something derogatory Bohuslavskiy *actually said* to damage Red Sense's reputation – indeed, Red Sense must establish a preexisting positive reputation as a benchmark in the first instance. These it has not done, relying instead on self-serving, laudatory statements about itself and reading clients' minds to find that they are "confused" and frightened because Defendant used a non-Red Sense e-mail address after he resigned.

In another flight of imagination, Plaintiff speculates that Bohuslavskiy retaliated for the June 27, 2025 filing of this lawsuit by inducing a (previously disgruntled) client to withhold payment until a rapprochement occurs between the

parties. *See* Miller Decl. ¶ 12. Assuming, for the sake of argument, that this client perceived Red Sense's quality to have deteriorated after Bohuslavskiy stepped down as CRO, the obvious implication is that Red Sense needs to up its game or get him back – *not* that Bohuslavskiy is the Wizard behind the curtain controlling whom this major corporation pays or when.

Plaintiff's arguments are absurd. What *is* clear, particularly from the excerpt of Red Sense's own PowerPoint presentation, *see* Bohuslavskiy Decl. ¶ 66 & Ex. 4, is that Red Sense was hemorrhaging money in early February 2025, prior to Bohuslavskiy's freeze-out, and had some major challenges. Plaintiff had also lost critical personnel. *See* id. ¶ 40. Clients were already unhappy with Red Sense. *Id.* ¶¶ 40-43, 46. It is more plausible that Red Sense's financial woes are attributable to its remaining officer's mismanagement at and post-dating Bohuslavskiy's resignation, not his imagined power to poison Red Sense's business relationships. At least, Plaintiff is not entitled to such a dubious inference on a motion for a preliminary injunction without an iota of competent, corroborating evidence showing any kind of campaign, much less a smear campaign.

Neither has Red Sense shown by competent evidence that Bohuslavskiy "absconded" with anything it failed to license, was separately developed or to which it was otherwise not entitled. Plaintiff may and likely will argue that is not the case,

33

but discovery is required and there are too many disputes of material facts at this early stage to support injunctive relief.

Plaintiff must prove its case. In this Circuit, "a party seeking a preliminary injunction in a Lanham Act case *is not entitled to a presumption of irreparable harm* but rather is required to demonstrate that she is likely to suffer irreparable harm if an injunction is not granted." *Ferring Pharms.*, 765 F.3d at 217 (emphasis added). Red Sense expends great energy and verbiage on what its other members think their sophisticated customer base thinks and how prospective ones make decisions, but this fails to meet the standard.

Still further, Defendant notes the absence of any client Declaration or objective evidence that any entity canceled or refused a contract with Red Sense because of something Bohuslavskiy said – presumably including the complimentary statements its submission omits. Plaintiff concedes it plays in a competitive market-place, *see e.g.* Montanaro Decl. ¶¶ 5-6. Stiff competition and a demanding clientele do not ground a claim of irreparable harm attributable to Bohuslavskiy, so this 'gateway' element for a preliminary injunction has not been met.

### g. The Balance of Equities (or 'Injuries') Heavily Favors Defendant.

"Before granting an injunction, a district court must balance the relative harm to the parties, i.e., the potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued." *Novartis*

*Consumer*, 290 F.3d at 596 (citing *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc*., 902 F.2d 222, 226 (3d Cir. 1990)).

Plaintiff, having failed to establish any reasonable likelihood of success on either its Lanham Act or tortious interference claims, is highly unlikely to prevail by arguing Red Sense, an ongoing concern with a self-described client base of household-name corporations, more than Bohuslavskiy would be hurt. The Third Circuit "ha[s] recognized that 'the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor.'" *Kos Pharm., Inc. v. Andrx Corp*., 369 F.3d 700, 729 (3d Cir. 2004) (quoting *Novartis Consumer*, 290 F.3d at 597). Conversely, where Plaintiff's potpourri of correlation, projection, and psychic musings makes a win highly improbable, the more heavily must the balance of harms favor Plaintiff. It does not.

Moreover, Plaintiff fails to "demonstrate irreparable injury as a result of any non-consensual use of any Red Sense intellectual property that would result in a loss of control of reputation or likelihood of confusion to consumers. *See Pappan Enters. v. Hardee's Food Sys.*, 143 F.3d 800, 805 (3d Cir. 1998) (franchise context). In such a case, "[t]he self-inflicted nature of any harm suffered by [defendant] also weighs in favor of granting preliminary injunctive relief." *Id.* at 806. Here, it is Red Sense that shot itself in the foot, firing and freezing out talent, promising vaporware, and

failing to maintain the high-quality standards that would have earned it the stellar reputation it imagines in its brief.

Plaintiff's claim that Bohuslavskiy is on a campaign of retribution is projection. As a member of Red Sense, the argument is inherently contradictory. Red Sense cannot readily replicate Bohuslavskiy's unique experience and skills, so is trying either to blame or take him down with it, or both.

Plaintiff is the author of its own misery here, and cannot establish reputational injury by Defendant, much less a greater injury to itself on balance. This factor fails.

### h. Public Interest Weighs Heavily Against a Preliminary Injunction.

Plaintiff's request for injunctive relief fails not only for lack of evidence and legal merit, but because it runs counter to the public interest. This District recognizes that "[t]he public has a strong interest in free competition." *Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp. 2d 594, 609 (D.N.J. 2003) (citing *Barmasters Bartending Sch. v. Authentic Bartending Sch.*, 931 F. Supp. 377, 387 (E.D. Pa. 1996) (recognizing "the public's interest in free competition")). Plaintiff invokes sweeping harm but has failed to show any basis for restricting lawful competition, protected speech, or ongoing professional activity in the cybersecurity field.

To be clear, this is not a case involving false branding, consumer confusion, or competitive misrepresentation. While the public interest may weigh differently where "misleading advertisements" are at issue – particularly in cases involving

consumer safety, such as pharmaceuticals – see *Novartis Consumer*, 290 F.3d at 597 (which "interest is particularly strong where over-the-counter drugs are concerned") (citing *American Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987) (internal citations omitted)) – those concerns are wholly inapplicable here.

Plaintiff has failed to identify a single "advertisement" as contemplated by the Lanham Act, let alone one that is false or misleading. Nor has Plaintiff shown any business expectancy or prospective contract with which Defendant has interfered, tortiously or otherwise. These are not abstract deficiencies; they go to the very foundation of Plaintiff's claim and the extraordinary relief it seeks.

As the Third Circuit has explained: "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff. Nonetheless, district courts should award preliminary injunctive relief only upon weighing all four factors." *Winback*, 42 F.3d at 1427 n. 8 (citing *Duraco Prods., Inc. v. Joy Plastic Enter., Ltd.*, 40 F.3d 1431[, 1438] (3d Cir. 1994)). That balancing is fatal here. Plaintiff has demonstrated neither a likelihood of success nor irreparable harm, and the equities weigh heavily in favor of preserving open professional discourse in a critical public-interest sector.

Finally, and most critically, the clients implicated in this case include vulnerable healthcare providers and financial institutions – organizations the public depends on for real-time, secure operations. Implicit in Plaintiff's request is the

assumption that if Defendant is silenced, Red Sense alone can step in. But there is no support in the record for that claim. To the contrary, the record shows performance issues began after Defendant's resignation as CRO, and there is no evidence Plaintiff is adequately equipped to fill that void.

This is not a classic false advertising or unfair competition case. It is not a dispute over brand confusion, counterfeit products, or diverted goodwill. What is at stake here are high-stakes cybersecurity systems – and if those systems fail, the costs are not just commercial but potentially catastrophic. The public interest favors expertise, responsiveness, and transparency – not judicially imposed silence based on speculative claims.

### i.  Requirement to Post Bond for a Preliminary Injunction.

In the event the Court may be inclined to grant injunctive relief, Defendant respectfully reminds it "may issue a preliminary injunction or a temporary restraining order *only if the movant gives security in an amount that the court considers proper* to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *Instant Air Freight,* 882 F.2d at 803-04 ("[A] district court commits reversible error when it fails to require the posting of a bond by the successful applicant for a preliminary injunction." ) (citing *System Ops. Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131 (3d Cir. 1977); *Frank's GMC Truck Ctr., Inc. v. General Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988)). The bond requirement is an intentional "barrier to the

granting of a preliminary injunction. The barrier fulfills one of the purposes of the bond requirement. . . 'The bond deters rash applications for interlocutory orders; the bond premium and the chance of liability on it causes plaintiff to think carefully beforehand.'" *Id.* at 804 (3d Cir. 1989) (quoting O. Fiss and D. Rendleman, *Injunctions* 383 (1984)). Defendant respectfully suggests a bond in the amount of $1 million would appropriate due to the anticipated duration of this litigation and to rehabilitate the tarnish on Bohuslavskiy's reputation from accusations of theft and dishonor in an industry where trust is crucial.

## V.    CONCLUSION

For the foregoing reasons, disputes of fact, dubious or inadmissible evidence, unreasonable delay under the circumstances, no clear likelihood of success, no advertisement *per se*, no showing of a stymied business expectancy, no non-compensable harm, a balance of equities favoring Defendant, and an overwhelming public interest in protecting healthcare providers among other organizations from ransomware and other cyber-attacks quickly, all individually and collectively militate against injunctive relief. The scope of relief Plaintiff seeks, as suggested in its proposed order, is breathtakingly overbroad. Thus, Defendant respectfully requests that the Court deny Plaintiff's motion for preliminary injunction in its entirety.

Dated: August 4, 2025                      Respectfully submitted,
                                           Kim, Lim & Partners
                                           *Attorneys for Defendant*
                                       s/ *Joshua S. Lim*_____
                                           Joshua S. Lim