Preetha Chakrabarti
Rachel Elaine Hsu (*pro hac vice* pending)
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 223-4000
Facsimile: (212) 223-4134
pchakrabarti@crowell.com
rhsu@crowell.com

Anna Z. Saber (*pro hac vice* pending)
CROWELL & MORING LLP
3 Embarcadero, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827
asaber@crowell.com

*Attorneys for Plaintiff Red Sense LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Red Sense LLC<br><br>  Plaintiff,<br><br>v.<br><br>Yelisey Bohuslavskiy,<br>a.k.a. Elisei Boguslavskii<br><br>  Defendant. | Civil Action No. 2:25-cv-12281<br><br>**DECLARATION OF DAVID MONTANARO IN SUPPORT OF CONSOLIDATED MOTION TO SEAL PURSUANT TO L. CIV. R. 5.3** |

I, David Montanaro, declare as follows:

1. I am the CEO of Red Sense LLC ("RedSense") and one of the founders of the LLC. I make this declaration in support of Red Sense's Motion to Seal Pursuant to L. Civ. R. 5.3 RedSense's Unredacted Reply Memorandum (ECF No. 37), the Declarations of David Montanaro (ECF No. 37) and Andrea Surratt (ECF No. 37), and Exhibit B to the David Montanaro Declaration (ECF No. 37). This declaration is based upon my personal knowledge and experience at RedSense, as well as my review of the records that Red Sense maintains. If called upon to do so, I could and would testify competently as to the facts stated herein.

2. Attached to my declaration is Appendix A detailing further the nature of the materials at issue, the legitimate interests which warrant sealing, the clearly defined and serious injury that would result if RedSense trade secrets were made public, and why a less restrictive alternative to the relief sought is not available.

3. RedSense seeks to seal three categories of information: (1) the names of RedSense customers, (2) an email from a customer, and (3) information related to the FBI investigation of Michael Zeiger.

4. As a result of Bohuslavskiy's involvement with RedSense, he had access to information that RedSense considers to be its confidential or trade secret information. Also as a result of his position, Bohuslavskiy would be aware of the

2

importance of maintaining the confidentiality of this proprietary information and that it would be damaging to RedSense if such information was publicly disclosed.

5. Additionally, although RedSense disputes that Bohuslavskiy is a partner of RedSense, Bohuslavskiy's position is that he was and remains to be a RedSense partner, which means he would be obligated to abide by the duty of confidentiality. His objections to sealing RedSense's communication is in direct contradiction to his duty of confidentiality as a purported partner of RedSense.

**Category 1: The Names of RedSense Customers**

6. RedSense alleges false advertising under the Lanham Act and tortious interference claims against Bohuslavskiy. To state its claim with specificity, RedSense identified the at-issue customers in connection with its allegations.

7. RedSense considers its customer list and prospective customer list to be RedSense trade secrets, which merits sealing of the names of its customers. RedSense does not publicly share its customer information, and in the event that sharing customer information is necessary, it only does so under the protection of a confidentiality agreement and the customer's express permission.

8. Additionally, by way of RedSense's contracts with its customers, RedSense is obligated to uphold strict operational security measures and perform under industry-established, recognized standards. Failure to do so would be cause for breach and termination of said agreements. This includes, for example,

maintaining the confidentiality of RedSense customers' identities, communications with customers, and the terms of the agreements. Disclosing RedSense's customers' names could cause RedSense to be in violation of its customer agreements.

9. Finally, given the industry RedSense operates in and the service RedSense provides, publicly sharing the names of our customers may cause harm to RedSense's customers. If the names of RedSense's customers and the services they receive from RedSense are disclosed, a malicious threat actor or cybercriminal could leverage that information to target RedSense's customers.

10. Based on my over thirty-five years of experience in the technology, cybersecurity, and threat intelligence industry, I am familiar with a tactic used by cybercriminals known as "phishing," a form of cyberattack where the threat actor attempts to trick their targets into revealing sensitive information by making fraudulent requests for credentials or other secure information appear to be legitimate communications. If threat actors knew the identities of RedSense's customers, they could use this information to perpetuate a phishing attack against the customers. For example, the threat actor could send a fraudulent email to a RedSense customer posing as RedSense and seek sensitive information from the customer under the guise of needing this information to better serve the customer account. RedSense has an interest in protecting its customers from cyberattacks,

and accordingly it is necessary to preserve the confidentiality of the customer names.

**Category 2: Customer Communications**

11. To demonstrate the harm caused by Bohuslavskiy (particularly in connection with RedSense's PI Motion), RedSense initially included direct quotations from its customers that RedSense alleges demonstrates Bohuslavskiy's tortious interference, but did not include the entire email communication. In Bohuslavskiy's Opposition to RedSense's PI Motion, Bohuslavskiy referred to a particular customer communication as "suspiciously dated" because RedSense had received the communication the same day that it filed its PI Motion (ECF No. 22 at 30. The insinuation was that RedSense fabricated this communication to support its PI Motion. To refute this claim, RedSense included the entire email chain as Exhibit to my declaration in support of RedSense's Reply Memorandum. By calling into question the veracity of RedSense's arguments, it is Bohuslavskiy who necessitated the filing of the entire email, which in turn necessitates filing the entire document under seal.

12. This email discusses the fees owed under the RedSense-customer agreements and the services customers have contracted with RedSense for. RedSense considers the terms of its customer agreements, including the fees paid and services provided, to be RedSense trade secrets. Allowing the public (other

5

customers or competitors) to have access to the terms of RedSense's customer contracts and the exact nature of the services that RedSense provides would give the public an unfair competitive advantage. A potential customer or competitor who has access to this confidential, competitive information is able to use this information to undermine RedSense in the market.

13. Additionally, as with the customer names, RedSense is obligated under the terms of its RedSense-customer agreement to uphold strict operational security measures and maintain the confidentiality of the agreement terms. Disclosure of customer communications that reveals these terms may cause RedSense to be in breach of its customer agreements. These redacted communications also may contain information that the customer considers to be its own confidential information, which RedSense has no right to divulge. Based on my experience in this industry, customers have an expectation that RedSense will not publicly disclose such information, and doing so could result in an erosion of trust or damage to RedSense's reputation.

14. This expectation is confirmed by the fact that the emails included a confidentiality notice in the footer stating that the contents of the message are considered confidential and intended solely for the use of the recipient. Such notice signifies that all parties to the communication acknowledged that the

communications contained confidential information and expected them to remain protected.

15. Prior to his resignation from RedSense, Bohuslavskiy participated in communications with RedSense customers and would have knowledge that such communications included a confidentiality notice. He would also have knowledge of his obligations as a purported partner of RedSense (which RedSense disputes) to maintain the confidentiality of these communications and not do anything that could harm the relationship between RedSense and the customer.

16. Bohuslavskiy consents only to the redaction of the customer name and objects to the sealing of any part of the email's contents or quotations from the email. Redacting only the customer's name would defeat the purpose of RedSense's Motion to Seal. RedSense considers its private communications with customers to be confidential. RedSense does not disclose the contents of these communications outside of RedSense. RedSense incurs harm if either the customer name or communication is disclosed, and it keeps both confidential for that reason.

**Category 3: Declaration from Andrea Surratt Regarding FBI Investigation and References to Specific Content from Declaration**

17. In connection with Bohuslavskiy's Opposition to RedSense's PI Motion, Bohuslavskiy included the Declaration of Michael Zeiger. Much of Zeiger's declaration was not related to the subject matter of RedSense's PI Motion, but was instead an opportunity for Zeiger to air his grievances against myself and another

7

member of RedSense, Kevin Stear. Notably absent from the Zeiger Declaration is an acknowledgement that the corporate governance events he described occurred while he was being investigated by the FBI, unrelated to RedSense. Although RedSense contends that none of the Zeiger Declaration is relevant, should the Court rely on the Zeiger Declaration, RedSense contends that Zeiger's credibility is undermined by the FBI investigation. Accordingly, RedSense submitted the Declaration of Andrea Surratt, RedSense's outside counsel who represented RedSense in connection with FBI's investigation into Zeiger.

18. RedSense moves to seal the Surratt Declaration because it contains details about the FBI Investigation that go beyond what was contained in the Board Consent that Bohuslavskiy publicly filed (ECF No. 22-3). Although Zeiger apparently had no qualms about launching character attacks as part of his own vendetta, RedSense respects Zeiger's privacy and contends it is appropriate to seal these details of the investigation, particularly where Zeiger is not a party to this lawsuit.

19. Additionally, RedSense believes that the FBI investigation may be ongoing. To the extent that the investigation remains ongoing, RedSense contends that preserving the sanctity of a law enforcement investigation merits sealing.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on August 25, 2025 in Waltham, Massachusetts.

_____
David Montanaro
CEO and Partner
Red Sense LLC