Preetha Chakrabarti
Rachel Elaine Hsu (*pro hac vice* pending)
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 223-4000
Facsimile: (212) 223-4134
pchakrabarti@crowell.com
rhsu@crowell.com

Anna Z. Saber (*pro hac vice* pending)
CROWELL & MORING LLP
3 Embarcadero, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827
asaber@crowell.com

*Attorneys for Plaintiff Red Sense LLC*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Red Sense LLC<br><br>                 Plaintiff,<br><br>       v.<br><br>Yelisey Bohuslavskiy,<br>a.k.a. Elisei Boguslavskii<br><br>                 Defendant. | Civil Action No. 2:25-cv-12281<br><br>**REDSENSE'S OPPOSITION TO DEFENDANT'S MOTION TO ABSTAIN-IN-PART AND STAY** |

## **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................... 1

II.  STATEMENT OF FACTS AND CORRECTED CHRONOLOGY ............ 2

III. ARGUMENT ................................................................................ 6

   **A.   Bohuslavskiy's Continued Distractions Should Be Rejected. ................. 6**

     1.   Bohuslavskiy's Derogation of the First Filed Rule is Improper. ............... 6

     2.   Bohuslavskiy Missed his Opportunity to Make the Instant Arguments. .... 9

   **B.   Bohuslavskiy's Membership Status is Not the Determinative Issue of RedSense's Lawsuit. ............................................................................. 10**

   **C.   The Court Should Reject Bohuslavskiy's Abstention Arguments. ........ 15**

     1.   The *Brillhart-Wilton* Abstention Doctrine is Inapplicable ....................... 15

     2.   The Wyoming Action is Not a Parallel Action. ....................................... 18

     3.   The *Reifer* Factors Do Not Support Abstention ....................................... 21

IV.  CONCLUSION ............................................................................. 25

i

## TABLE OF AUTHORITIES

*Akishev v. Kapustin*, 23 F.Supp.3d 440, 447 (D.N.J. 2014) .................................. 25

*Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 519–20 (D.N.J. 2013) .......11

*Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 492 (1942) .......................................... 20

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ........................................................................................................................ 20

*DiAnoia's Eatery, LLC v. Motorists Mutual Insurance Company*, 10 F.4th 192, 205 (3d Cir. 2021) ................................................................................................... 26

*Haghighi v. Horizon Blue Cross Blue Shield of N.J.*, Case no. 19-cv-20483-FLW 2020 U.S. Dist. LEXIS 157246, at *19 (D.N.J. Aug. 31, 2020) ......................... 17

*Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 283 (3d Cir. 2017) ................. 23

*Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989) ...........11

*Lukoil North America LLC v. Rts. 94 & 515 Vernon, L.P.*, 2017 WL 6450482 (D.N.J. 2017) ........................................................................................................ 22

*Mantle v. North Star Energy & Construction LLC*, 437 P.3d 758, 798 (Wyo. 2019) ............................................................................................................................... 17

*Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) ...................... 17

*Raia v. Travelers Auto Ins. Co. of New Jersey*, 2012 WL 5200062 (D.N.J. 2012). 27

*Rarick v. Federated Service Ins. Co.*, 852 F.3d 223, 229 (3d Cir. 2017) ................ 21

*Reifer v. Westport Ins. Co.* 751 F.3d 129 (3d Cir. 2014) ........................................ 25

*Royal Canin U.S.A. v. Wullschleger*, 604 U.S. 22, 35 (U.S. 2025) ........................ 14

*Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 395 (5th Cir. 2003) ........... 21

Tech. Dev. Co. v. Onischenko, 174 F. App'x 117, 122 (3d Cir. 2006) .....................11

*Univ. of Md. at Balt. v. Peat Marwick Main & Co.*, 923 F.2d 265, 276 (3d Cir. 1991) ..................................................................................................................... 24

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1182-83 (Del. Ch. 1999) .......................................................................... 18

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 280 (1995) ............................................ 20

## I.  __INTRODUCTION__

On June 27, 2025, Plaintiff RedSense filed suit against Defendant Yelisey Bohuslavskiy in New Jersey, Defendant's state of residence. On August 7, 2025, Bohuslavskiy elected to file an *Answer*, not a Motion to Dismiss, and not a motion to dismiss for improper venue under Rule 12(b)(3) or a motion to transfer venue under 28 U.S.C. § 1404(a). Now, six weeks after the commencement of this lawsuit, Bohuslavskiy asks the Court to abstain from deciding Counts 8-10 and stay the remainder of the action in favor of the complaint he *later filed* in Wyoming state court. Bohuslavskiy attempts to disguise arguments that should have been properly raised in a Rule 12 motion in this Motion to Abstain-in-Part and Stay. This is procedurally improper, and the substance fares no better.

Bohuslavskiy's arguments in favor of staying Counts 1-7 of the present action (the "District of New Jersey Action") require the Court to pretend these claims do not exist. He argues that they are merely ancillary and can be dispensed of easily if the question of his membership status is resolved, but this ignores black letter law regarding the elements of these claims and what RedSense actually alleges. Bohuslavskiy disregards that RedSense filed its action first, arguing that RedSense engaged in improper forum shopping by suing Bohuslavskiy in *his home state*.

As for Counts 8-10, Bohuslavskiy's abstention arguments fair no better. His application of *Brillhart-Wilton* is misguided and unsupported. He conveniently

1

ignores the bulk of RedSense's Complaint, once again arguing that the whole case can be disposed of once a Wyoming court rules on his membership. He asserts that the Wyoming Action is a parallel action that can supplant the District of New Jersey Action, even though there is no substantial similarity of the issues to be decided or between the parties to the action. Bohuslavskiy's argument focuses only on the two declaratory relief causes of action, ignoring that RedSense's Complaint goes beyond claims for declaratory relief and that this Court has jurisdiction as a result of RedSense's other federal claims.

In short, having failed to file first, Bohuslavskiy's Motion to Abstain-in-Part and Stay attempts to rewrite history and frame the case as he wants it to be. This Motion is unsupported and a waste of judicial resources. It should be denied.

## II.   <u>STATEMENT OF FACTS AND CORRECTED CHRONOLOGY</u>

To support his Motion, Bohuslavskiy mischaracterizes key dates and facts. Indeed, Bohuslavskiy goes as far as accusing RedSense of "lulling Bohuslavskiy into believing that serious settlement discussions were ongoing." Stay Mot. at 3. He boldly asserts, without any support, that but for RedSense's "preemptive rush to the courthouse in Newark . . . these issues naturally would have been brought in

2

Wyoming." *Id.*[1] This is a mischaracterization of the parties' prelitigation conduct and sequence of events. Accordingly, RedSense corrects the facts.

On March 7, 2025, RedSense first became aware of Bohuslavskiy's improper communications with RedSense customers after customers sent Bohuslavskiy's correspondence to RedSense. *See* Complaint, Ex. C, ECF No. 1-4. This prompted RedSense's counsel to send a cease and desist letter to Bohuslavskiy on March 17, 2025. *See* Complaint, Ex. D, ECF No. 1-5.

On March 31, 2025, Bohuslavskiy responded to RedSense's cease and desist, dismissing RedSense's concerns with a hand wave and focusing more on his own grievances about RedSense and its members. *See* Complaint, Ex. E, ECF No. 1-6. Additionally, he fixated on his belief that RedSense did not have authority to retain its law firm as counsel—his incorrect belief that RedSense could not retain counsel absent his consent would ultimately predominate all efforts to resolve the substantive issues and would serve as a roadblock to any potential resolution. *Id.* at 12. He also spent pages of his response questioning the professional integrity of RedSense's lawyer and law firm. *Id.* at 3-4; 6; 9-10. Nowhere in this letter did Bohuslavskiy

---

[1] In connection with Bohuslavskiy's Opposition to RedSense's Motion for Preliminary Injunction, Bohuslavskiy argues that RedSense's requested relief should be denied because RedSense delayed in seeking relief. ECF No. 22 at 14. Now, in connection with *this* Motion, suddenly RedSense's actions were not one of "delay" but one where RedSense "rush[ed]" into Court. Bohuslavskiy continues to take inconsistent and contradictory positions in this litigation.

address the actual concerns RedSense had raised, giving RedSense serious doubt as to whether informal dispute resolution would be fruitful.

Nevertheless, seeking to avoid judicial intervention, RedSense continued to seek amicable resolution for the next three months before filing suit. But Bohuslavskiy constantly refused to answer any questions or address RedSense's specific concerns, remained focused on ancillary issues, and placed unreasonable demands on RedSense. For example, Bohuslavskiy repeatedly insisted that RedSense had no authority to retain a law firm to sue him. *See, e.g.*, Complaint, Ex. F, ECF No. 1-7 at 13. And when RedSense proposed having a neutral third party assist in resolution, Bohuslavskiy outright rejected that proposal and instead demanded that both parties should simply "compl[y] with documented contractual obligations and applicable Wyoming law." *Id.* at 9.[2] He also refused to engage in any further dispute resolution unless RedSense withdrew its allegations and conceded the disputed issues. *Id.* RedSense rejected these demands as unreasonable. *Id.* at 7.

After three months of discussion Bohuslavskiy had failed to address any one of RedSense's concerns, and RedSense could wait no longer to vindicate its rights and seek remedy for the harm it was experiencing. While RedSense made clear that

---

[2] Of course, had Bohuslavskiy "compl[ied] with documented contractual obligations and applicable Wyoming law," there would be no dispute that needed to be resolved. Given that RedSense had been attempting to communicate with Bohuslavskiy for a month and it was going nowhere, RedSense believed a third-party neutral would help bring both the parties together.

it would prefer to resolve the case without litigation, it was prepared to litigate and made clear that it "would stand behind a lawsuit brought against [Bohuslavskiy] based on the same facts." *Id.* at 20. Ultimately, that is what RedSense was forced to do. Each time RedSense and Bohuslavskiy appeared to make any progress toward a substantive discussion regarding the issues first raised by RedSense in March 2025, Bohuslavskiy would distract and obfuscate the real issues. It became clear that the communications between Bohuslavskiy and RedSense were going nowhere. Coupled with the continued harm that RedSense was facing as a result of Bohuslavskiy's actions, RedSense ultimately chose to file a lawsuit against Bohuslavskiy. This is not the gamesmanship Bohuslavskiy suggests.

Bohuslavskiy also ignores the procedural history of the case; RedSense provides this chronology:

- June 27, 2025: RedSense sues Bohuslavskiy in the District of New Jersey. ECF No. 1.

- July 1, 2025: RedSense files its Motion for Preliminary Injunction. ECF No. 7.

- July 8, 2025: RedSense files its Proof of Service. ECF No. 10.

- August 4, 2025: Bohuslavskiy files suit against RedSense in Wyoming ("Wyoming Action"). *See* Chakrabarti Decl., Exhibit A.

- August 7, 2025: Bohuslavskiy files Answer, Counterclaim, and Third-Party Complaint in District of New Jersey Action. Bohuslavskiy includes claims against RedSense and RedSense members David Montanaro and Kevin Stear. ECF No. 23. RedSense first learns of Wyoming Acting from Bohuslavskiy's reference to the Wyoming Action in the Answer. *Id.* at 39.

- August 8, 2025: Bohuslavskiy files Proof of Service in Wyoming Action. *See* Chakrabarti Decl., Exhibit B.

- August 21, 2025: Bohuslavskiy files Proof of Service in the District of New Jersey Action for service on David Montanaro and Kevin Stear. ECF No. 35; ECF No. 36.

## III.  <u>ARGUMENT</u>

### A. Bohuslavskiy's Continued Distractions Should Be Rejected.

Much of Bohuslavskiy's arguments border on the absurd. He argues that the Third Circuit declines to apply the first-filed rule, yet does not cite a single case in support. He disregards basic rules regarding venue, denying that venue is proper in the judicial district where the defendant resides (here, New Jersey). He accuses RedSense of forum shopping—again without a single case in support—arguing that RedSense acted improperly by suing Bohuslavskiy where Bohuslavskiy resides. Next, he argues that his *subsequent* filing in Wyoming means that it would have been proper for RedSense to file its *earlier filed* action in Wyoming.

Finally, many of Bohuslavskiy's arguments in his Motion to Stay relate to the merits of RedSense's claims. These arguments would have been properly raised through a motion to dismiss in response to the original Complaint; that time has passed.

### 1. *Bohuslavskiy's Derogation of the First Filed Rule is Improper.*

Bohuslavskiy asserts that "the Third Circuit and other courts have declined to apply the first-filed rule where, as here, a party acted engaged [sic] in forum

shopping to secure a procedural advantage." Stay Mot. at 4. Despite this bold assertion, Bohuslavskiy does not cite a single case where the Third Circuit—or any other court for that matter—has "declined to apply the first filed rule."

Next, Bohuslavskiy's accusation that RedSense engaged in forum shopping is equally unsupported. Venue is proper in the judicial district where the defendant resides. 18 U.S.C. § 1391(b)(1). As Bohuslavskiy admits, he is a resident of New Jersey. ECF No. 23 (Answer) ¶ 10. This makes the District of New Jersey a proper venue for claims asserted against Bohuslavskiy. *Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 519–20 (D.N.J. 2013). And it renders his argument that "New Jersey's role here is incidental at best" (Stay Mot. at 5) disingenuous. Bohuslavskiy's argument that RedSense filing its case in Bohuslavskiy's home state is "forum shopping" is a peculiar one. Indeed, in *Tech. Dev. Co. v. Onischenko*, the defendant was sued in his home jurisdiction and argued that it would be more convenient for him to defend himself thousands of miles away. 174 F. App'x 117, 122 (3d Cir. 2006). The court there concluded that plaintiff's choice to sue defendant "in the only place it thought it could obtain jurisdiction is evidence that its choice of forum was based on convenience factors." *Id.*; *see also Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989) (filing in defendant's home state was an example of plaintiff choosing a convenient forum and not some ulterior motive).

7

Equally confusing is Bohuslavskiy's argument that his decision to file a lawsuit against RedSense in Wyoming somehow results in Wyoming being his forum of choice in an entirely different case where he is a defendant. Stay Mot. at 5-6. Despite Bohuslavskiy's best effort to bend time, on June 27 when RedSense filed its Complaint against Bohuslavskiy in this Court, Bohuslavskiy had not yet filed in Wyoming, and would not file the action for *over a month*. When he was sued in the District of New Jersey, there was no indication that Bohuslavskiy had "chosen" Wyoming as a forum for his claims against RedSense.[3]

Bohuslavskiy's attempt to force a stay and abstention in this Court based on a Wyoming action he filed *over a month after* the instant case constitutes the true forum shopping here.[4] Bohuslavskiy's actions are improper and circumvent established procedures.

---

[3] Indeed, if RedSense had filed first in Wyoming, Bohuslavskiy would have a strong argument that Wyoming neither had personal jurisdiction over him nor was convenient venue. Further, there is no rule (and certainly Bohuslavskiy does not cite to any) that purported or disputed membership status of an individual for an LLC that is incorporated under Wyoming law gives the state of Wyoming blanket jurisdiction over the individual for his personal wrongdoings.

[4] Bohuslavskiy is basically using this motion as a proxy for a motion to transfer venue, without going through the requirements that a motion to transfer venue requires. This is not the first time that Bohuslavskiy has circumvented normal procedures. For example, in connection with a recent opposition to a Motion to Seal, Bohuslavskiy made arguments regarding the merits of RedSense's DTSA claim. ECF No. 31 at 13. In another opposition to a Motion to Seal, Bohuslavskiy made arguments in favor of striking a declaration for hearsay, but did not file a motion to strike. ECF No. 40 ¶¶ 35-41 (Proposed Order). He does the same here. Section III.A.2, *infra.*

### 2. *Bohuslavskiy Missed his Opportunity to Make the Instant Arguments.*

Bohuslavskiy argues that RedSense's federal claims are "pretextual" and "pled primarily to create federal-question jurisdiction." Stay Mot. at 8. If Bohuslavskiy sincerely believes this, he had the ability to file a motion to dismiss RedSense's federal claims in response to RedSense's Complaint. But he chose not to. Indeed, when Bohuslavskiy requested the Court grant an extension to the Motion for Preliminary Injunction briefing schedule, Bohuslavskiy intimated that a motion to dismiss was forthcoming,[5] but ultimately filed an Answer instead. Having forgone a motion to dismiss, he cannot use this motion to backdoor arguments that are more appropriate for a motion to dismiss.

Bohuslavskiy also argues—likely realizing he missed his chance for a motion to dismiss—that "even if the federal claims are properly pled, they are truly ancillary to the real controversy." Stay Mot. at 9. But Bohuslavskiy declaring that the claims are ancillary does not make them so.[6] *See infra* Section III.B.

---

[5] *See* ECF No. 19 at 4 ("Defendant requests that opposition to both of Plaintiff's complex motions be due by a more reasonable August 19, twelve days after what Defendant contemplates may be a Rule 12(b) motion in lieu of answer to the Complaint.").

[6] RedSense moved for a preliminary injunction based on three of its claims, including its federal claim for False Advertising in violation of the Lanham Act. It is unclear how a claim that is the basis of RedSense's request for injunctive relief is "ancillary."

9

### B. Bohuslavskiy's Membership Status is Not the Determinative Issue of RedSense's Lawsuit.

Bohuslavskiy's central argument is that this action should be stayed because the status of Bohuslavskiy's membership is the determinative issue underlying all of RedSense's claims. Stay Mot. at 3 (arguing that Bohuslavskiy's membership is "a threshold question that underpins nearly all claims here"). In support, Bohuslavskiy attempts to maximize the import of Counts 8-10, the only claims where the question of Bohuslavskiy's membership arises, and in doing so consequently minimizes the import of Counts 1-7. Stay Mot. at 9.

Bohuslavskiy is welcome to perceive this case in a way that ignores reality; that does not mean his characterization is correct. It is RedSense *as the Plaintiff* that sets forth what the case is about. *See, e.g., Royal Canin U.S.A. v. Wullschleger*, 604 U.S. 22, 35 (U.S. 2025) ("The plaintiff is the master of the complaint, and therefore controls much about [its] suit," including "which substantive claims to bring.") (cleaned up).

First, Bohuslavskiy argues that RedSense "implicitly acknowledges" the centrality of Bohuslavskiy's membership status by referencing the pre-litigation communication where Bohuslavskiy demanded confirmation of his membership status and RedSense stated it was unable to confirm his status. Stay Mot. at 4 (citing

Complaint ¶ 63).[7] RedSense does not "concede" Bohuslavskiy's status. Indeed, RedSense alleges that Bohuslavskiy's demand that RedSense acknowledge his membership status as a condition precedent to dispute resolution prevented the parties from discussing the harm that Bohuslavskiy caused. Complaint ¶ 63. That Bohuslavskiy demanded acknowledgement of his status and used it to roadblock prelitigation negotiations does not amount to RedSense conceding his status or acknowledging its centrality to this dispute. Defendant's characterization ("Plaintiff concedes that Bohuslavskiy 'unequivocally recognize[s] his status as a legal partner of Red Sense'") is a gross misstatement of Plaintiff's actual statement: "Bohuslavskiy has placed unreasonable and unrealistic demands on RedSense, including . . . the demand that RedSense unequivocally recognize his status as a legal partner of RedSense." Complaint ¶ 63. RedSense's reference to Bohuslavskiy's unreasonable claim that it concede his disputed status as a partner is in no way a concession in itself. Nor is it an acknowledgement that the membership issue is dispositive of the

---

[7] In connection with Bohuslavskiy's March 31 letter, he stated that for certain property that RedSense demanded the return of, RedSense did not own the property and Bohuslavskiy did not have the authority to transfer such property. This, RedSense contends, is in direct violation to the Onboarding Agreement where Bohuslavskiy made representations regarding his ability to transfer the same property to RedSense. Complaint ¶¶ 143-151; Complaint, Ex. F at 20. When RedSense raised this issue with Bohuslavskiy, he sidestepped the issue and did not provide a substantive response. Accordingly, only Bohuslavskiy has the information regarding the inconsistency between his prior representations and his current position regarding the RedSense property.

remainder of the case. Again, as the "master of the complaint," Plaintiff chose which claims to bring in this case and did not predicate Counts 1-7 upon the question of Bohuslavskiy's membership.

Second, while it is true that Counts 8, 9, and 10 involve determinations under Wyoming LLC law, they comprise only three of RedSense's *ten* claims. Three of ten claims does not constitute "nearly all" claims (Stay Mot. at 3); it does not even constitute half. And, where a federal court like the District of New Jersey has subject matter jurisdiction over a case arising out of a federal claim, it has the power to apply and interpret state law arising out of the same "nucleus of operative fact" as the federal claim. *See, e.g., Royal Canin U.S.A.*, 604 U.S. at 27.

Bohuslavskiy's attempts to recast RedSense's Counts 1-7 as hinging on his membership status further underscores his detachment from reality. Bohuslavskiy argues that, if he is found to remain a member, "he is entitled to certain information and access rights that could negate elements of the DTSA claim." Stay Mot. at 9. But whether Bohuslavskiy is entitled to certain information and has access rights does not preclude a determination that he *misappropriated those trade secrets*. The elements of a DTSA claims are: "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; . . . (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; . . . and (3) the misappropriation

of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). Here, RedSense's claim is that once Bohuslavskiy acquired the trade secrets through his involvement with RedSense, he improperly *used or disclosed* the RedSense trade secrets. Complaint ¶ 110. This remains regardless of Bohuslavskiy's membership status.

He then argues that resolving the membership question will be "dispositive" of the tortious interference claims because "an individual cannot [sic] [tortiously] interfere with his or her own contract." Stay Mot. at 10 (quoting *Haghighi v. Horizon Blue Cross Blue Shield of N.J.*, Case no. 19-cv-20483-FLW 2020 U.S. Dist. LEXIS 157246, at *19 (D.N.J. Aug. 31, 2020)). RedSense does not disagree: Bohuslavskiy cannot tortiously interfere with a contract in which he is a party to the contract. But this argument ignores a crucial detail: RedSense accuses Bohuslavskiy of interfering with *RedSense's* contracts with *RedSense's* customers. Complaint ¶¶ 85 (describing RedSense's contracts with *RedSense's customers*), 89, 93, 94, 102, 103. Even if Bohuslavskiy is a *member of RedSense* that does not mean that *he* is a party to the contract; indeed, for the customer relationships that Bohuslavskiy has interfered with, each of those customers have a contract *with RedSense. See Mantle v. North Star Energy & Construction LLC*, 437 P.3d 758, 798 (Wyo. 2019) (LLCs "are

separate and distinct from their owners.").[8] Bohuslavskiy's reliance on *Wallace v. Wood* (Stay Mot. at 10) is misplaced. There, the Court found that corporate officers could not be liable for tortious interference with the corporation's subsidiary's contracts where the officers were acting within the scope of their authority. *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1182-83 (Del. Ch. 1999).[9] Here, RedSense accuses Bohuslavskiy of trying to usurp the relationship RedSense has with its customers so that Bohuslavskiy him can contract with them directly. This goes beyond the self-interested actions contemplated by the court in *Wallace*; the usurpation of RedSense's business relationships is well outside of the scope of any authority conferred upon Bohuslavskiy during his time with the company.

Next, Bohuslavskiy argues that RedSense's claims for fraud, conversion, and unjust enrichment "all depend in significant part on whether Bohuslavskiy owed fiduciary obligations as a member or acted outside his authority." Stay Mot. at 10-11. Again, Bohuslavskiy cites no authority for this. But more glaringly, this argument takes a myopic view of what RedSense actually alleges against Bohuslavskiy. RedSense's fraud claim is based on Bohuslavskiy approving invoices and inducing

---

[8] Bohuslavskiy appears to argue that, because he is supposedly a member of RedSense, he and RedSense, the corporate entity, are somehow one and the same.

[9] *Wallace* also applies Delaware corporate law. By Bohuslavskiy's own admission, this case is governed by Wyoming LLC law, not Delaware. So, it is unclear what the relevance of Delaware corporate law is here.

RedSense to pay third parties for work that was never done. Complaint, ¶¶ 113-124. Likewise, RedSense's conversion claim is based on the contracts RedSense has with third party vendors and Bohuslavskiy taking steps to deprive RedSense of the property it owns through these third-party contracts. *Id.* ¶¶ 126-133. Finally, RedSense's unjust enrichment claim is based on Bohuslavskiy using RedSense as his personal piggy bank by approving invoices to his own LLC and by taking property that RedSense paid for. *Id.* ¶¶ 136-141. Indeed, even if Bohuslavskiy is deemed to be a member, he does not have permission to deprive RedSense of the assets that RedSense has contracted and paid for. Wyo. Stat. 17-29-409 (statutory fiduciary duties of LLC members).

### C. The Court Should Reject Bohuslavskiy's Abstention Arguments.

#### 1. The Brillhart-Wilton *Abstention Doctrine is Inapplicable.*

Bohuslavskiy moves the Court to abstain from adjudicating Counts 8, 9, and 10 in the District of New Jersey Action, under the *Brillhart-Wilton* abstention doctrine, based on the Wyoming Action. As Bohuslavskiy articulates, under the *Brillhart-Wilton* doctrine, a federal court will abstain in deference to state court action, "where the issues in controversy between parties to a federal declaratory-judgment suit can be heard and resolved in a state court action." Stay Mot. at 11-12. But, while Bohuslavskiy recites the doctrine correctly, the application to this case is misguided.

15

The only claims that were at issue in *Brillhart* were plaintiff's claims for declaratory judgment. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 492 (1942) (suit for a declaratory judgment to determine its rights under a reinsurance agreement). The same is true for *Wilton v. Seven Falls Co.*, 515 U.S. 277, 280 (1995) (lawsuit for declaratory judgment regarding the scope of plaintiff's insurance policy coverage). In each case, the basis of the Court's jurisdiction was the declaratory judgment claim, which confers *discretionary* jurisdiction. *Id.* at 277. Here, by comparison, RedSense's suit is not limited to its declaratory judgment claims, Counts 8 and 9. RedSense alleges other, legal claims against Bohuslavskiy: Counts 1-7, 10. Additionally, unlike *Brillhart* and *Wilton*, RedSense asserts claims under the DTSA and Lanham Act, which mean there is already a basis for federal court jurisdiction over RedSense's claims, regardless of RedSense's declaratory judgment claims. Where jurisdiction is conferred by Congress—such as with respect to claims under the DTSA and Lanham Act—federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congress. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Neither *Brillhart* nor *Wilton* involve a case with other federal claims. *See Wilton*, 512 U.S. at 290 ("We do not attempt at this time to delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law . . ."); *see also Brillhart*, 316 U.S. at 495 ("Gratuitous interference with . . . a *state court* litigation should be

16

avoided.") (emphasis added); *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 395 (5th Cir. 2003) ("Neither *Brillhart* nor *Wilton* decided whether the presence of a federal question in a declaratory judgment action limited a district court's discretion to decide or dismiss the action.").

Where cases do involve both legal and declaratory relief claims, the Third Circuit employs the test set forth in *Rarick v. Federated Service Ins. Co.*, 852 F.3d 223, 229 (3d Cir. 2017).[10] Under *Rarick*, if the legal claims are dependent on the declaratory claims, the court retains the discretion under *Brillhart-Wilton* to decline jurisdiction. But where legal claims are independent from the outcome of the declaratory claims, the court have the "virtually unflagging obligation" to hear those claims as articulated in *Colorado River*. *Id.*

Claims are independent from each other "if and only if" (1) the district court would still have jurisdiction over the plaintiffs' claims that seek monetary relief if the declaratory claim were dropped from the case and (2) the requested declaratory relief is not a prerequisite to resolution of the monetary claims. *Lukoil North America*

---

[10] Bohuslavskiy cites *Rarick* (Stay Mot. at 19) for the proposition that the Third Circuit "agree[d] with the Seventh Circuit when it opined: 'we do not think the mere fact that a litigant seeks some non-frivolous, non-declaratory relief in addition to declaratory relief in addition to declaratory relief means that a district court's *Wilton/Brillhart* discretion to decline to hear the declaratory claim should be supplanted.'" Again, if Bohuslavskiy thought RedSense's other claims were "frivolous" it could have brought a motion to dismiss. He chose not to. The Court should reject this characterization as an improper attempt to inject discussions of whether RedSense properly asserted its claims into subsequent motions.

*LLC v. Rts. 94 & 515 Vernon, L.P.*, 2017 WL 6450482 (D.N.J. 2017). Both prongs are easily met here. First, absent the declaratory relief claims, the Court would still have subject matter jurisdiction by way of RedSense's DTSA and Lanham Act claims. Second, contrary to Bohuslavskiy's assertions, RedSense's Counts 1-7 do not require resolution of the declaratory judgment claims and do not turn on the outcome of the declaratory judgement claims. Only Count 10 (RedSense's claim for breach of fiduciary duty) is dependent on resolution of Bohuslavskiy's membership status. Because the claims are independent, this Court should adjudicate RedSense's claims. *Rarick*, 852 F.3d at 229.[11]

To fit the District of New Jersey Action into the *Brillhart-Wilton* doctrine, the Court would be required to ignore that (1) RedSense's other federal claims confer jurisdiction, (2) RedSense's Complaint is not just one for declaratory judgment, and (3) RedSense's Complaint brings eight legal causes of action. Essentially, the only way *Brillhart-Wilton* applies to this case is to pretend that most of RedSense's Complaint does not exist.

### 2. The Wyoming Action is Not a Parallel Action.

Next, Bohuslavskiy asserts that the Wyoming Action is a parallel action for purposes of *Brillhart-Wilton*. Stay Mot. at 12. In the Third Circuit, for a state action

---

[11] Based on this alone, RedSense contends that the inquiry should end here. However, in the event that this Court determines to follow *Brillhart-Wilton*, RedSense responds to Bohuslavskiy's remaining arguments.

to be considered a parallel action "there must be a substantial similarity in issues and parties between contemporaneously pending proceedings," where "the mere potential or possibility that two proceedings will resolve related claims between the same parties is not sufficient to make those proceedings parallel." *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 283 (3d Cir. 2017). Although Bohuslavskiy cites *Kelly* (Stay Mot. at 12) and concludes that the Wyoming Action is a parallel action, he conducts no analysis under the *Kelly* test for determining whether an action is indeed parallel.

*Kelly* requires substantial similarity and rejects the "mere potential or possibility" standard. The Wyoming Action does not even meet the lower "mere potential or possibility" test, much less the "substantial similarity" requirement that *Kelly* demands. The only overlap between the New Jersey and Wyoming Actions is that both have claims to determine Bohuslavskiy's membership status. *Compare* Complaint, Counts 8 and 9 (seeking rescission of the Onboarding Agreement) *with* Wyoming Complaint (ECF No. 32-3), Count 1 (seeking determination that Bohuslavskiy was, is, and remains a member of RedSense). But this ignores the other claims asserted in the District of New Jersey Action. And as discussed, *supra* Section III.B.2, an overwhelming majority of RedSense's claims *do not* turn on the question of Bohuslavskiy's membership. Contrary to Bohuslavskiy's desire to ignore the part of RedSense's claims that he does not like or that do not fit his narrative, resolution

19

of Bohuslavskiy's membership status does not resolve RedSense's remaining claims. This does not meet the parallel action standard. *See Univ. of Md. at Balt. v. Peat Marwick Main & Co.*, 923 F.2d 265, 276 (3d Cir. 1991) (holding that abstention is inappropriate where there is a "lack of identity of all issues" between lawsuits and "no theoretical obstacle to both actions proceeding independently"); *Kelly*, 868 F.3d at 287 (no parallel action where the parties to the two actions were not the same and where the questions to resolve in each action were distinct).

Additionally, Bohuslavskiy's argument ignores *his own counterclaims* against RedSense. In his counterclaims brought in the District of New Jersey Action, he asserts claims for breach of contract, oppression under Wyoming LLC Act, and a buy-out demand under Wyoming law. ECF No. 23, Count IV, ¶ 255-257. These claims are not present in the Wyoming Action.

Finally, not only is there no substantial similarity, but there is not even full overlap of the parties. In the District of New Jersey Action, Bohuslavskiy has brought counterclaims against RedSense and members David Montanaro and Kevin Stear. In the Wyoming Action, he has only sued RedSense. Resolving the Wyoming Action would not even dispose of Bohuslavskiy's own claims against Montanaro and Stear. And, if the Court granted Bohuslavskiy's stay request pending resolution of the Wyoming Action, Montanaro and Stear would be stuck in limbo, with a federal lawsuit hanging over their heads, with no ability to move defense of their case

forward, potentially causing Montanaro and Stear prejudice for the duration of the stay. *See Akishev v. Kapustin*, 23 F.Supp.3d 440, 447 (D.N.J. 2014) ("[T]he Court considers whether a stay would unduly prejudice or clearly disadvantage the non-moving party.").

The Wyoming Action is not a parallel action, and Bohuslavskiy makes no effort to grapple with the significant differences between the Wyoming Action and the District of New Jersey Action.

### 3. The Reifer *Factors Do Not Support Abstention.*

Courts consider seven factors when determining whether to abstain: (1) The likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) The convenience of the parties; (3) The public interest in settlement of the uncertainty of obligation; (4) The availability and relative convenience of other remedies; (5) A general policy of restraint when the same issues are pending in state court; (6) Avoidance of duplicative litigation; (7) Prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata. Reifer v. Westport Ins. Co.* 751 F.3d 129 (3d Cir. 2014).

That there is no parallel action "militates significantly in favor of exercising [federal] jurisdiction," instead of abstention. *Id.* at 144-45. Although not solely

21

determinative, this carries significant weight. *Id.*; *Sherwin-Williams*, 343 F.3d at 394 (lack of parallel state proceeding "is a factor that weights strongly against dismissal).

*Likelihood that a Federal Court Will Resolve Uncertainty of Obligation.*

Bohuslavskiy asserts that a determination of Bohuslavskiy's membership status in this court would not resolve the issue of membership because Wyoming has developed a specialized body of law regarding LLCs. Stay Mot. at 15. But this ignores several key points. First, federal courts can and do routinely interpret state laws from other jurisdictions. *See, e.g., Royal Canin U.S.A.*, 604 U.S. at 27. Next, this factor "captures whether a declaration would bring about a 'complete termination of the controversy' between the parties and thereby avoid duplicative, piecemeal litigation." *DiAnoia's Eatery, LLC v. Motorists Mutual Insurance Company*, 10 F.4th 192, 205 (3d Cir. 2021). As explained in Section III.C.2 *supra*, the District of New Jersey Action and Wyoming Action are distinct. Staying the District of New Jersey Action to resolve the Wyoming Action would not bring about a complete termination. Indeed, regardless of the Wyoming Action's outcome, this Court would still need to adjudicate RedSense's Counts 1-7, Bohuslavskiy's counterclaims against RedSense, and Bohuslavskiy's claims against Montanaro and Stear. The very presence of these non-declaratory judgment claims cuts against abstention. *Raia v. Travelers Auto Ins. Co. of New Jersey*, 2012 WL 5200062 (D.N.J.

2012) ("Based on the presence of [non-declaratory] causes of action, Plaintiffs' motion should be denied.").

*Convenience of the Parties*.

Bohuslavskiy asserts that Wyoming is the most convenient forum for RedSense. Stay Mot. at 5. He overstates this convenience. Although RedSense is incorporated in Wyoming, its principal place of business is no longer in Wyoming, it is in Massachusetts. Complaint ¶ 7. And, none of RedSense's members or employees reside in Wyoming. Bohuslavskiy's emphasis on Wyoming documents and Wyoming witnesses does not align with the facts. Next, he argues that "any inconvenience to its New Jersey member Bohuslavskiy is waived." But again, this is Bohuslavskiy putting the cart before the horse. He chose to file the state action in Wyoming over a month later, but that tells us nothing about what he would have done if RedSense first filed in Wyoming.

*Public Interest and Availability and Relative Convenience of Other Remedies*.

These factors only favor Wyoming if RedSense's other claims against Bohuslavskiy (Counts 1-7) are disregarded and ignored. Bohuslavskiy cites no case law for the proposition that it is proper for a court to disregard 70 percent of a plaintiff's claims in order to make abstention and stay decisions about only three claims. When RedSense's claims are analyzed in totality, these factors are neutral at best.

23

*Restraint When Same Issues Are Pending, Avoidance of Duplicative Litigation, and Preventing Use of Declaratory Action as a Method of Procedural Fencing.*

Bohuslavskiy argues that these factors "strongly favor deferring to Wyoming." Stat Mot at 16. He claims that "[b]ecause the Wyoming Action involves the same parties, the same Onboarding Agreement, and the same dispositive question of Bohuslavskiy's membership status, allowing both actions to proceed risk inconsistent rulings and wasted judicial resources." But this bold statement ignores that the Wyoming Action does not involve the same parties or the same issues. *See* Section III.C.2, *supra*. Next, Bohuslavskiy argues that abstention avoids unnecessary duplication in discovery and motion practice. *Id.* at 17. But it was Bohuslavskiy who decided to bring the Wyoming Action *over a month after* RedSense filed its suit. To the extent that there is any duplication or burden, Bohuslavskiy created that himself. Lastly, Bohuslavskiy asserts that the "record reflects" that Plaintiff engaged in forum shopping because it chose to file in the District of New Jersey during ongoing settlement discussions.[12] *Id.* But Bohuslavskiy does not explain why filing in his state of residence is forum shopping.

---

[12] Bohuslavskiy attempts to make the timing of RedSense's filing suspect. RedSense was engaged in potential discussions to resolve the case; it had never progressed so far as to call them "settlement discussions"—i.e. there had never been an exchange of potential terms. Ultimately RedSense determined that Bohuslavskiy's repeated diversions unrelated to the merits of the case were not conducive to amicable resolution. It then filed its lawsuit.

In short, the *Reifer* factors do not support abstention.

## IV.    **CONCLUSION**

For the reasons stated herein, RedSense requests that the Court deny Bohuslavskiy's Motion to Abstain-in-Part and Stay.

Dated: September 2, 2025                    CROWELL & MORING LLP

By: s/ Preetha Chakrabarti
Preetha Chakrabarti
pchakrabarti@crowell.com
Rachel Elaine Hsu (*pro hac vice* pending)
rhsu@crowell.com
Crowell & Moring LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 223-4000
Facsimile: (212) 223-4134

Anna Z. Saber (*pro hac vice* pending)
asaber@crowell.com
Crowell & Moring LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

*Attorneys for Plaintiff Red Sense LLC*