Preetha Chakrabarti
Rachel Elaine Hsu (*pro hac vice*)
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 223-4000
Facsimile: (212) 223-4134
pchakrabarti@crowell.com
rhsu@crowell.com

Anna Z. Saber (*pro hac vice*)
CROWELL & MORING LLP
3 Embarcadero, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827
asaber@crowell.com

*Attorneys for Plaintiff Red Sense LLC, Third-Party Defendant David Montanaro, and Third-Party Defendant Kevin Stear*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Red Sense LLC <br><br>            Plaintiff, <br><br>    v. <br><br> Yelisey Bohuslavskiy, <br> a.k.a. Elisei Boguslavskii <br><br>            Defendant. | Civil Action No. 2:25-cv-12281-EP-AME <br><br> **PLAINTIFF/COUNTER-DEFENDANT RED SENSE LLC'S ANSWER TO COUNTER-COMPLAINT** |
| Yelisey Bohuslavskiy, <br><br>            Third-Party Plaintiff, <br><br>    v. <br><br> David Montanaro and Kevin Stear, <br><br>            Third-Party Defendants. | |

Plaintiff/Counter-Defendant Red Sense LLC ("RedSense") hereby responds to the Counter-Complaint filed by Defendant/Counter-Plaintiff Yelisey Bohuslavskiy ("Bohuslavskiy") as follows. Unless expressly admitted, RedSense denies all allegations in the Counter-Complaint including any allegations in section headings. RedSense responds only as to the allegations against RedSense.[1]

### Nature of the Action

179.    RedSense ADMITS in part that based on the representations made by Bohuslavskiy in the Onboarding Agreement where he promised to deliver, as a condition of membership, certain intellectual property to RedSense in lieu of monetary funding and Bohuslavskiy representing and warranting that he had the right to convey this intellectual property, RedSense admitted Bohuslavskiy as a member and partner of RedSense on January 25, 2023. RedSense DENIES the remaining allegations and characterizations of paragraph 179.[2]

180.    RedSense DENIES the allegations and characterizations of paragraph 180.

---

[1] The remainder of the allegations pertain to Third-Party Defendants Kevin Stear and David Montanaro, who submitted a letter to the Court requesting a pre-motion conference stating their intent to file a motion to dismiss for insufficient service pursuant to Fed. Civ. R. P. 12(b)(5). ECF No. 46. This request is currently pending before the Court.

[2] Bohuslavskiy begins his Counter-Complaint with paragraph 179. Accordingly, RedSense adopts the same numbering convention.

181.    The allegations of paragraph 181 comprise a characterization of a document that speaks for itself, and therefore no response is required.

## Jurisdiction and Venue

182.    The allegations of paragraph 182 comprise a statement or conclusion of law for which no response is required.

183.    The allegations of paragraph 183 comprise a statement or conclusion of law for which no response is required.

184.    The allegations of paragraph 184 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a pre-motion letter with the Court stating their intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required. The remaining allegations of paragraph 184 comprise a statement or conclusion of law for which no response is required.

185.    The allegations of paragraph 185 comprise a statement or conclusion of law for which no response is required.

## Parties

186.    RedSense ADMITS the allegations of paragraph 186.

187.    The allegations of paragraph 187 contain allegations concerning Third-Party Defendant David Montanaro who has filed a pre-motion letter with the Court

stating his intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

188.    The allegations of paragraph 188 contain allegations concerning Third-Party Defendant Kevin Stear who has filed a pre-motion letter with the Court stating his intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

189.    RedSense ADMITS that Bohuslavskiy is an individual residing in the Town of Guttenberg, County of Hudson, State of New Jersey. RedSense admits that from January 25, 2023 through February 24, 2025, Bohuslavskiy served as the CRO (Chief Research Officer) for RedSense. RedSense DENIES that Bohuslavskiy remains a member/partner through the date of filing of this Counterclaim.

## Facts Common to All Counts

190.    RedSense ADMITS that Counter-Plaintiff has described his immigration status as being a refugee. RedSense lacks knowledge or information to form a belief about the truth of the remaining allegations in paragraph 190, and on that basis RedSense DENIES the allegations.

191.    RedSense ADMITS that Bohuslavskiy has experience as a cybersecurity researcher and has focused his cybersecurity work to track ransomware groups that are dominated by Russian-speaking crime syndicates.

4

RedSense lacks knowledge or information sufficient to form a belief about the truth of the allegations as to Bohuslavskiy's recognition within the industry or that he is a sought-after speaker, and on that basis DENIES the remaining allegations of paragraph 191.

192.    RedSense lacks knowledge or information sufficient to form a belief as to the specific terms of AdvIntel's formation outside of publicly filed information showing Vitali Kremez to be the sole member and owner of Advintel, and on that basis DENIES the allegations of paragraph 192.  RedSense lacks knowledge or information sufficient to form a belief as to AdvIntel engineers' training or motivation to later join RedSense

193.    RedSense lacks knowledge or information sufficient to form a belief as to the alleged reorganization of AdvIntel in 2021 as described in paragraph 193. RedSense ADMITS that Michael Zeiger and David Montanaro were each granted a 5% interest in AdvIntel after joining the company.

194.    RedSense ADMITS the allegations of paragraph 194.

195.    RedSense ADMITS that David Montanaro was invited by Michael Zeiger to invest $100,000 to become a member and co-founder of RedSense; Michael Zeiger made the same requests of Kevin Stear and Bryan Van Sickle. RedSense notes that Counter-Plaintiff did not fulfill his required investment as

outlined in the Onboarding Agreement: "Elisei Boguslavskii – to provide "In kind funding" in the form of Threat Intelligence and Intellectual Property for Company benefit and use by the Company in lieu of the $100,000 seed funding contribution as part of this agreement with Red Sense, LLC."

196.    RedSense ADMITS that Bohuslavskiy signed the Onboarding Agreement on January 25, 2023. RedSense ADMITS that the Onboarding Agreement contained various condition precedents that Bohuslavskiy was required to fulfill as a condition of joining RedSense as a member. RedSense DENIES that Bohuslavskiy fulfilled these condition precedents and DENIES that Bohuslavskiy became a member of RedSense on January 25, 2023 or at any point thereafter.

197.    RedSense ADMITS that subsequent to January 25, 2023, Bohuslavskiy took a position as the CRO of RedSense. RedSense ADMITS that certain RedSense customers were prior customers of AdvIntel. RedSense ADMITS in part that customers would have had to re-establish ties with a threat intelligence provider, but otherwise lacks knowledge or information sufficient to form a belief as to the reason the customers came to RedSense, and on that basis DENIES the remaining allegations of paragraph 197.

198.    RedSense DENIES the allegations and characterizations of paragraph 198.

199.    RedSense DENIES the allegations and characterizations of paragraph 199, other than that all RedSense members entered into an agreement to redeem Zeiger's membership share following his resignation in 2024.

200.    RedSense DENIES the allegations and characterizations of paragraph 200.

201.    RedSense ADMITS that the members voted David Montanaro in as CEO. RedSense DENIES the remaining allegations and characterizations of paragraph 201.

202.    RedSense DENIES that Michael Zeiger sold his shares solely to David Montanaro; Michael Zeiger sold his shares back to RedSense. RedSense ADMITS that this sale was approved by all RedSense members. RedSense lacks knowledge of information sufficient to form a belief as to Michael Zeiger's funds, and on that basis DENIES this allegation of paragraph 202. RedSense DENIES the remaining allegations and characterizations of paragraph 202.

203.    RedSense DENIES that Michael Zeiger's absence created any financial strain on the company or impacted the quality of its product, outside of RedSense's need to allocate funds to buy back Michael Zeiger's shares of the company. RedSense ADMITS that funds were largely flowing to consultants instead of product, with the highest expenditure going toward EasyStaff and Affix consultants

7

under Counter-Plaintiff's exclusive control, including his brother, who was hired six months prior to Michael Zeiger's departure. RedSense ADMITS that its products and operations were impacted during this time as the consultants under Bohuslavskiy's control failed to provide any accounting, deliverables, or assignments as required by their contracts. RedSense DENIES that it lacked an operating or budget policy. RedSense ADMITS that Counter-Plaintiff's sales bonuses were placed on hold, along with the other bonus-eligible member's bonus, as the bonus amount is only disbursed from profits.

204.    RedSense DENIES the allegations of paragraph 204. The potential sixth member discussed in paragraph 204 in fact declined to join the partnership and never appeared as a member in any RedSense tax return. RedSense ADMITS that this potential sixth member performed software development services and assigned his work to RedSense at a fair market rate, and that this potential member was offered an industry-standard advising agreement in the event of a future corporate conversion.

205.    The allegations of paragraph 205 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

206.    The allegations of paragraph 206 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

207.    RedSense ADMITS that on January 23, 2025 Bohuslavskiy wrote a letter to RedSense members. RedSense ADMITS that the letter contained accusations by Bohuslavskiy against Stear and a request for investigation. RedSense DENIES the veracity of Bohuslavskiy's accusations. RedSense ADMITS that Bohuslavskiy suspended himself from the CRO position, but lacks knowledge or information sufficient to form a belief about the truth of Bohuslavskiy's reasons for suspending himself, and on that basis DENIES the remaining allegations and characterizations of paragraph 207.

208.    RedSense ADMITS that payment to certain engineers overseen by Counter-Plaintiff was withheld as RedSense worked to reconcile untimely and fraudulently duplicated invoices submitted by Counter-Plaintiff, who was solely responsible for submitting the invoices for remittance. Further, RedSense ADMITS that amid investigations of over-billing by Bohuslavskiy, it withheld payment to Counter-Plaintiff's brother when it received an untimely invoice in January 2024 for work the brother performed in October, November, and December 2025. RedSense ADMITS that it informed Counter-Plaintiff that no further payments could be made

until accounting of vendor invoices was resolved, including assignments of work completed by RedSense engineers. RedSense DENIES that it attempted to seize any side project from Counter-Plaintiff. RedSense ADMITS that it presented Counter-Plaintiff with an industry-standard agreement to confirm RedSense's ownership of work that it had hired the engineers supervised by Counter-Plaintiff to create. RedSense ADMITS that Counter-Plaintiff refused to sign the agreement, refused to provide access to any vendor systems, and refused to assist RedSense in its attempts to clarify problematic vendor invoices. RedSense ADMITS that, because Counter-Plaintiff did not cooperate with its investigation, RedSense had to take time to assess the validity of the outstanding invoices and may have resultingly paid invoices late to the extent that they were payable.

209.    RedSense ADMITS that Counter-Plaintiff resigned via email on February 24, 2025, stating that he and his brother were "formally resigning from our respective roles." RedSense DENIES the remaining allegations and characterizations of paragraph 209.

210.    RedSense ADMITS that Montanaro confirmed Counter-Plaintiff's resignation and withdrawal from RedSense under the Wyoming LLC Act on February 25, 2025. RedSense DENIES the remaining allegations and characterizations of paragraph 210.

10

211.     RedSense ADMITS that Counter-Plaintiff responded to Montanaro's email on February 25, 2025, claiming that he remained a member. RedSense DENIES the remaining allegations of paragraph 211.

212.     RedSense ADMITS that based on the information learned from Bohuslavskiy himself that called into question the representations made by Bohuslavskiy in connection with the Onboarding Agreement, RedSense does not recognize Bohuslavskiy as a member of RedSense.

213.     RedSense ADMITS that on March 6, 2025, Bohuslavskiy contacted RedSense customers, but DENIES that Bohuslavskiy had authority to do so. RedSense ADMITS that Bohuslavskiy contacted RedSense customers using his personal email address. RedSense ADMITS that as of March 6, 2025, Bohuslavskiy no longer had access to his RedSense email address.

214.     RedSense lacks knowledge or information sufficient to form a belief as to the reason why Bohuslavskiy claims he contacted RedSense customers, and on that basis DENIES the allegations of paragraph 214.

215.     RedSense ADMITS the allegations of paragraph 215.

216.     RedSense ADMITS the allegations of paragraph 216.

217.     RedSense ADMITS the allegations of paragraph 217.

218.    RedSense ADMITS that on April 14, 2025 Bohuslavskiy sent a letter to David Montanaro demanding various information. RedSense DENIES that Bohuslavskiy had the authority or right to make that demand.

219.    RedSense ADMITS that the April 14, 2025 letter to David Montanaro contained the demands set forth in paragraph 219. RedSense DENIES the legitimacy of the demands and DENIES that Bohuslavskiy had the authority or right to make such demands.

220.    RedSense ADMITS that the April 14, 2025 letter to David Montanaro contains the demands set forth in paragraph 220. RedSense DENIES the legitimacy of the demands and DENIES that Bohuslavskiy had the authority or right to make such demands.

221.    RedSense ADMITS that it did not meet the demands contained in Bohuslavskiy's April 14, 2025 letter because Bohuslavskiy was seeking information to which he was not entitled.

222.    RedSense ADMITS that Bohuslavskiy made requests to third parties Mighty Financial and Thunder Rock, LLC, demanding RedSense information. RedSense further ADMITS that Bohuslavskiy did make requests to Damian Miller demanding RedSense information. RedSense DENIES the legitimacy of the

demands and DENIES that Bohuslavskiy had the authority or right to make such demands.

223.    RedSense ADMITS that Bohuslavskiy requested from Damian Miller information related to the calculation of AdvIntel-related sales bonuses for 2024 and 2025 pertaining to Montanaro and Bohuslavskiy. RedSense ADMITS that it did not meet the demands contained in Bohuslavskiy's request to Damian Miller, because Bohuslavskiy was seeking information to which he was not entitled.

224.    RedSense ADMITS that on June 27, 2025 RedSense filed a Complaint against Bohuslavskiy as defendant in the District of New Jersey contending, *inter alia*, that the Onboarding Agreement is void and unenforceable due to fraud and lack of consideration. The remaining allegations of paragraph 224 contain a characterization of a document that speaks for itself, and thus no response is required. To the extent that any further response may be required, RedSense DENIES the remaining allegations and characterizations of paragraph 224.

225.    RedSense ADMITS that based on RedSense's belief that Bohuslavskiy had satisfied the requisite conditions set forth in the Onboarding Agreement, RedSense's 2023 K-1 tax filing designated Bohuslavskiy as a "general partner" and "domestic partner." RedSense DENIES that Bohuslavskiy is actually a member of RedSense.

226.    RedSense DENIES the allegations and characterizations of paragraph 226.

227.    RedSense ADMITS that Bohuslavskiy has filed a Complaint in the First Judicial District, Laramie County, Wyoming. RedSense DENIES that it has wrongfully withheld any information from Counter-Plaintiff. RedSense DENIES the significance that Counter-Plaintiff ascribes to the Wyoming Complaint.

## Count I

228.    RedSense DENIES the allegations and characterizations of paragraph 228.

229.    RedSense ADMITS that Bohuslavskiy signed the Onboarding Agreement on January 25, 2023. RedSense ADMITS that the Onboarding Agreement contained various conditions precedent that Bohuslavskiy was required to fulfill as a condition of joining RedSense as a member. RedSense DENIES that Bohuslavskiy fulfilled these conditions precedent and DENIES that Bohuslavskiy became a member of RedSense.

230.    RedSense ADMITS that the Onboarding Agreement comprises a lawfully enforceable, written contract as to the other individuals who executed the Onboarding Agreement, but DENIES that the Onboarding Agreement is an

enforceable contract with respect to Bohuslavskiy for lack of considerations or due to fraud.

231.    RedSense ADMITS that in lieu of a $100,000 capital contribution, Bohuslavskiy agreed to provide continuous "in-kind funding" consisting of cyber threat intelligence and proprietary intellectual property. RedSense DENIES that Bohuslavskiy actually provided the "in-kind funding" and DENIES that Bohuslavskiy satisfied the conditions precedent to becomes a member of RedSense.

232.     RedSense DENIES the allegations and characterizations of paragraph 232.

233.    The allegations of paragraph 233 comprise a characterization of a document that speaks for itself, and therefore no response is required.

234.    RedSense ADMITS that the bonus structure was initially a three-way split and subsequently became a two-way split between David Montanaro and the Counter-Plaintiff. RedSense ADMITS that David Montanaro was responsible for executing distribution of this bonus. RedSense states that distribution of the bonus was not guaranteed—either as to distribution or amount, and to the extent there was any distribution, it was only distributed from surplus profits.

235.    RedSense DENIES the allegations and characterizations of paragraph 235.

236.    RedSense DENIES the allegations and characterizations of paragraph 236.

237.    RedSense DENIES the allegations and characterizations of paragraph 237.

238.    RedSense DENIES the allegations of characterizations of paragraph 238.

## Count II

239.    The allegations of paragraph 239 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a pre-motion letter with the Court stating their intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

240.    The allegations of paragraph 240 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a pre-motion letter with the Court stating their intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

241.    The allegations of paragraph 241 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a pre-motion letter with the Court stating their intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

242.    The allegations of paragraph 242 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a pre-motion letter with the Court stating their intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

243.    The allegations of paragraph 243 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a pre-motion letter with the Court stating their intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

244.    The allegations of paragraph 244 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a pre-motion letter with the Court stating their intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

245.    The allegations of paragraph 245 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a pre-motion letter with the Court stating their intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

246.    The allegations of paragraph 246 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a pre-motion

letter with the Court stating their intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

247.    The allegations of paragraph 247 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a pre-motion letter with the Court stating their intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

248.    The allegations of paragraph 248 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a pre-motion letter with the Court stating their intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

249.    The allegations of paragraph 249 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a pre-motion letter with the Court stating their intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

250.    The allegations of paragraph 250 contain allegations concerning Third-Party Defendants Kevin Stear and David Montanaro who have filed a pre-motion letter with the Court stating their intent to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and accordingly no response is required.

## Count III

18

251.    RedSense DENIES the allegations and characterizations of paragraph 251.

252.    The allegations of paragraph 252 comprise a statement or conclusion of law for which no response is required.

253.    RedSense DENIES the allegations and characterizations of paragraph 253.

254.    RedSense DENIES the allegations and characterizations of paragraph 254.

## **Count IV**

255.    RedSense DENIES the allegations and characterizations of paragraph 255.

256.    RedSense DENIES the allegations and characterizations of paragraph 256.

257.    RedSense DENIES the allegations and characterizations of paragraph 257.

### **FIRST AFFIRMATIVE DEFENSE**

The Counter-Complaint fails to state a claim upon which relief can be granted.

### **SECOND AFFIRMATIVE DEFENSE**

19

Counter-Plaintiff's requested relief is barred by his own fraud and misrepresentation.

## THIRD AFFIRMATIVE DEFENSE

The claims against RedSense are barred by the doctrine of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

The claims against RedSense are barred by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE

The damages complained of by Counter-Plaintiff were not foreseeable.

## SIXTH AFFIRMATIVE DEFENSE

Counter-Plaintiff's wrongful and unlawful conduct was the sole proximate cause of his alleged damages.

## SEVENTH AFFIRMATIVE DEFENSE

To the extent Counter-Plaintiff incurred any damages (which RedSense denies), Counter-Plaintiff failed to mitigate his damages.

## EIGHTH AFFIRMATIVE DEFENSE

RedSense committed no wrongful conduct which was a proximate cause of the damages complained of by Counter-Plaintiff.

## NINTH AFFIRMATIVE DEFENSE

There is no valid and enforceable contract that entitles Counter-Plaintiff to the relief complained of by Counter-Plaintiff as a result of lack of consideration.

## TENTH AFFIRMATIVE DEFENSE

There is no valid and enforceable contract that entitles Counter-Plaintiff to the relief complained of by Counter-Plaintiff as a result of fraud on the part of Counter-Plaintiff.

## ELEVENTH AFFIRMATIVE DEFENSE

To the extent that there is a valid and enforceable contract, Counter-Plaintiff breached its contractual obligations to RedSense.

## TWELFTH AFFIRMATIVE DEFENSE

To the extent that there is a valid and enforceable contract, RedSense fulfilled its contractual obligations.

## THIRTEENTH AFFIRMATIVE DEFENSE

Counter-Plaintiff is not entitled to a buy-out under Wyoming law because he is not a member of RedSense LLC.

## RESERVATION OF RIGHTS

RedSense reserves the right to raise additional affirmative defenses, the existence of which may arise out of the discovery in, or prosecution of this action.

Dated: September 11, 2025

CROWELL & MORING LLP

s/ Preetha Chakrabarti

Preetha Chakrabarti
pchakrabarti@crowell.com
Rachel Elaine Hsu (*pro hac vice*)
rhsu@crowell.com
Crowell & Moring LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 223-4000
Facsimile: (212) 223-4134
Anna Z. Saber (*pro hac vice*)
asaber@crowell.com
Crowell & Moring LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

*Attorneys for Plaintiff Red Sense LLC*