# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| RED SENSE LLC, a Wyoming limited liability company, | Civil Action No. 2:25-cv-12281-EP-AME |
| *Plaintiff/Counter-defendant*, | Hon. Evelyn Padin<br>Hon. André M. Espinosa, U.S.M.J. |
| v. | |
| YELISEY BOHUSLAVSKIY, *a/k/a* Elisei Boguslavskii, | |
| *Defendant/Counterclaimant.* | **DECLARATION OF DAVID MONTANARO IN SUPPORT OF JOINT MOTION TO SEAL PURSUANT TO L. CIV. R. 5.3** |
| YELISEY BOHUSLAVSKIY, | **Motion Day: March 30, 2026** |
| *Third-Party Plaintiff,* | |
| v. | |
| DAVID MONTANARO and KEVIN STEAR, | |
| *Third-Party Defendants.* | |

I, David Montanaro, declare as follows:

1. I am the CEO of Red Sense LLC ("RedSense") and one of the founders of the LLC. I make this declaration in support of the Parties' Joint Motion to Seal Pursuant to L. Civ. R. 5.3, seeking to permanently seal RedSense's Unredacted

Complaint and Exhibit C thereto (ECF No. 3), Unredacted Motion for Preliminary Injunction and supporting papers (ECF No. 8), Unredacted Reply Memorandum and supporting papers (ECF No. 37), and Unredacted Exhibit 1 to the December 5, 2025 Letter from Preetha Chakrabarti (ECF No. 63-1) (the "Opinion"). This declaration is based upon my personal knowledge and experience at RedSense, as well as my review of the records that Red Sense maintains. If called upon to do so, I could and would testify competently as to the facts stated herein.

2. Attached hereto as Appendix A, and prepared pursuant to L. Civ. R. 5.3(c)(3), is a detailed table further addressing the nature of the materials at issue, the legitimate interests which warrant sealing, the clearly defined and serious injury that would result if RedSense's Confidential Information were made public, and why a less restrictive alternative to the relief sought is not available. I have reviewed Appendix A, and I hereby adopt and incorporate the factual representations contained therein as if fully set forth in this Declaration.

3. The Parties jointly seek to seal four categories of information: (1) RedSense's list of trade secrets, (2) the names of RedSense customers, (3) customer contract terms and pricing information, and (4) sensitive financial information.

4. As a result of Bohuslavskiy's involvement with RedSense, he had access to information that RedSense considers to be its confidential or trade secret information. Also as a result of his position, Bohuslavskiy would be aware of the

importance of maintaining the confidentiality of this proprietary information and that it would be damaging to RedSense if such information was publicly disclosed.

### Category 1: RedSense's List of Trade Secrets

5. RedSense asserts a claim against Bohuslavskiy for trade secret misappropriation under the Defend Trade Secrets Act. In connection with this claim, RedSense identified its trade secrets.

6. RedSense has a legitimate interest in maintaining the confidentiality of its trade secrets and preventing public disclosure. RedSense derives value from the fact that its trade secrets are not publicly disclosed. RedSense's services are derived from trade secret information, software, and techniques. If these secrets were publicly known, RedSense would offer less value to its customers. If known to competitors, those competitors could replicate the threat intelligence and other services that RedSense provides to its customers without incurring the substantial costs that RedSense incurred to develop its trade secret information, thereby defeating RedSense's market advantage.

7. To that end, RedSense maintains the secrecy and confidentiality of this information and takes robust steps that align with standard industry practices to ensure that this information remains protected. For example, RedSense does not share its trade secrets absent a confidentiality agreement. When RedSense does share its trade secrets, it does so via secure electronic communication, encrypted means,

and with confidentiality markings. Internally, RedSense maintains secure storage for its trade secrets and limits access of the secure storage only to those who require access to carry out their responsibilities. Individuals and teams are given unique credentials and are prohibited from sharing them with others. When individuals leave RedSense, their access to the secure RedSense systems is immediately terminated to prevent unpermitted access to the RedSense trade secrets. Consistent with its business practices, RedSense is seeking that its trade secrets be sealed to maintain their confidentiality.

### Category 2: The Names of RedSense Customers

8. RedSense alleges false advertising under the Lanham Act and tortious interference claims against Bohuslavskiy. To state its claim with specificity, RedSense identified the at-issue customers in connection with its allegations.

9. RedSense considers its customer list and prospective customer list to be RedSense trade secrets, which merits sealing of the names of its customers. RedSense does not publicly share its customer information, and in the event that sharing customer information is necessary, it only does so under the protection of a confidentiality agreement and the customer's express permission.

10. Additionally, by way of RedSense's contracts with its customers, RedSense is obligated to uphold strict operational security measures and perform under industry-established, recognized standards. Failure to do so would be cause

for breach and termination of said agreements. This includes, for example, maintaining the confidentiality of RedSense customers' identities, communications with customers, and the terms of the agreements. Disclosing RedSense's customers' names could cause RedSense to be in violation of its customer agreements. Moreover, RedSense incurs harm if customer names are disclosed, and it keeps them confidential for that reason.

11.   Finally, given the industry RedSense operates in and the service RedSense provides, publicly sharing the names of our customers may cause harm to RedSense's customers. If the names of RedSense's customers and the services they receive from RedSense are disclosed, a malicious threat actor or cybercriminal could leverage that information to target RedSense's customers.

12.   Based on my over thirty-five years of experience in the technology, cybersecurity, and threat intelligence industry, I am familiar with a tactic used by cybercriminals known as "phishing," a form of cyberattack where the threat actor attempts to trick their targets into revealing sensitive information by making fraudulent requests for credentials or other secure information appear to be legitimate communications. If threat actors knew the identities of RedSense's customers, they could use this information to perpetuate a phishing attack against the customers. For example, the threat actor could send a fraudulent email to a RedSense customer posing as RedSense and seek sensitive information from the

5

customer under the guise of needing this information to better serve the customer account. RedSense has an interest in protecting its customers from cyberattacks, and accordingly it is necessary to preserve the confidentiality of the customer names.

**Category 3: Customer Contract Terms and Pricing Information**

13. To demonstrate the harm caused by Bohuslavskiy (particularly in connection with RedSense's PI Motion), RedSense initially included direct quotations from its customers that RedSense alleges demonstrates Bohuslavskiy's tortious interference, but did not include the entire email communication. In Bohuslavskiy's Opposition to RedSense's PI Motion, Bohuslavskiy referred to a particular customer communication as "suspiciously dated" because RedSense had received the communication the same day that it filed its PI Motion. The insinuation was that RedSense fabricated this communication to support its PI Motion. To refute this claim, RedSense included the entire email chain as Exhibit B to my declaration in support of RedSense's Reply Memorandum. By calling into question the veracity of RedSense's arguments, it is Bohuslavskiy who necessitated the filing of the entire email, which in turn necessitates filing the entire document under seal.

14. This email discusses the fees owed under the RedSense-customer agreements and the services customers have contracted with RedSense for. RedSense considers the terms of its customer agreements, including the fees paid and services provided, to be RedSense trade secrets. Allowing the public (other

customers or competitors) to have access to the terms of RedSense's customer contracts and the exact nature of the services that RedSense provides would give the public an unfair competitive advantage. A potential customer or competitor who has access to this confidential, competitive information is able to use this information to undermine RedSense in the market.

15. Additionally, as with the customer names, RedSense is obligated under the terms of its RedSense-customer agreement to uphold strict operational security measures and maintain the confidentiality of the agreement terms. Disclosure of customer communications that reveals these terms may cause RedSense to be in breach of its customer agreements. These redacted communications also may contain information that the customer considers to be its own confidential information, which RedSense has no right to divulge. Based on my experience in this industry, customers have an expectation that RedSense will not publicly disclose such information, and doing so could result in an erosion of trust or damage to RedSense's reputation.

16. This expectation is confirmed by the fact that the emails included a confidentiality notice in the footer stating that the contents of the message are considered confidential and intended solely for the use of the recipient. Such notice signifies that all parties to the communication acknowledged that the communications contained confidential information and expected them to remain

protected.

17. Prior to his resignation from RedSense, Bohuslavskiy participated in communications with RedSense customers and would have knowledge that such communications included a confidentiality notice. He would also have knowledge of his obligations to RedSense to maintain the confidentiality of these communications and not do anything that could harm the relationship between RedSense and the customer.

### Category 4: Sensitive Financial Information

18. RedSense does not share its financial information publicly. Public disclosure of RedSense's finances would allow customers to take advantage of this information in connection with contract negotiations and would give competitors a roadmap to compete with RedSense.

19. Redacted versions of the Complaint and supporting documents (ECF No. 1), the Motion for Preliminary Injunction and supporting documents (ECF No. 7), the Reply Memorandum and supporting documents (ECF No. 32), and the Opinion (ECF No. 64) are all publicly available on the Court's docket, with individual words and phrases redacted only as necessary to protect RedSense's Confidential Information. Because RedSense has filed a legible public record redacted only as necessary to maintain confidentiality, there is no less restrictive alternative to the relief sought.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on February 27, 2026, in Waltham, Massachusetts.

_____
David Montanaro
CEO and Partner Red Sense LLC