Yelisey Bohuslavskiy
7000 JFK Boulevard East #42D
Guttenberg, NJ 07093
Telephone: (202) 751-9957
Email: eliseydmitriev@gmail.com

*Defendant, Counterclaimant, and Third-Party Plaintiff, pro se*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RED SENSE LLC, a Wyoming limited liability company,<br>*Plaintiff/Counter-defendant,*<br>v.<br>YELISEY BOHUSLAVSKIY, a/k/a Elisei Boguslavskii; IGOR DMITRIEV; AFFIX ADVISORY, LLC; and IGOR DMITRIEV d/b/a Irasel,<br>*Defendants.*<br><br>YELISEY BOHUSLAVSKIY,<br>*Counterclaimant/Third-Party Plaintiff,*<br>v.<br>DAVID MONTANARO and KEVIN STEAR,<br>*Third-Party Defendants.* | Case no.: **2:25-cv-12281-EP-AME**<br><br>Hon. Evelyn Padin, U.S.D.J.<br>Hon. André M. Espinosa, U.S.M.J.<br><br>**ANSWER TO FIRST AMENDED COMPLAINT, COUNTERCLAIM, THIRD-PARTY COMPLAINT, SEPARATE DEFENSES, AND DEMAND FOR JURY TRIAL** |

THE DEFENDANT YELISEY BOHUSLAVSKIY ("Bohuslavskiy" or "Defendant"), appearing pro se and solely on his own behalf, having a street address of 7000 JFK Boulevard East #42D, in the Town of Guttenberg, State of New Jersey; by way of answer to the First Amended Complaint and Demand for Jury Trial (the "Complaint") (ECF doc. no. 126) filed September 4, 2026 by the plaintiff Red Sense LLC ("Plaintiff" or "RedSense"), a Wyoming limited liability company, hereby respectfully avers and SAYS:

**AS TO THE INTRODUCTION**

1. Defendant objects to Plaintiff's lengthy narrative in violation of Fed. R. Civ. P. 8(a)(2); ADMITS in part that he resigned as Plaintiff's Chief Research Officer ("CRO") on or about February 24, 2025, and that following said resignation used a personal electronic mail address due to his blocked access on his corporate Red Sense e-mail; the remainder of the allegations of paragraph 1 are DENIED.

2. Defendant objects to Plaintiff's lengthy narrative[1] in violation of Fed. R. Civ. P. 8(a)(2); ADMITS in part that he communicated that he had resigned as CRO; Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations as to what was in customers' minds or their communications with Plaintiff; to any extent some further response may be required, the remaining allegations and characterizations of paragraph 2 are DENIED.

3. Defendant ADMITS in part that Plaintiff made a cease-and-desist command; the remaining allegations of paragraph 3 are DENIED.

4. Defendant objects to Plaintiff's lengthy narrative in violation of Fed. R. Civ. P. 8(a)(2); ADMITS in part that he communicated with clients, personally and professionally, and that he had served as CRO (without admitting to Plaintiff's characterization of his responsibilities); Defendant lacks knowledge or information sufficient to form a belief about the truth of Plaintiff's alleged "investigation"; the remaining allegations and characterizations of paragraph 4 are DENIED.

1 "[A] lengthy and rambling complaint which contains little more than demands, charges, and conclusions. The complaint is not a short and plain statement of the case and flagrantly violates Fed. R. Civ. P. 8. On this ground alone, the complaint may be dismissed." *Burton v. Peartree*, 326 F. Supp. 755, 758-59 (E.D. Pa. 1971).

5. Defendant objects to Plaintiff's lengthy narrative in violation of Fed. R. Civ. P. 8(a)(2); lacks knowledge or information sufficient to form a belief about the truth about what Plaintiff was aware of or Plaintiff's alleged "investigation"; the remaining allegations and characterizations of paragraph 5 are DENIED.

6. The allegations of paragraph 6 comprise a statement or conclusion of law or characterization of a document that speaks for itself, requiring no response; to any extent some further response may be required, the remaining allegations and characterizations of paragraph 6 are DENIED.

## AS TO THE PARTIES

7. Defendant ADMITS Plaintiff's domicile and business address; the remaining allegations and characterizations of paragraph 7 are DENIED.

8. The allegations of paragraph 8 are ADMITTED in part as to Defendant's identity, residence, service as Chief Research Officer, and resignation from that role. Defendant further ADMITS that he is the sole member of Affix Advisory, LLC and that his work included coordinating Dmitriev's services for RedSense. Defendant DENIES that he managed or directed Dmitriev or Irasel in the wrongful conduct alleged in the First Amended Complaint; the remaining allegations and characterizations of paragraph 8 are DENIED.

9. Defendant ADMITS that Igor Dmitriev is his brother, resides in Montenegro, served as a Strategic Consultant to RedSense beginning on or about August 1, 2023, and provided services through Irasel. Defendant ADMITS that he coordinated work with Dmitriev in connection with their services to RedSense. Defendant lacks knowledge or information sufficient to form a belief about the accuracy of the precise foreign registration particulars alleged. Defendant DENIES

that Dmitriev acted in concert with him or Affix in furtherance of the alleged wrongful scheme; the remaining allegations and characterizations of paragraph 9 are DENIED.

10. Defendant ADMITS that Affix Advisory, LLC is a New Jersey limited liability company, that he is its sole member and managing member, that its registered address is the address alleged, and that it was formed on or about October 28, 2021. Defendant ADMITS that he executed the Onboarding Agreement on behalf of himself and Affix and that invoices and payments for his compensation and certain vendor services were processed through Affix. Defendant DENIES that Affix was used to divert RedSense funds improperly for his personal benefit, and DENIES the remaining allegations and characterizations of paragraph 10.

11. Defendant ADMITS that Irasel is a business operated by Dmitriev in Montenegro, that Irasel provided services to RedSense, and that invoices for those services were submitted through Affix. Defendant lacks knowledge or information sufficient to form a belief about the precise registered business address alleged. Defendant DENIES that funds owed to Irasel were improperly retained by him or Affix instead of being disbursed for the services provided; the remaining allegations and characterizations of paragraph 11 are DENIED.

**AS TO JURISDICTION AND VENUE**

12. The allegations of paragraph 12 comprise a statement or conclusion of law or characterization of a document that speaks for itself, requiring no response; to any extent some further response may be required, Defendant refers questions of law to the Court.

13. As to the allegations of paragraph 13, Defendant ADMITS in part that he is a resident of New Jersey; Defendant refers questions of law to the Court, as it asks for legal conclusion.

14. The allegations of paragraph 14 comprise a statement or conclusion of law requiring no response; to any extent some further response may be required, Defendant refers questions of law to the Court.

15. The allegations concerning personal jurisdiction over Dmitriev comprise legal conclusions, which Defendant refers to the Court; Defendant does not appear or answer on Dmitriev's behalf. Defendant ADMITS that he resides in New Jersey, that Affix is a New Jersey limited liability company, and that certain invoices and payments were processed through Affix. Defendant DENIES that he orchestrated or participated in fraudulent invoicing, directed the unauthorized destruction or misappropriation of RedSense's property, or directed an unlawful lockout from Pyrus. Defendant lacks knowledge or information sufficient to form a belief about the alleged subjective knowledge of Dmitriev and the location of Plaintiff's internal processing of payments. Except as expressly admitted, the remaining factual allegations and characterizations of paragraph 15 are DENIED.

16. Defendant ADMITS that Affix is a New Jersey limited liability company with a registered address in Guttenberg, New Jersey. The remaining allegations of paragraph 16 concern personal jurisdiction over Affix and comprise legal conclusions, which Defendant refers to the Court. Defendant does not appear or answer on Affix's behalf.

## **AS TO PLAINTIFF'S GENERAL ALLEGATIONS**

### **A. RedSense's Business**

17. Defendant ADMITS in part that Plaintiff formerly operated in the cyber-threat intelligence ("CTI") business. Plaintiff has since ceased operations, shut down its operational infrastructure, and terminated its employees. The remaining allegations and characterizations of paragraph 17 are DENIED.

18. Defendant objects to Plaintiff's lengthy narrative in violation of Fed. R. Civ. P. 8(a)(2); Defendant ADMITS the CTI market is competitive and important to customers; the remaining allegations and characterizations of paragraph 18 are DENIED as pleaded.

19. Defendant objects to Plaintiff's lengthy narrative in violation of Fed. R. Civ. P. 8(a)(2); Defendant ADMITS in part that reputation is important in the CTI market (and others); the remaining allegations and characterizations of paragraph 19 are DENIED as pleaded.

20. Defendant ADMITS in part Plaintiff's participation in the Cybersecurity and Infrastructure Security Agency ("CISA") due to his efforts, not Plaintiff's, and that Systems and Organization Controls 2 ("SOC 2") is a security protocol; the remaining allegations and characterizations of paragraph 20 are DENIED as pleaded.

**B. Bohuslavskiy's Involvement with RedSense**

21. Defendant lacks knowledge or information sufficient to form a belief about the truth regarding whatever David Montanaro ("Montanaro") or Michael Zeiger ("Zeiger") believed in December of 2022; the remaining allegations and characterizations of paragraph 21 are ADMITTED.

22. The allegations of paragraph 22 are ADMITTED, in part; that "the existing Partners . . . executed the RedSense / . . .Onboarding Agreement" conflicts with Exhibit "A" to the Complaint which is unsigned by Zeiger who alone was to sign "acting on behalf of all "Founders" and is thus DENIED, as pleaded.

23. Defendant lacks knowledge or information sufficient to form a belief about the truth regarding what "RedSense understood" as Exhibit "A" does not define "'in kind' funding" (and was not Bohuslavskiy's understanding as a partner); Defendant ADMITS participating in the formation of Advanced Intelligence, LLC as described in paragraph 248 below, but DENIES that

AdvIntel had ceased operations prior to the founding of RedSense; the remaining allegations and characterizations of paragraph 23 comprise a statement or conclusion of law or characterize a document that speaks for itself, requiring no response; to any extent some further response may be required, the remaining allegations and characterizations of paragraph 23 are DENIED, and Defendant refers questions of law to the Court.

24. Defendant objects to Plaintiff's lengthy narrative in violation of Fed. R. Civ. P. 8(a)(2); Defendant lacks knowledge or information sufficient to form a belief about the truth regarding what "RedSense anticipated"; the remaining allegations and characterizations of paragraph 24 comprise a statement or conclusion of law or characterize a document that speaks for itself, requiring no response; to any extent some further response may be required, the remaining allegations and characterizations of paragraph 24 are DENIED, and Defendant refers questions of law to the Court.

25. The allegations of paragraph 25 are ADMITTED.

26. Defendant lacks knowledge or information sufficient to form a belief about the truth regarding "what the partners of RedSense expected" or "other partners understood" or what "it appeared" and to whom regarding reports; Defendant ADMITS making the representations and warranties contained in Section 6.1 of the Onboarding Agreement but DENIES Plaintiff's characterization of their scope or effect; the remaining allegations and characterizations of paragraph 26 comprise a statement or conclusion of law or characterize a document that speaks for itself, requiring no response; to any extent some further response may be required, the remaining allegations and characterizations of paragraph 26 are DENIED, and Defendant refers questions of law to the Court.

27. Defendant lacks knowledge or information sufficient to form a belief about the truth regarding what "current RedSense partners" did or did not have reason to feel or do; the remaining allegations and characterizations of paragraph 27 are DENIED.

**C. Bohuslavskiy's Responsibilities as RedSense Chief Research Officer**

28. Defendant ADMITS in part that he was RedSense's CRO; the remaining allegations of paragraph 28 are DENIED.

29. The allegations of paragraph 29 are ADMITTED, in part; the work described commencing in or about March 2023 was part of the in-kind funding arrangement; the remaining allegations and characterizations of paragraph 29 are DENIED.

30. Defendant lacks knowledge or information sufficient to form a belief about the truth regarding "what was anticipated" or by whom; Defendant ADMITS that Dmitriev joined RedSense as a Strategic Consultant on or about August 1, 2023, provided services through Irasel, received compensation through Affix, and administered Pyrus. Defendant ADMITS that Dmitriev's engagement letter stated annual compensation of $90,000. The engagement letter speaks for itself; Defendant DENIES Plaintiff's characterizations of the complete compensation arrangements and scope of duties insofar as they allege that legitimate reimbursements, payments, or services were unauthorized or improper. The remaining allegations and characterizations of paragraph 30 are DENIED.

31. Defendant ADMITS that Dmitriev administered the Pyrus platform, that RedSense paid for access to it, and that the platform was used by Defendant's team to track and manage work. Defendant DENIES that he directed, requested, or encouraged any unlawful deprivation of RedSense's work product or data. Defendant lacks knowledge or information sufficient to form a belief about the completeness and accuracy of Plaintiff's account of its

communications with Pyrus support, its internal investigation, and the precise administrator-account information alleged. Defendant DENIES Plaintiff's characterization of the platform's administration as a wrongful exclusive-control arrangement; the remaining allegations and characterizations of paragraph 31 are DENIED.

**D. Bohuslavskiy's Access to RedSense's Confidential and Trade Secret Information**

32. Defendant objects to Plaintiff's lengthy narrative in violation of Fed. R. Civ. P. 8(a)(2); Defendant lacks knowledge or information sufficient to form a belief about the truth regarding what "other partners of RedSense believed"; the remaining allegations and characterizations of paragraph 32 are DENIED, including what allegedly "RedSense considers to be trade secret".

33. The allegations and characterizations of paragraph 33 are DENIED.

34. The allegations and characterizations of paragraph 34 are DENIED.

**E. Bohuslavskiy Fails to Deliver Work Product That RedSense Paid For**

35. The allegations and characterizations of paragraph 35 are DENIED.

36. Defendant lacks knowledge or information sufficient to form a belief about the truth of what "RedSense socialized [sic]", what "feedback from customers" (and what customers) causes Plaintiff to believe about customers' perceptions or Plaintiff's belief about Defendant's knowledge; the remaining allegations and characterizations of paragraph 36 are DENIED.

37. Defendant lacks knowledge or information sufficient to form a belief about the truth of what "source code [may be] related to AIDIS" as, by its nature, there is no source code for AIDIS; the remaining allegations and characterizations of paragraph 37 are DENIED.

38. The allegations and characterizations of paragraph 38 are DENIED.

39. Defendant lacks knowledge or information sufficient to form a belief about the truth of what "led other partners of RedSense to conclude" or "prompted RedSense to" do anything; the remaining allegations and characterizations of paragraph 39 are DENIED.

**F. RedSense Discovers Evidence of Improper Invoicing by Bohuslavskiy; Dmitriev, Affix, and Irasel's Participation in the Fraudulent Scheme**

40. Defendant ADMITS that Dmitriev had credentials to access systems used in performing work for RedSense. Defendant DENIES that he directed, requested, encouraged, or participated in the unauthorized taking or destruction of RedSense-owned source code, data, or systems as alleged. Defendant lacks knowledge or information sufficient to form a belief about the identity of the person executing each command, the completeness and authenticity of the asserted CLI history, and the entirety of Plaintiff's alleged investigation. Defendant DENIES that the commands and events described establish the theft, destruction, unauthorized access, or wrongful intent attributed to him. The remaining allegations and characterizations of paragraph 40 are DENIED.

41. Defendant ADMITS that Dmitriev administered Pyrus, that RedSense paid for access, and that the platform was used to track and manage deliverables. Defendant ADMITS communicating with Dmitriev concerning Pyrus, but DENIES Plaintiff's characterization of those communications as establishing unauthorized access, wrongful retention or destruction of RedSense's data, or Defendant's direction of such conduct. Defendant refers to the complete communications for their actual contents and context. Defendant lacks knowledge or information sufficient to form a belief about the completeness and accuracy of Plaintiff's account of communications between Plaintiff and Pyrus support to which Defendant was not a party. The remaining allegations and characterizations of paragraph 41 are DENIED.

42. Defendant ADMITS that he is Affix's sole member, that Affix invoiced RedSense and received payments for Defendant's compensation and certain vendor services and expenses, and that Defendant sought payment of amounts he maintained were outstanding. Defendant DENIES that the invoicing arrangement was a fraudulent scheme, that he fabricated or knowingly inflated invoices, that the agreed work was not performed or delivered, that he wrongfully diverted funds, or that legitimate requests for payment constituted extortion or improper withholding of assets. Defendant lacks knowledge or information sufficient to form a belief about the accuracy of Plaintiff's aggregate totals and allocations across the payment categories alleged or its assertions about what its internal investigation located. The remaining allegations and characterizations of paragraph 42 are DENIED.

43. Defendant ADMITS that Irasel provided services to RedSense and that invoices for those services were submitted through Affix. Defendant DENIES that the services were fictitious, that agreed deliverables were withheld, that he pocketed funds intended for a team-building event, or that the invoicing and payment arrangements were fraudulent. The invoices and engagement letter referenced in paragraph 43 speak for themselves; Defendant DENIES Plaintiff's characterizations of those documents insofar as they allege unearned compensation, unauthorized charges, or nonperformance. Defendant lacks knowledge or information sufficient to form a belief about the accuracy of Plaintiff's aggregate payment calculation as alleged. The remaining allegations and characterizations of paragraph 43 are DENIED.

44. Defendant objects to Plaintiff's lengthy narrative in violation of Fed. R. Civ. P. 8(a)(2) and further as to what is "possible"; Defendant lacks knowledge or information sufficient to form a belief about the truth regarding what may have been "the expected amount" and by whom; the remaining allegations and characterizations of paragraph 44 are DENIED.

45. Defendant ADMITS in part that invoices and payments were made through Affix; the remaining allegations and characterizations of paragraph 45 are DENIED.

46. Defendant ADMITS in part that freelance staff were engaged; the remaining allegations and characterizations of paragraph 46 are DENIED.

47. The allegations and characterizations of paragraph 47 are DENIED.

48. Defendant ADMITS in part that RedSense paid for access to the Pyrus management system; the remaining allegations and characterizations of paragraph 48 are DENIED.

**G. Bohuslavskiy Refuses to Participate in the Operation of RedSense, Disclaims His Duties, and Resigns.**

49. The allegations and characterizations of paragraph 49 are DENIED.

50. Defendant ADMITS in part that there was an e-mail on or about January 23, 2025, followed by a meeting of RedSense partners convened on or about February 6, upon information and belief; the remaining allegations and characterizations of paragraph 50 are DENIED.

51. The allegations and characterizations of paragraph 51 are DENIED.

52. The allegations and characterizations of paragraph 52 are DENIED.

53. Defendant lacks knowledge or information sufficient to form a belief about the truth regarding the alleged "asset inventory" and by whom; the remaining allegations and characterizations of paragraph 53 are DENIED.

54. Defendant ADMITS in part he conditionally cautioned certain persons about signing a confidential information and invention assignment ("CIIA") agreement; the remaining allegations and characterizations of paragraph 54 are DENIED.

55. Defendant ADMITS in part that he had several communications with Montanaro at this time frame; the remaining allegations and characterizations of paragraph 55 are DENIED.

56. Defendant ADMITS in part he resigned his title as Chief Research Officer ("CRO") on or about the time alleged; the remaining allegations and characterizations of paragraph 56 are DENIED.

57. Defendant lacks knowledge or information sufficient to form a belief about the truth regarding what "cyber incident" is alleged or the bases for Plaintiff's other speculation; the remaining allegations and characterizations of paragraph 57 are DENIED.

58. The allegations and characterizations of paragraph 58 are DENIED.

59. The allegations of paragraph 59 include characterization of a document that speaks for itself, requiring no response; to any extent some further response may be required, the remaining allegations and characterizations of paragraph 59 are DENIED.

**H. Bohuslavskiy Launches Smear Campaign Repeatedly Disparaging RedSense to Its Existing and Prospective Customers.**

60. The allegations and characterizations of paragraph 60 are DENIED.

61. The allegations of paragraph 61 include characterization of a document (or documents) that speaks for itself, requiring no response; Defendant ADMITS in part to contacting certain clients as a member of RedSense regarding imminent cyber-threats; the remaining allegations and characterizations of paragraph 61 are DENIED.

62. The allegations of paragraph 62 include characterization of a document (or posting) that speaks for itself, requiring no response; Defendant ADMITS in part to post on LinkedIn about his resignation as CRO and reason therefor; the remaining allegations and characterizations of paragraph 62 are DENIED.

63. The allegations of paragraph 63 include characterization of a document that speaks for itself, requiring no response; Defendant ADMITS in part to the receiving of the letter; the remaining allegations and characterizations of paragraph 63 are DENIED.

64. The allegations and characterizations of paragraph 64 are DENIED.

65. The allegations of paragraph 65 include characterization of a document (or documents) that speaks for itself, requiring no response; Defendant ADMITS in part to contact certain clients as a member of RedSense regarding imminent cyber-threats; the remaining allegations and characterizations of paragraph 65 are DENIED.

66. Defendant objects to Plaintiff's lengthy narrative in violation of Fed. R. Civ. P. 8(a)(2); Defendant ADMITS in part communicating via his personal electronic mail address, having been blocked from his partnership account; the remaining allegations and characterizations of paragraph 66 are DENIED.

67. The allegations and characterizations of paragraph 67 are DENIED.

68. The allegations and characterizations of paragraph 68 are DENIED.

**I. RedSense Attempts to Resolve Dispute Amicably with Bohuslavskiy; Bohuslavskiy Refuses.**

69. The allegations of paragraph 69 include characterization of a document (or documents) that speaks for itself, requiring no response; the remaining allegations and characterizations of paragraph 69 are DENIED.

70. The allegations of paragraph 70 include characterization of a document (or documents) that speaks for itself, requiring no response; Defendant ADMITS in part questioning the authorization to retain, and potential conflict of Crowell, in the initiation of suit against a

RedSense partner under Wyoming law; the remaining allegations and characterizations of paragraph 70 are DENIED.

71. The allegations of paragraph 71 comprise a statement or conclusion of law requiring no response, questions of law being referred to the Court; to any extent some further response may be required, the remaining allegations and characterizations of paragraph 71 are DENIED.

72. Defendant objects to Plaintiff's lengthy narrative in violation of Fed. R. Civ. P. 8(a)(2), and further to "[t]his admission from Bohuslavskiy" as incomprehensible, with no antecedent reference; the remaining allegations and characterizations of paragraph 72 are DENIED.

73. Defendant objects to Plaintiff's lengthy narrative in violation of Fed. R. Civ. P. 8(a)(2); the allegations of paragraph 73 include characterization of a document (or documents) that speaks for itself, requiring no response; Defendant ADMITS in part questioning the authorization to retain, and potential conflict of Crowell, in the initiation of suit against a RedSense partner under Wyoming law; the remaining allegations and characterizations of paragraph 73 are DENIED.

74. The allegations of paragraph 74 include characterization of a document that speaks for itself, and a statement or conclusion of law requiring no response, questions of law being referred to the Court; the remaining allegations and characterizations of paragraph 74 are DENIED.

75. The allegations of paragraph 75 include characterization of a document that speaks for itself, the remaining allegations and characterizations of paragraph 75 are DENIED.

76. The allegations and characterizations of paragraph 76 are DENIED.

## AS TO CLAIMS FOR RELIEF

### As to the First Cause of Action – False Advertising in Violation of the Lanham Act (15 U.S.C. § 1125)

77. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

78. The allegations and characterizations of paragraph 78 are DENIED.

79. The allegations and characterizations of paragraph 79 are DENIED.

80. The allegations and characterizations of paragraph 80 are DENIED.

81. The allegations and characterizations of paragraph 81 are DENIED.

82. The allegations and characterizations of paragraph 82 are DENIED.

83. The allegations and characterizations of paragraph 83 are DENIED.

84. Defendant ADMITS in part that CTI services in the United States typically involve interstate commerce; the remaining allegations and characterizations of paragraph 84 are DENIED.

85. The allegations and characterizations of paragraph 85 are DENIED.

86. The allegations and characterizations of paragraph 86 are DENIED.

87. The allegations and characterizations of paragraph 87 are DENIED.

88. The allegations and characterizations of paragraph 88 are DENIED.

89. Defendant ADMITS that he published a LinkedIn post concerning his resignation as Chief Research Officer and his reasons for that resignation, that he spoke at the Health-ISAC June Monthly Threat Briefing on June 24, 2025, and that the Court entered a preliminary-injunction order on November 21, 2025. The post and the Court's order speak for themselves. Defendant DENIES Plaintiff's characterization of the post as an attempt to obfuscate customer relationships

and DENIES violating the injunction as alleged. The June 24, 2025 speaking engagement preceded the November 21, 2025 order. Defendant DENIES the remaining allegations and characterizations of paragraph 89.

**As to the Second Cause of Action – Tortious Interference with Contract**

90. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

91. The allegations of paragraph 91 are ADMITTED, upon information and belief, however Defendant lacks knowledge or information sufficient to form a belief about the truth regarding whether those relationships were still "maintain[ed]" as of the filing date of the Complaint.

92. The allegations of paragraph 92 are ADMITTED; however, the inclusion was inadvertent, and Defendant apologized.

93. The allegations and characterizations of paragraph 93 are DENIED.

94. The allegations of paragraph 94 are ADMITTED in part, in that Defendant had conversations with customers; the remaining allegations and characterizations are DENIED.

95. The allegations and characterizations of paragraph 95 are DENIED.

96. The allegations and characterizations of paragraph 96 are DENIED.

97. The allegations and characterizations of paragraph 97 are DENIED.

98. The allegations and characterizations of paragraph 98 are DENIED.

99. The allegations and characterizations of paragraph 99 are DENIED.

100. Defendant lacks knowledge or information sufficient to form a belief about the truth regarding what the named client may have recently expressed; to any extent some further

response may be required, the remaining allegations and characterizations of paragraph 100 are DENIED.

101. The allegations and characterizations of paragraph 101 are DENIED.

102. Defendant ADMITS that he sent the letter referenced in paragraph 102 and discussed general cybersecurity risks associated with termination of technical personnel, while expressly disclaiming any allegation or suggestion that those engineers would act improperly. Defendant DENIES that the letter contained or implied a threat of cyberattack or any other unlawful threat; the remaining allegations and characterizations of paragraph 102 are DENIED.

103. The allegations and characterizations of paragraph 103 are DENIED.

104. Defendant objects to Plaintiff's lengthy narrative in violation of Fed. R. Civ. P. 8(a)(2); ADMITS in part that the named client was or "is another customer of RedSense", and upon information and belief offered the sound advice that RedSense "needs to 'work it out with Bohuslavskiy'"; the remainder of the allegations and characterizations of paragraph 104 are DENIED.

105. Defendant ADMITS in part that the named client was or "is another RedSense customer"; the remainder of the allegations and characterizations of paragraph 105 are DENIED.

106. The allegations of paragraph 106 are ADMITTED.

107. The allegations of paragraph 107 are ADMITTED.

108. Defendant objects to Plaintiff's lengthy narrative in violation of Fed. R. Civ. P. 8(a)(2); ADMITS in part that he spoke at a Health-ISAC presentation; Defendant lacks knowledge or information sufficient to form a belief about the truth regarding what Plaintiff may have learned on June 24, 2025 or how; the remainder of the allegations and characterizations of paragraph 108 are DENIED.

109. The allegations and characterizations of paragraph 109 are DENIED.

**As to the Third Cause of Action – Tortious Interference with Future Economic Advantage**

110. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

111. The allegations and characterizations of paragraph 111 are DENIED.

112. The allegations and characterizations of paragraph 112 are DENIED.

113. The allegations and characterizations of paragraph 113 are DENIED.

114. Defendant lacks knowledge or information sufficient to form a belief about the truth regarding what the named client may have recently communicated to Plaintiff; the remaining allegations and characterizations of paragraph 114 are DENIED.

115. Defendant DENIES that his outreach or any wrongful interference by him caused the nonrenewal alleged in paragraph 115. Defendant lacks knowledge or information sufficient to form a belief about the customer's internal renewal decision and the alleged amount of any resulting loss. The remaining allegations and characterizations of paragraph 115 are DENIED.

116. The allegations and characterizations of paragraph 116 are DENIED.

**As to the Fourth Cause of Action – Violation of the Defend Trade Secrets Act (18 U.S.C. §§ 1836, et seq.)**

117. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

118. The allegations and characterizations of paragraph 118 are DENIED.

119. The allegations and characterizations of paragraph 119 are DENIED.

120. The allegations and characterizations of paragraph 120 are DENIED.

121. The allegations and characterizations of paragraph 121 are DENIED.

122. The allegations and characterizations of paragraph 122 are DENIED.

123. The allegations and characterizations of paragraph 123 are DENIED.

124. Defendant ADMITS that he communicated with certain RedSense customers and had knowledge of customer relationships and cybersecurity needs through his own professional experience, including relationships predating RedSense. Defendant DENIES that this knowledge could only have been obtained through the alleged RedSense Trade Secrets, that his communications constituted a smear campaign, or that he improperly used or misappropriated RedSense trade secrets. The remaining allegations and characterizations of paragraph 124 are DENIED.

125. The allegations concerning the DTSA's effective date and legal requirements comprise statements or conclusions of law, which Defendant refers to the Court. Defendant DENIES committing the alleged acts of misappropriation, directing the alleged unauthorized copying or destruction, engaging in the alleged smear campaign, or committing any continuing violation. The remaining allegations and characterizations of paragraph 125 are DENIED.

126. The allegations and characterizations of paragraph 126 are DENIED.

**As to the Fifth Cause of Action – Fraud**

127. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

128. The allegations of paragraph 128 are ADMITTED in part, that Defendant "was [and is] a partner of RedSense" with commensurate authority; the remaining allegations and characterizations of paragraph 128 are DENIED as pleaded.

129. The allegations of paragraph 129 are ADMITTED in part, that Plaintiff made some payments and that Defendant approved some invoices for EasyStaff; the remaining allegations and characterizations of paragraph 129 are DENIED as pleaded.

130. The allegations and characterizations of paragraph 130 are DENIED.

131. The allegations and characterizations of paragraph 131 are DENIED.

132. The allegations and characterizations of paragraph 132 are DENIED.

133. The allegations and characterizations of paragraph 133 are DENIED.

134. The allegations and characterizations of paragraph 134 are DENIED.

135. The allegations and characterizations of paragraph 135 are DENIED.

136. The allegations and characterizations of paragraph 136 are DENIED.

137. The allegations and characterizations of paragraph 137 are DENIED.

138. The allegations and characterizations of paragraph 138 are DENIED.

139. The allegations and characterizations of paragraph 139 are DENIED.

**As to the Sixth Cause of Action – Conversion**

140. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

141. The allegations and characterizations of paragraph 141 are DENIED.

142. The allegations and characterizations of paragraph 142 are DENIED.

143. The allegations and characterizations of paragraph 143 are DENIED.

144. The allegations and characterizations of paragraph 144 are DENIED.

145. The allegations and characterizations of paragraph 145 are DENIED.

146. The allegations and characterizations of paragraph 146 are DENIED.

147. The allegations and characterizations of paragraph 147 are DENIED.

148. The allegations and characterizations of paragraph 148 are DENIED.

**As to the Seventh Cause of Action – Unjust Enrichment**

149. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

150. The allegations and characterizations of paragraph 150 are DENIED.

151. The allegations and characterizations of paragraph 151 are DENIED.

152. The allegations and characterizations of paragraph 152 are DENIED.

153. The allegations and characterizations of paragraph 153 are DENIED.

154. The allegations and characterizations of paragraph 154 are DENIED.

155. The allegations and characterizations of paragraph 155 are DENIED.

156. The allegations and characterizations of paragraph 156 are DENIED.

**As to the Eighth Cause of Action – The Onboarding Agreement Is Void and Unenforceable as to Bohuslavskiy Due to a Lack of Consideration (28 U.S.C. § 2201)**

157. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

158. The allegations of paragraph 158 comprise a statement or conclusion of law requiring no response; to any extent some further response may be required, the allegations of paragraph 158 are DENIED.

159. The allegations of paragraph 159 are ADMITTED.

160. Defendant ADMITS, upon information and belief, that the other partners anticipated an in-kind contribution of threat intelligence and intellectual property. Defendant DENIES that the Onboarding Agreement required him to contribute third-party-owned AdvIntel

property as alleged. The remaining allegations and characterizations of paragraph 160 are DENIED.

161. Defendant ADMITS making the representations and warranties contained in Section 6.1 of the Onboarding Agreement. Defendant DENIES that those representations required him to transfer third-party-owned AdvIntel property or that such a transfer was a condition precedent to his membership. The remaining allegations and characterizations of paragraph 161 are DENIED.

162. The allegations of paragraph 162 are ADMITTED in part; that "the other partners of RedSense treated Bohuslavskiy as a partner because" he was (and is) a partner and he "had provided the Obligated In-Kind Funding" referenced; to any extent some further response may be required, the remaining allegations and characterizations of paragraph 162 are DENIED.

163. The allegations and characterizations of paragraph 163 are DENIED.

164. The allegations of paragraph 164 comprise a statement or conclusion of law requiring no response; to any extent some further response may be required, the allegations of paragraph 164 are DENIED.

165. The allegations and characterizations of paragraph 165 are DENIED.

166. The allegations of paragraph 166 comprise a statement or conclusion of law requiring no response; to any extent some further response may be required, the allegations of paragraph 166 are DENIED.

**As to the Ninth Cause of Action – The Onboarding Agreement Is Void and Unenforceable as to Bohuslavskiy Due to Fraud (28 U.S.C. § 2201)**

167. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

168. The allegations of paragraph 168 comprise a statement or conclusion of law requiring no response; to any extent some further response may be required, the allegations of paragraph 168 are DENIED.

169. The allegations of paragraph 169 are ADMITTED.

170. Defendant ADMITS, upon information and belief, that the other partners anticipated an in-kind contribution of threat intelligence and intellectual property. Defendant DENIES that the Onboarding Agreement required him to contribute third-party-owned AdvIntel property as alleged. The remaining allegations and characterizations of paragraph 170 are DENIED.

171. Defendant ADMITS making the representations and warranties contained in Section 6.1 of the Onboarding Agreement. Defendant DENIES that those representations required him to transfer third-party-owned AdvIntel property or that such a transfer was a condition precedent to his membership. The remaining allegations and characterizations of paragraph 171 are DENIED.

172. The allegations of paragraph 172 are ADMITTED in part; that "the other partners of RedSense treated Bohuslavskiy as a partner because" he was (and is) a partner and he had provided in-kind funding in 2023; to any extent some further response may be required, the remaining allegations and characterizations of paragraph 172 are DENIED.

173. The allegations and characterizations of paragraph 173 are DENIED.

174. The allegations and characterizations of paragraph 174 are DENIED.

175. The allegations and characterizations of paragraph 175 are DENIED.

176. The allegations of paragraph 176 comprise a statement or conclusion of law requiring no response; to any extent some further response may be required, the allegations of paragraph 176 are DENIED.

177. The allegations and characterizations of paragraph 177 are DENIED.

178. The allegations and characterizations of paragraph 178 are DENIED.

179. The allegations and characterizations of paragraph 179 are DENIED.

180. The allegations and characterizations of paragraph 180 are DENIED.

181. The allegations of paragraph 181 comprise a statement or conclusion of law requiring no response; to any extent some further response may be required, the allegations of paragraph 181 are DENIED.

**As to the Tenth Cause of Action – Breach of Fiduciary Duties (Wyo. Stat. § 17-29-409)**

182. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

183. The allegations of paragraph 183 comprise a statement or conclusion of law requiring no response; questions of law being referred to the Court; to the extent some further response may be required, Defendant ADMITS in part that Wyoming law imposes certain duties upon members of its limited liability companies.

184. The allegations of paragraph 184 comprise a statement or conclusion of law requiring no response; questions of law being referred to the Court; to the extent some further response may be required, Defendant ADMITS in part that Wyoming law may impose certain duties upon members of its limited liability companies.

185. The allegations of paragraph 185 comprise a statement or conclusion of law requiring no response; questions of law being referred to the Court; to the extent some further

response may be required, Defendant ADMITS in part that Wyoming law may impose certain duties upon members of its limited liability companies.

186. The allegations and characterizations of paragraph 186 are DENIED.

187. The allegations of paragraph 187 comprise a statement or conclusion of law requiring no response; questions of law being referred to the Court; to the extent some further response may be required, Defendant ADMITS in part that Wyoming law imposes certain duties upon members of its limited liability companies.

188. The allegations of paragraph 188 comprise a statement or conclusion of law requiring no response; questions of law being referred to the Court; to the extent that some further response may be required, Defendant ADMITS in part that Wyoming law imposes certain duties upon members of its limited liability companies.

189. The allegations and characterizations of paragraph 189 are DENIED.

190. The allegations and characterizations of paragraph 190 are DENIED.

191. The allegations and characterizations of paragraph 191 are DENIED.

192. The allegations and characterizations of paragraph 192 are DENIED.

193. The allegations and characterizations of paragraph 193 are DENIED.

**As to the Eleventh Cause of Action – Violation of the New Jersey Computer Related Offenses Act (N.J.S.A. § 2A:38A-3) (Against Dmitriev)**

194. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein. Defendant responds to the Eleventh through Sixteenth Causes of Action solely on his own behalf, to the extent their allegations concern him or are incorporated into claims against him, and does not appear or answer on behalf of Dmitriev, Affix, or Irasel.

195. Defendant DENIES that Plaintiff owns all rights, title, and interest in all of the disputed materials alleged in paragraph 195. To the extent paragraph 195 states or characterizes the governing law, Defendant refers questions of law to the Court. The remaining allegations and characterizations of paragraph 195 are DENIED.

196. Defendant ADMITS that Dmitriev had assigned credentials for work-related access and incorporates his response to paragraph 40 concerning the alleged access session and command logs. Defendant DENIES the alleged wrongful taking, destruction, and unauthorized conduct attributed to him or undertaken at his direction. Defendant lacks knowledge or information sufficient to form a belief about the identity of the person executing each command and the completeness and authenticity of the asserted logs. The remaining allegations and characterizations of paragraph 196 are DENIED.

197. The allegations and characterizations of paragraph 197 are DENIED.

198. Defendant ADMITS that Plaintiff made demands concerning disputed property and data. Defendant refers to the actual resignation and demand communications for their contents and context. Defendant DENIES that he wrongfully refused to return Plaintiff's property or that he authorized or directed a wrongful refusal on Dmitriev's behalf. The remaining allegations and characterizations of paragraph 198 are DENIED.

199. Defendant DENIES the alleged violations, resulting liability, and entitlement to damages, fees, or other relief asserted in paragraph 199. Questions concerning the meaning of the cited statute are referred to the Court.

**As to the Twelfth Cause of Action – Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836, et seq.) (Against Dmitriev)**

200. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

201. The allegations and characterizations of paragraph 201 are DENIED.

202. Defendant ADMITS that some credentials were used to access certain work systems and that Plaintiff terminated Defendant's access to its corporate systems in February 2025. Defendant DENIES that those facts establish that all of the materials claimed by Plaintiff are trade secrets or that the measures alleged were reasonable and sufficient as to the disputed materials. Defendant lacks knowledge or information sufficient to form a belief about all of Plaintiff's internal security measures. The remaining allegations and characterizations of paragraph 202 are DENIED.

203. Defendant ADMITS that Dmitriev served as a Strategic Consultant, administered Pyrus, and had access to materials used in performing his work. Defendant DENIES Plaintiff's characterization of all such materials as Plaintiff's confidential information or trade secrets. The remaining allegations and characterizations of paragraph 203 are DENIED.

204. Defendant DENIES that the categories of information and materials identified in paragraph 204 were misappropriated as alleged, and DENIES Plaintiff's claimed ownership and trade-secret characterizations to the extent disputed in Defendant's preceding responses. The remaining allegations and characterizations of paragraph 204 are DENIED.

205. Defendant ADMITS that Dmitriev had work-related credentials. Defendant DENIES that Dmitriev wrongfully acquired, used, or disclosed RedSense trade secrets for Defendant's benefit or at Defendant's direction as alleged, and DENIES that Defendant

participated in any such misconduct. Defendant incorporates his responses to paragraphs 40, 41, and 196 concerning the alleged access, command logs, and Pyrus activity. The remaining allegations and characterizations of paragraph 205 are DENIED.

206. The allegations and characterizations of paragraph 206 are DENIED.

**As to the Thirteenth Cause of Action – Fraud (Against Dmitriev, Affix, and Dmitriev d/b/a Irasel)**

207. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

208. Defendant ADMITS that he is Affix's sole member and manager, that Dmitriev provided services through Irasel, and that invoices concerning those services were submitted to RedSense through Affix. Defendant DENIES that he submitted or approved invoices knowing the services had not been performed or deliverables had been withheld, and DENIES that the invoices or representations were fraudulent. The engagement letter and invoices speak for themselves; Defendant DENIES Plaintiff's characterizations of their terms, performance, and payment obligations insofar as they allege wrongdoing. The remaining allegations and characterizations of paragraph 208 are DENIED.

209. The allegations and characterizations of paragraph 209 are DENIED.

210. The allegations and characterizations of paragraph 210 are DENIED.

211. Defendant ADMITS that RedSense made payments in connection with invoices submitted through Affix. Defendant lacks knowledge or information sufficient to form a belief about Plaintiff's alleged subjective reliance. Defendant DENIES that those payments were induced by fraudulent representations or establish the reasonable reliance alleged; the remaining allegations and characterizations of paragraph 211 are DENIED.

212. Defendant ADMITS submitting invoices through Affix for services provided to RedSense. Defendant DENIES that the referenced invoices were fraudulent, that the agreed deliverables were not provided, or that Plaintiff sustained damages through any wrongful conduct by Defendant. Defendant lacks knowledge or information sufficient to form a belief about the accuracy of Plaintiff's aggregate payment calculation as alleged. The remaining allegations and characterizations of paragraph 212 are DENIED.

213. Paragraph 213 states legal arguments concerning the economic-loss doctrine, which Defendant refers to the Court. Defendant DENIES the alleged fraudulent invoicing, concealment, improper charges, and independent tortious conduct, and DENIES that Plaintiff is entitled to relief on the grounds alleged. The remaining allegations and characterizations of paragraph 213 are DENIED.

**As to the Fourteenth Cause of Action – Unjust Enrichment (Against Dmitriev, Affix, and Dmitriev d/b/a Irasel)**

214. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein. Defendant ADMITS only that Plaintiff purports to plead this count in the alternative. Defendant refers the legal propositions concerning alternative pleading and unjust enrichment to the Court and DENIES that the alleged facts establish unjust enrichment or entitlement to relief against him.

215. Defendant ADMITS that payments were made for services provided through the identified vendor arrangements. Defendant DENIES that those payments were for services never performed or deliverables never provided; the remaining allegations and characterizations of paragraph 215 are DENIED.

216. Defendant DENIES that payments were retained without providing the contracted services or deliverables. To the extent paragraph 216 alleges only that legitimate compensation was received and retained for services actually provided, that fact is ADMITTED. The remaining allegations and characterizations of paragraph 216 are DENIED.

217. The allegations and characterizations of paragraph 217 are DENIED.

218. Defendant ADMITS that RedSense made payments for services, but DENIES that the freelancers were phantom or fictitious persons, that the agreed services were not performed or delivered, that funds were wrongfully diverted, or that Plaintiff is entitled to disgorgement or damages as alleged. Defendant lacks knowledge or information sufficient to form a belief about the accuracy of Plaintiff's aggregate payment calculations as alleged. The remaining allegations and characterizations of paragraph 218 are DENIED.

**As to the Fifteenth Cause of Action – Breach of Contract (Against Affix)**

219. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

220. Defendant ADMITS that he executed the Onboarding Agreement on behalf of himself and Affix, that he is Affix's sole member and manager, and that the signature block identifies him and Affix. The Onboarding Agreement and notarization speak for themselves. The allegations concerning the legal effect of the signature, the contractual obligations of Affix, and principles of authority and entity separateness comprise legal conclusions, which Defendant refers to the Court. Defendant does not appear or answer on Affix's behalf and DENIES any allegation that the facts stated establish wrongful conduct or personal liability on his part.

221. Defendant DENIES the breaches and misconduct alleged in paragraph 221, including the alleged failure to provide the agreed in-kind contribution, false representations or

warranties, invoicing for unperformed services, and unlawful disclosure. The Onboarding Agreement speaks for itself; Defendant refers questions concerning its legal interpretation to the Court. The remaining allegations and characterizations of paragraph 221 are DENIED.

222. The allegations and characterizations of paragraph 222 are DENIED.

**As to the Sixteenth Cause of Action – Declaratory Relief: Onboarding Agreement Void as to Affix (28 U.S.C. § 2201) (Against Affix)**

223. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

224. Defendant ADMITS that Plaintiff seeks declaratory relief under the cited statute, but DENIES that Plaintiff is entitled to a declaration adverse to Defendant. Questions of law are referred to the Court.

225. Defendant ADMITS that he executed the Onboarding Agreement on January 25, 2023 on behalf of himself and Affix. Defendant DENIES that the agreement is invalid for lack of consideration or fraud on his part. The agreement speaks for itself; Defendant refers questions concerning Affix's contractual status and obligations to the Court and does not answer on Affix's behalf. The remaining allegations and characterizations of paragraph 225 are DENIED.

226. The allegations and characterizations of paragraph 226 are DENIED.

227. The allegations and characterizations of paragraph 227 are DENIED.

228. Defendant ADMITS only that paragraph 228 states the declaration Plaintiff requests. Defendant DENIES the alleged lack of consideration and fraud and DENIES that Plaintiff is entitled to the requested relief on those grounds. Defendant does not appear or answer on Affix's behalf.

**As to the Seventeenth Cause of Action – Civil Conspiracy (Against All Defendants)**

229. Defendant repeats and re-alleges each and every response to the preceding paragraphs as if set forth fully herein.

230. Defendant DENIES entering into any agreement, combination, understanding, or common scheme to defraud RedSense, misappropriate its property or trade secrets, or cause it financial or reputational harm. Defendant DENIES the alleged conspiracy, concealment, and underlying wrongful acts, including any allegation that ordinary invoicing relationships or the timing of events establishes such an agreement. Defendant refers the paragraph's statements of law to the Court and DENIES that Plaintiff has established the elements alleged or any basis for joint and several liability against him. The remaining allegations and characterizations of paragraph 230 are DENIED.

231. Defendant DENIES that he directed the alleged fraudulent invoicing, destruction, or smear campaign for an improper personal benefit, and DENIES that Dmitriev joined any conspiracy with him. The allegations concerning the intra-corporate conspiracy doctrine and its exceptions comprise legal conclusions, which Defendant refers to the Court. The remaining allegations and characterizations of paragraph 231 are DENIED.

232. Defendant DENIES the existence of the alleged conspiracy and that any of the acts described were undertaken in furtherance of such a conspiracy. Defendant responds to the subparagraphs as follows:

(a) Defendant ADMITS submitting invoices through Affix for compensation and services, but DENIES that the invoices were fraudulent or that the services were fictitious or agreed deliverables wrongfully withheld.

(b) Defendant ADMITS that Dmitriev provided services through Irasel and that invoices for those services were routed through Affix. Defendant DENIES that this arrangement was intended to deceive RedSense or obtain payment for work not performed.

(c) Defendant ADMITS that Affix received payments from RedSense for Defendant's compensation and vendor services. Defendant DENIES wrongful retention or diversion of those payments as alleged.

(d) Defendant ADMITS that Dmitriev had work-related credentials and incorporates his response to paragraph 40. Defendant DENIES directing, requesting, or encouraging the unauthorized copying or destruction of RedSense's property or trade secrets, and DENIES the alleged wrongful purpose. Defendant lacks knowledge or information sufficient to form a belief about the identity of the person executing each command and the completeness and authenticity of the asserted logs.

(e) Defendant ADMITS that Pyrus was used by the team and that RedSense paid for access, but DENIES that he administered Pyrus, directed an unlawful lockout, or used Pyrus charges as a phony expense. Defendant lacks knowledge or information sufficient to form a belief about Plaintiff's internal audit and its account of communications with Pyrus support. Defendant incorporates his responses to paragraphs 31 and 41 and DENIES the remaining allegations and characterizations of this subparagraph.

(f) Defendant ADMITS communicating with Dmitriev and others about his work, Affix, and possible future business arrangements, and communicating with certain customers concerning cyber threats and his departure from the CRO role. Defendant refers to the complete communications for their actual contents and context and DENIES Plaintiff's characterization of selected excerpts as a premeditated plan to steal, destroy, or

wrongfully retain RedSense's assets or customer relationships. Defendant DENIES the alleged smear campaign, misuse of trade secrets, and agreement to commit the alleged cyber incident or data destruction.

(g) Defendant ADMITS working with Dmitriev on RedSense's financial and strategic planning. Defendant DENIES that Dmitriev was an unauthorized outsider to that work or that their collaboration constituted an unlawful disclosure, breach of fiduciary duty, or conspiracy as alleged. The remaining allegations and characterizations of this subparagraph are DENIED.

(h) Defendant ADMITS communicating with Dmitriev concerning Pyrus and refers to the complete communication for its actual contents and context. Defendant DENIES that the quoted message establishes his direction of unauthorized access, wrongful deletion or destruction of RedSense-owned data, or retention of such data for an unlawful purpose. Defendant incorporates his response to paragraph 41 and DENIES the remaining allegations and characterizations of this subparagraph.

233. The allegations and characterizations of paragraph 233 are DENIED.

234. The allegations and characterizations of paragraph 234 are DENIED. Plaintiff has ceased operations, shut down its operational infrastructure, and terminated its workforce. Defendant DENIES that Plaintiff's cessation of operations or claimed business losses resulted from the alleged conspiracy or any wrongful conduct by Defendant.

**<u>FIRST SEPARATE DEFENSE</u>**

The Complaint fails to state a claim upon which relief can be granted as a matter of law against the Defendants.

**SECOND SEPARATE DEFENSE**

Plaintiff lacked authorization to initiate this suit pursuant to the limited liability law of the State of Wyoming.

**THIRD SEPARATE DEFENSE**

Counsel for Plaintiff is in conflict as to Defendant as a member/partner of Plaintiff.

**FOURTH SEPARATE DEFENSE**

Plaintiff's claims are barred in part by the doctrine of impossibility.

**FIFTH SEPARATE DEFENSE**

Plaintiff is not the real party-in-interest.

**SIXTH SEPARATE DEFENSE**

Plaintiff's Complaint is barred for failure to have complied with statutory prerequisites before filing the Complaint.

**SEVENTH SEPARATE DEFENSE**

The debt alleged by Plaintiff has been resolved by accord and satisfaction.

**EIGHTH SEPARATE DEFENSE**

The relief prayed for is void for Plaintiff's own frauds and misrepresentations.

**NINTH SEPARATE DEFENSE**

Plaintiff's remedy, if any, is at most an equitable or injunctive order mandating a buy-out of Defendant's interest in Plaintiff.

**TENTH SEPARATE DEFENSE**

The Complaint was filed for the improper purposes of harassment and unnecessary increases in the cost of resolving the dispute.

**ELEVENTH SEPARATE DEFENSE**

The Complaint was actuated by malice or reckless disregard of Defendant's rights.

**TWELFTH SEPARATE DEFENSE**

Plaintiff has waived any rights which it may have had to assess or recover on any and all claims for relief alleged in its Complaint by virtue of its own acts and/or omissions.

**THIRTEENTH SEPARATE DEFENSE**

The claims against Defendant are barred by the doctrine of unclean hands.

**FOURTEENTH SEPARATE DEFENSE**

The claims against Defendant are barred by laches.

**FIFTEENTH SEPARATE DEFENSE**

The damages complained of by Plaintiff were not foreseeable.

**SIXTEENTH SEPARATE DEFENSE**

Plaintiff's wrongful and unlawful conduct was the sole proximate cause of its alleged damages.

**SEVENTEENTH SEPARATE DEFENSE**

Plaintiff is guilty of contributory fault which is greater in degree than any that might be assessable to Defendant.

**EIGHTEENTH SEPARATE DEFENSE**

Defendant(s) committed no wrongful conduct which was a proximate cause of the damages complained of by Plaintiff.

**NINETEENTH SEPARATE DEFENSE**

Defendant fulfilled his contractual obligations under his contract with Plaintiff.

**TWENTIETH SEPARATE DEFENSE**

Plaintiff breached its contractual obligations to Defendant.

**TWENTY-FIRST SEPARATE DEFENSE**

Plaintiff breached its contractual obligations to Plaintiff's clients, to Defendant's severe damage and detriment.

**TWENTY-SECOND SEPARATE DEFENSE**

Plaintiff has few proprietary algorithms, source code or confidential methodology apart from CompCred relies primarily on third-party data sources such as Team Cymru.

**TWENTY-THIRD SEPARATE DEFENSE**

Plaintiff has no trade secrets to protect.

**TWENTY-FOURTH SEPARATE DEFENSE**

Plaintiff breached its duties of the trust and confidence reposed therein by the nature of this transaction with Defendant.

**TWENTY-FIFTH SEPARATE DEFENSE**

Plaintiff intentionally tortiously interfered with Defendant's contractual and prospective economic advantage.

**TWENTY-SIXTH SEPARATE DEFENSE**

Plaintiff induced and waived any default.

**TWENTY-SEVENTH SEPARATE DEFENSE**

Plaintiff's remedy, if any, lies against others including, without limitation, Miller, Montanaro, and others not known to Defendant at this time.

**TWENTY-EIGHTH SEPARATE DEFENSE**

The claims against Defendant(s) are barred by the doctrine of waiver.

**TWENTY-NINTH SEPARATE DEFENSE**

Plaintiff's claims are not authorized by the members, for it lacks the unanimous consent.

**THIRTIETH SEPARATE DEFENSE**

Plaintiff's claims are barred for breaching the covenant and duties of good faith and fair dealing.

**THIRTY-FIRST SEPARATE DEFENSE**

Plaintiff is equitably estopped from pursuing the claims asserted in the Complaint.

**THIRTY-SECOND SEPARATE DEFENSE**

Plaintiff did not "entrust" Defendant with information to which he is entitled as a member by right.

**THIRTY-THIRD SEPARATE DEFENSE**

Plaintiff's claims are barred by collateral estoppel.

**THIRTY-FOURTH SEPARATE DEFENSE**

Project Pylon is proprietary to Affix Advisory LLC and is distinct from the AIDIS pleaded in the Complaint.

**THIRTY-FIFTH SEPARATE DEFENSE**

Plaintiff failed to join necessary party(ies) in this action.

**THIRTY-SIXTH SEPARATE DEFENSE**

Plaintiff defaulted prior to the date it alleges a default by Defendant.

**THIRTY-SEVENTH SEPARATE DEFENSE**

Plaintiff has continuously defaulted without cure through the date of this pleading.

**THIRTY-EIGHTH SEPARATE DEFENSE**

Plaintiff's continuing and material default(s) relieve(s) Defendant of any obligation to perform as a matter of law.

**THIRTY-NINTH SEPARATE DEFENSE**

Defendant did not default.

**FORTIETH SEPARATE DEFENSE**

Plaintiff failed to mitigate its damages.

**FORTY-FIRST SEPARATE DEFENSE**

AIDIS was delivered to Plaintiff.

**FORTY-SECOND SEPARATE DEFENSE**

Defendant has made repeated efforts to mitigate damages.

**FORTY-THIRD SEPARATE DEFENSE**

Defendant did not receive notice of some of the communications alleged.

**FORTY-FOURTH SEPARATE DEFENSE**

Plaintiff, its agent(s)/representative(s) constructively withheld notice(s).

**FORTY-FIFTH SEPARATE DEFENSE**

Plaintiff took an assignment of the instruments alleged in this action with actual and constructive knowledge of its breaches, defaults and torts.

**FORTY-SIXTH SEPARATE DEFENSE**

Defendant is free as a member of Plaintiff to contact clients and convey CTI warnings.

**FORTY-SEVENTH SEPARATE DEFENSE**

Defendant was in communication with Plaintiff's allegedly confidential clients before Plaintiff existed and brought many of them to Plaintiff.

**FORTY-EIGHTH SEPARATE DEFENSE**

Plaintiff's clients were interested in Plaintiff because of Defendant's skill and experience, not Plaintiff's.

**FORTY-NINTH SEPARATE DEFENSE**

Defendant is free to "represent" Plaintiff as a member thereof.

**FIFTIETH SEPARATE DEFENSE**

Plaintiff is in violation of agreements barring the prosecution of its Complaint.

**FIFTY-FIRST SEPARATE DEFENSE**

Plaintiff's action violates Wyoming's judicial and public policy.

**FIFTY-SECOND SEPARATE DEFENSE**

Plaintiff initiated this action to thwart, gain an unfair advantage, or otherwise interfere with Defendant's efforts to mediate or settle their differences.

**FIFTY-THIRD SEPARATE DEFENSE**

Plaintiff's claims are barred by its perjurious declarations submitted in this action. (D.N.J.).

**FIFTY-FOURTH SEPARATE DEFENSE**

Plaintiff's claims are frivolous, including, but not limited to Fed. R. Civ. P. 11 and N.J. Stat. Ann. § 2A:15–59.1, as well as arbitrary, vexatious and were not brought in good faith; thus, Defendant is entitled to an award of damages, including but not necessarily limited to, attorneys' fees, costs, and expenses incurred in the defense of the Complaint.

**FIFTY-FIFTH SEPARATE DEFENSE**

Defendant is entitled to judgment as a matter of law based upon the facts set forth in this matter.

## RESERVATION OF RIGHTS

Defendant reserves the right to raise additional affirmative, negative, or separate defenses, the existence of which may arise out of discovery in, or prosecution of this action.

## DEMAND FOR DISMISSAL OF COMPLAINT

WHEREFORE, the defendant YELISEY BOHUSLAVSKIY hereby demands judgment dismissing the Complaint with prejudice, together with an award of fees and costs of suit.

## DEMAND FOR STATEMENT OF DAMAGES

Pursuant to L.Civ.R. 8.1, Defendant demands that within 14 days of service hereof that Plaintiff furnish Defendant a statement of the amount of damages claimed, which statement shall not be filed except on court order.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) & L.Civ.R. 38.1 and 48.1, Defendant hereby demands a trial by jury on all issues so triable, including counter- and third-party claims.

Dated: October 30, 2026

Respectfully submitted,

Yelisey Bohuslavskiy
Individually, pro se
7000 JFK Boulevard East #42D
Guttenberg, NJ 07093
Email: eliseydmitriev@gmail.com
Telephone: (202) 751-9957

## BY WAY OF COUNTERCLAIM AND THIRD-PARTY COMPLAINT

By way of Counterclaim against RED SENSE LLC (the "Company", "Counter-defendant" or "RedSense"), and Third-Party Complaint against DAVID MONTANARO ("Montanaro") and KEVIN STEAR ("Stear") (Montanaro and Stear, collectively, "Third-Party Defendants"), the

Counterclaimant/Third-Party Plaintiff YELISEY BOHUSLAVSKIY a/k/a Elisei Boguslavskii ("Counterclaimant" or "Bohuslavskiy"), hereby avers and SAYS:

**NATURE OF ACTION**

235. This matter arises out of a 2023 agreement between the parties to onboard Counterclaimant as a member and partner of Counter-defendant, a limited liability company ("LLC"). Counterclaimant was unanimously admitted as a member and partner of the Company on January 25, 2023.

236. This Counterclaim and Third-Party Complaint arises from unlawful, oppressive, and fraudulent actions by the Company and the Third-Party Defendants, its controlling members, to forcibly remove Bohuslavskiy as a member of the LLC, misappropriate his intellectual property, and deprive him of his rightful economic and management rights as a member and partner in the company. The oppression suffered by Counterclaimant is so severe as to make continued membership in the Company unreasonable.

237. Counterclaimant seeks: (i) damages for breach of contract, breach of fiduciary duty, and wrongful exclusion; (ii) injunctive and declaratory relief; and (iii) a buy-out of his full membership interest pursuant to Wyo. Stat. § 17-29-701 and related provisions.

**JURISDICTION AND VENUE**

238. This Court has original jurisdiction under 28 U.S.C. § 1331, providing for subject matter jurisdiction over all actions brought pursuant to the laws of the United States, because the Company initially asserted federal claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. and the Lanham Act, 15 U.S.C. § 1051, in its Complaint.

239. This Court has supplemental jurisdiction over the remaining state law claims asserted herein under 28 U.S.C. § 1367(a).

240. The Court has in personam jurisdiction over the Company as it voluntarily submitted to jurisdiction in this district by filing a Complaint here; and general or specific jurisdiction over the Third-Party Defendants because the damage their acts or omissions inflicted on the Third-Party Plaintiff occurred here.

241. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Bohuslavskiy, as a party-defendant on Counter-defendant's original Complaint, and (b)(2) because a substantial part of the events giving rise to these claims occurred here.

**PARTIES**

242. Counter-defendant RedSense is, and all times mentioned herein was, an LLC organized and existing under the laws of the State of Wyoming, having a registered agent and registered address located at 1621 Central Avenue, in the City of Cheyenne, County of Laramie, State of Wyoming; and a principal place of business is located at One Boston Place, Suite 2600, in the City of Boston, County of Suffolk, Commonwealth of Massachusetts.

243. Third-Party Defendant Montanaro is, and all times relevant hereto, is an individual who has acted as Chief Executive Officer ("CEO") of the Company, and has a professional address located at One Boston Place, Suite 2600, in the City of Boston, County of Suffolk, Commonwealth of Massachusetts.

244. Third-Party Defendant Stear is, and all times relevant hereto, is an individual who has acted as Chief Technology Officer ("CTO") of the Company, and has a professional address located at One Boston Place, Suite 2600, in the City of Boston, County of Suffolk, Commonwealth of Massachusetts.

245. Counterclaimant/Third-Party Plaintiff Bohuslavskiy is an individual residing in the Town of Guttenberg, County of Hudson, State of New Jersey. From January 25, 2023 through

February 24, 2025, Bohuslavskiy served as the Company's Chief Research Officer ("CRO") and remains a member/partner through the date of filing of this Counterclaim.

**<u>FACTS COMMON TO ALL COUNTS</u>**

246. Personally, Bohuslavskiy is a refugee of Russo-Ukrainian-Jewish origin seeking political asylum in the United States after fleeing from Russia in 2014 due to Counterclaimant's support of Ukraine's 2014 Euromaidan Revolution and work with Alexei Navalny ("Navalny"), the late Russian opposition leader who criticized Vladimir Putin and survived a poisoning, then died mysteriously in a western Siberian prison in 2024.

247. Professionally, Bohuslavskiy is a recognized cybersecurity researcher specializing in preventing ransomware by using his Russo-Ukrainian background to track ransomware groups that are dominated by tightly organized, Russian-speaking crime syndicates. He is a sought-after speaker at technical gatherings and has been interviewed by NBC, Reuters, and WIRED magazine.

248. In 2019, Bohuslavskiy formed Advanced Intelligence, LLC ("AdvIntel") along with a colleague, who trained engineers who would later move with Bohuslavskiy to the Company.

249. In 2021, AdvIntel split into two entities, with Bohuslavskiy owning one hundred (100%) percent of one entity, Affix Advisory LLC ("Affix"), and the other entity, AdvIntel, belonging – in majority – to the colleague that formed AdvIntel alongside Bohuslavskiy. Future Company Members Michael Zeiger ("Zeiger") and Third-Party Defendant Montanaro owned nominal amounts of AdvIntel, roughly three to five percent (3-5%) each, after joining the Company officially in late 2020.

250. In the Spring of 2022, Zeiger left AdvIntel and formed Red Sense LLC; Third-Party Defendant Stear, a prior colleague of Zeiger, co-founded the Company alongside Zeiger and initially held a 50% interest.

251. After founding the Company, Zeiger recruited others to join it; this recruitment included Montanaro, likely in July 2022.

252. On January 25, 2023, Bohuslavskiy signed a certain Red Sense Restructuring & New Owner Onboarding Agreement (the "Onboarding Agreement") and became the sixth Member (Owner/Partner) of the Company.

253. Subsequently, Bohuslavskiy took a position in the Company as CRO and attracted previous AdvIntel customers, some of whom came primarily for Bohuslavskiy's expertise.

254. Bohuslavskiy, during his tenure as Member, repeatedly asked for an operating agreement for the Company to be formalized, but to no avail – Bohuslavskiy's requests were repeatedly vetoed by Montanaro.

255. Throughout the next two years, Montanaro bought out two Members, including Zeiger.

256. In 2024, upon information and belief, Zeiger, following an encounter with law enforcement, requested Stear ensure transfer of shares to his father in event of his death or disappearance and asked Stear to subsequently purchase these shares to ensure uninterrupted operations of Red Sense LLC. Instead of following Zeiger's instructions, Stear returned and claimed Zeiger, then CEO, had resigned from his role and all partnership rights.

257. The Members voted Montanaro in as CEO upon learning this information from Stear, despite Zeiger's denial of his resignation. Zeiger was subsequently frozen out of the Company's affairs, including cutting all income, distributions, and bonuses.

258. Because of the freeze out, Zeiger ran out of funds and was forced to sell his shares to Montanaro for what was, upon information and belief, below market value. This sale was approved by all Members.

259. Zeiger's absence created financial strain on the Company because the core products became ruined without his leadership, and customers withdrew due to deterioration of these products. No operating or budget policy existed, and funds were flowing to consultants instead of product; subsequently, Bohuslavskiy's sales bonuses were placed on hold.

260. Bohuslavskiy believes and thereon alleges that there was another Member who was an equal partner and 15% Member under the Onboarding agreement. This Member later became a 3.75% Member of the Company following a payment of $182,000 for technology work – subject to an agreement that he had never been a Member.

261. Bohuslavskiy believes and thereon alleges that Stear and Montanaro also attempted to convince another Member, Bryan Vansickle ("Vansickle"), to waive his 20% interest in Red Sense LLC. When Vansickle refused, Stear insulted him by referencing his terminal cancer and roughly stated that Vansickle was only paid because he was going to die soon.

262. On January 22, 2025, Bohuslavskiy's working relationship was heavily strained when Stear, then Chief Technology Officer ("CTO") and Member of the Company, sent threatening messages attacking Bohuslavskiy's and family's immigration status – a severe threat in light of the ongoing hot war in Ukraine and Bohuslavskiy's alliance with Navalny.

263. On January 23, 2025, Bohuslavskiy wrote a letter to his fellow Members detailing the accusations made by CTO Stear. The accusations included explicit threats to report Bohuslavskiy to immigration authorities and implicit threats to his family. As a result of these threats, Bohuslavskiy suspended himself from the CRO position, and requested an investigation be conducted and evidence presented regarding CTO Stear's claims.

264. Upon information and belief, by mid-February, Bohuslavskiy's analysts had gone a month without pay and Bohuslavskiy's brother, a consultant for the Company, had gone two

months. While all bonuses and salaries were frozen, Bohuslavskiy was asked to sign a backdated agreement in an attempt by Montanaro to seize a side project developed by Bohuslavskiy, Bohuslavskiy's analysts, and Bohuslavskiy's brother. Montanaro continued to withhold funds because Bohuslavskiy would not sign.

265. On February 24, 2025, Bohuslavskiy announced his resignation from his position as CRO of the Company. Bohuslavskiy specified in his resignation letter that his role as partner would continue despite his resignation from his position as CRO and clarified that he was striving to resolve misalignments within the partnership and shareholder domains.

266. On February 25, 2025, Chief Executive Officer ("CEO") and Member of the Company, Montanaro, e-mailed Bohuslavskiy stating that he was confirming Bohuslavskiy's resignation and that Bohuslavskiy had disassociated from Red Sense LLC under the Wyoming Limited Liability Company Act (the "Wyoming Act"). In this communication, CEO David Montanaro used the vague and incorrect assertion of Wyoming law to falsely assert that Bohuslavskiy had resigned from his membership at Red Sense, prevent Bohuslavskiy from participating in the operations of the Company, and restrict Bohuslavskiy from exercising any voting rights in the management of the Company.

267. Bohuslavskiy made no express communication to disassociate and denied Counter-defendant's misinterpretation of his resignation. See Wyo. Stat. § 17-29-602(a)(i).

268. To date, the Company continues to refuse to acknowledge that Counterclaimant is a Member.

269. On March 6, 2025, Bohuslavskiy contacted customers in his capacity as Member from a personal electronic mail address because Bohuslavskiy no longer had access to his Red Sense LLC e-mail address.

270. Bohuslavskiy contacted these customers from his personal e-mail address because Bohuslavskiy, to lock customers into two-year and three-year contracts with Counter-defendant, agreed on numerous calls to continue to supply these customers with information from his own sources for the life of their agreement as an assurance to obtain their business.

271. Yet on March 17, 2025, Bohuslavskiy received a demand to cease and desist communications with his Company's customers, partners, and prospective customers/partners, and to direct all replies to Legal@redsense.com.

272. The demand also requested that no representations be made that Bohuslavskiy is affiliated with Red Sense LLC and that Bohuslavskiy remove a LinkedIn post stating that his resignation as CRO was due to his ethical and contractual concerns.

273. Bohuslavskiy did not submit to these demands.

274. On April 14, 2025, Bohuslavskiy, in his capacity as Member, sent a demand letter to Montanaro, member and CEO of the Company. In his demand letter Bohuslavskiy requested management rights, fulfillment of the Members' fiduciary duties and statutory obligations, the right to access information, retention documentation regarding Crowell & Moring LLP, payment of engineering services rendered, immediate reinstatement of the engineering team and their access, revocation of improper terminations, and payment of outstanding bonuses.

275. Additionally, Bohuslavskiy demanded that the Company cease and desist from making any false statements regarding his alleged disassociation, remove and revoke all prior statements regarding his alleged dissociation, reinstate all Company accesses previously granted to Bohuslavskiy, provide written confirmation of Bohuslavskiy's membership status, and that the Company provide full access to Company records, financial statements, client agreements, internal correspondence, and meeting notes withheld from Bohuslavskiy since February 26, 2025.

276. Specifically, Bohuslavskiy requested access to the following information under Wyo. Stat. § 17-29-410: Company systems, including, but not limited to Bohuslavskiy's company email account; Slack, Signal, and all similar communications platforms; Zoom and other video conferencing tools; Company calendars and scheduling systems; internal file storage and document-sharing systems; client communication channels; any infrastructure or data systems related to intelligence product, including the server formerly associated with IP address 45.79.15.15; access to all financial records, including bank statements, balance sheets, income statements, and cash flow reports; all signed client contracts and agreements since January 25, 2023; all internal communications and meeting notes relating to my resignation, access removal, and membership status; and all meeting minutes or resolutions affecting Bohuslavskiy's rights or role.

277. Counter-defendant did not meet any of the demands in Bohuslavskiy's April 14, 2025 letter.

278. Bohuslavskiy also made requests to Mighty Financial to obtain the Company's financial information, Thunder Rock, LLC to obtain/regain access to his Company e-mail and outlook account, and to Damian Miller (then presiding COO of the Company) for access to the scope of Damian's analysis, documents, and representation presented before Damian Miller became COO and when he was working as a consultant.

279. Specifically, Bohuslavskiy requested from Damian Miller information related to the calculation of AdvIntel-related sales bonuses for 2024 and 2025 pertaining to Montanaro and Bohuslavskiy. Likewise, these demands were also not met.

280. On June 27, 2025, the Company filed a Complaint ("New Jersey Complaint") against Bohuslavskiy as defendant in the District of New Jersey contending, inter alia, that the

Onboarding Agreement is void and unenforceable due to fraud and lack of consideration. The 77-page (excluding exhibits) complaint is devoid of CEO Montanaro's assertion that Bohuslavskiy resigned as a Member and does not assert disassociation under any provision of the Wyoming Act.

281. Bohuslavskiy is a Member in Red Sense, LLC. The Company's 2023 K-1 tax filing formally designates Bohuslavskiy as a "general partner" and "domestic partner."

282. He is entitled to all rights as a current Member in the Company.

283. Given the lack of legal grounds to withhold Bohuslavskiy's membership rights in the Company, Bohuslavskiy filed a Complaint in the First Judicial District, Laramie County, to receive a declaration from a Wyoming court that he is an LLC Member, to regain access to all aspects of the Company, enforce his rights as Member of the Company, and obtain any information that has been withheld by the Company.

## CAUSES OF ACTION

## COUNT I: BREACH OF CONTRACT

(against Red Sense LLC, 28 U.S.C. § 1367(a))

284. Counterclaimant Bohuslavskiy repeats, realleges and reiterates the foregoing paragraphs 235 through 283, inclusive, as though set forth at length herein verbatim.

285. On January 25, 2023, Bohuslavskiy entered into the Onboarding Agreement, by which he was admitted as the sixth partner of the Company.

286. The Onboarding Agreement comprises a lawfully enforceable, written contract.

287. In lieu of a $100,000 capital contribution, Bohuslavskiy agreed to provide continuous "in-kind funding" consisting of cyber threat intelligence and proprietary intellectual property. This was expressly approved and acknowledged by all partners.

288. His contributions led to the onboarding of approximately sixteen former AdvIntel customers, comprising over 70% of Red Sense's client base between 2023 and 2025. These clients were attracted solely by Bohuslavskiy's reputation and threat intelligence.

289. Under Section 4.3 of the Onboarding Agreement, Bohuslavskiy was entitled to a 10% share of all revenue derived from customers he helped bring in or service.

290. This bonus was shared among Bohuslavskiy, Zeiger, and Montanaro, based on their prior affiliation with AdvIntel. Montanaro, then Chief Revenue Officer, was responsible for executing the distribution.

291. Bohuslavskiy consistently delivered client services, created a product called AIDIS (AI-Driven Intel Search), and independently developed proprietary tools such as Pylon, which was offered conditionally to Red Sense, contingent upon licensing terms that were never met.

292. Counter-defendant Company breached the Onboarding Agreement by failing to pay bonus distributions, denying Bohuslavskiy access to systems, and retroactively altering his contractual rights.

293. Counter-defendant's failure to perform all or any part of what is promised therein was without legal excuse or justification.

294. As a result, Third-Party Plaintiff suffered loss of income, reputational harm, and loss of proprietary work product, in an amount to be determined at a trial of this action.

## COUNT II: BREACH OF FIDUCIARY DUTIES

(against Montanaro and Stear, 28 U.S.C. § 1367(a))

295. Third-Party Plaintiff Bohuslavskiy repeats, realleges and reiterates the foregoing paragraphs 235 through 294, inclusive, as though set forth at length herein verbatim.

296. As managing members, Montanaro and Stear owed fiduciary duties to Bohuslavskiy, including duties of loyalty, care, and fair dealing.

297. In 2024, after Zeiger's removal, Montanaro and Stear orchestrated a campaign to oust the remaining technical founders. False statements were used to justify Zeiger's ouster; subsequently, Stear and Montanaro assumed control of the company.

298. Following Zeiger's exit, the Company suffered a dramatic decline in technical output: NetFlow alerts degraded, credential coverage dropped, and clients shut off the product altogether.

299. Despite his role, Bohuslavskiy was denied access to Company systems, including client communication channels, in early 2025.

300. Third-Party Defendant Montanaro attempted to coerce him into signing a back-dated invention assignment agreement, threatening nonpayment.

301. On February 24, 2025, after weeks of unpaid labor and sustained hostility, Bohuslavskiy resigned as CRO, but explicitly reaffirmed his status and rights as a partner of the Company.

302. On January 22, 2025, Third-Party Defendant Stear threatened to report Third-Party Plaintiff Bohuslavskiy to immigration authorities and separately threatened terminally ill partner VanSickle regarding his compensation.

303. In February 2025, Montanaro admitted that the Company was insolvent and suspended all distributions, despite previously concealing customer refund claims totaling $1.6 million.

304. Third-Party Plaintiff sent repeated notices to the Company documenting his ongoing work and efforts to fulfill his obligations as a partner. Nevertheless, the Company, through

Montanaro and Stear, treated Bohuslavskiy as though he had abandoned his membership, which he had not.

305. As such, Third-Party Defendants violated their fiduciary duties by freezing out Third-Party Plaintiff, making threats, misappropriating IP, concealing material financial data, and attempting to coerce his resignation.

306. As a result, Third-Party Plaintiff Bohuslavskiy has suffered damages in an amount to be determined at a trial of this action.

**COUNT III: OPPRESSION UNDER WYOMING LLC ACT**

(against Red Sense LLC, 28 U.S.C. § 1367(a))

307. Counterclaimant Bohuslavskiy repeats, realleges and reiterates the foregoing paragraphs 235 through 306, inclusive, as though set forth at length herein verbatim.

308. Pursuant to Wyo. Stat. § 17-29-701, a court may dissolve or buy out a member of a limited liability company when the governing persons act illegally, fraudulently, or oppressively.

309. The above conduct constitutes a sustained pattern of oppressive behavior, including economic retaliation, manufactured resignations, and dilution efforts.

310. As a result, Counterclaimant Bohuslavskiy has suffered damages in an amount to be determined at a trial of this action.

**COUNT IV: BUY-OUT DEMAND UNDER WYOMING LAW**

(against Red Sense LLC, 28 U.S.C. § 1367(a))

311. Counterclaimant Bohuslavskiy repeats, realleges and reiterates the foregoing paragraphs 235 through 310, inclusive, as though set forth at length herein verbatim.

312. As a remedy for unlawful exclusion and oppression, Bohuslavskiy seeks a judicial order compelling Red Sense to buy out his membership interest at fair market value.

313. Given the complete breakdown in trust and governance, Counterclaimant Bohuslavskiy is entitled to a buy-out of his interest as the only equitable solution.

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaimant and Third-Party Plaintiff YELISEY BOHUSLAVSKIY respectfully requests that this Court:

A. Enter judgment in his favor on all counts;

B. Award compensatory and consequential damages, including unpaid distributions;

C. Declare that Counterclaimant remains a member of Red Sense LLC;

D. Compel Red Sense to buy out his full membership interest at a fair market rate under Wyo. Stat. § 17-29-701;

E. Award attorneys' fees and costs; and

F. Grant any other relief as the Court deems just and proper.

Dated: October 30, 2026

Respectfully submitted,

Yelisey Bohuslavskiy
Individually, pro se
7000 JFK Boulevard East #42D
Guttenberg, NJ 07093
Email: eliseydmitriev@gmail.com
Telephone: (202) 751-9957

**CERTIFICATION OF OTHER PROCEEDINGS**

Pursuant to Local Civil Rule 11.2, I, Yelisey Bohuslavskiy, certify that the matter in controversy is also the subject of the following action:

Yelisey Bohuslavskiy, a.k.a. Elisei Boguslavskii v. Red Sense LLC, Case No. 2025-CV-0203503, District Court of Laramie County, First Judicial District, State of Wyoming.

The parties to that action are Yelisey Bohuslavskiy, as plaintiff, and Red Sense LLC, as defendant. By order dated February 19, 2026, the Wyoming court stayed that action in its entirety pending final resolution of this federal action.

This certification updates the related-action disclosure included in ECF No. 23.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 30, 2026.

Yelisey Bohuslavskiy
Individually, pro se

## CERTIFICATE OF SERVICE

I, Yelisey Bohuslavskiy, do hereby certify that a true and correct copy of the foregoing Answer to First Amended Complaint, Counterclaim, Third-Party Complaint, Separate Defenses, and Demand for Jury Trial has been served upon the persons listed below, at the addresses and by the method(s) stated, on October 30, 2026.

Method of service for each recipient: First-Class U.S. Mail, postage prepaid.

Red Sense LLC
One Boston Place, Suite 2600
Boston, MA 02108

David Montanaro
Red Sense LLC
One Boston Place, Suite 2600
Boston, MA 02108

Kevin Stear
Red Sense LLC
One Boston Place, Suite 2600
Boston, MA 02108

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 30, 2026

Yelisey Bohuslavskiy
Individually, pro se